1
COOLEY GODWARD KRONISH LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2
MELINA K. PATTERSON (211907) (mpatterson@cooley.com)
EMILY F. BURNS (228123) (eburns@cooley.com)
3
Five Palo Alto Square
3000 El Camino Real
4
Palo Alto, CA  94306-2155
Telephone:    (650) 843-5000
5
Facsimile:    (650) 857-0663

6
Attorneys for Defendant
FACEBOOK, INC.
7

8
UNITED STATES DISTRICT COURT

9
NORTHERN DISTRICT OF CALIFORNIA

10
SAN JOSE DIVISION

11

12
SEAN LANE, MOHANNAED SHEIKHA,
SEAN MARTIN, ALI SAMMOUR,
13
MOHAMMAED ZIDAN, SARA KARROW,
COLBY HENSON, DENTON HUNKER,
14
FIRAS SHEIKHA, HASSEN SHEIKHA,
LINDA STEWART, TINA TRAN,
15
MATTHEW SMITH, ERICA PARNELL,
JOHN CONWAY, AUSTIN MUHS,
16
PHILLIP HUERTA, ALICIA HUNKER,
individuals, on behalf of themselves and all
17
others similarly situated, and MEGAN LYNN
HANCOCK, a minor, by and through per
18
parent REBECCA HOLEY,

19
                  Plaintiffs,

20
          v.

21
FACEBOOK, INC., a Delaware Corporation,
BLOCKBUSTER, INC., a Delaware
22
Corporation, FANDANGO, INC., a Delaware
Corporation, HOTWIRE, INC., a Delaware
23
Corporation, STA TRAVEL, INC., a
Delaware Corporation, OVERSTOCK.COM,
24
INC., a Delaware Corporation,
ZAPPOS.COM, INC., a Delaware
25
Corporation, GAMEFLY, INC., a Delaware
Corporation, and DOES 1-40, corporations,
26

27
                  Defendants.

28

Case No. 5:08-cv-03845-RS

**DEFENDANT FACEBOOK INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT AND TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**DEMAND FOR JURY TRIAL**

Date:        January 28, 2009
Time:        9:30 a.m.
Judge:       Hon. Richard Seeborg
Trial Date:  Not yet set

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................... 3

III.  LEGAL STANDARDS ON RULE 12(B)(6) MOTION TO DISMISS ............................. 4

IV.   ARGUMENT ...................................................................................................... 4

    A.    Plaintiffs' Allegations That Facebook Violated The Electronic
        Communications Privacy Act Fail As A Matter Of Law ................................... 4

    B.    Plaintiffs' Allegations That Facebook Aided And Abetted Violations Of,
        And Conspired To Violate The Video Privacy Protection Act Fail Because
        The Act Does Not Allow For Secondary Liability ................................. 10

    C.    Plaintiffs' Allegation That Facebook Violated California's Consumer Legal
        Remedies Act Fails As A Matter Of Law ........................................... 12

    D.    Plaintiffs' Allegation That Facebook Violated California's Computer
        Crime Law Fails As A Matter Of Law ................................................ 15

    E.    Plaintiffs' Allegation That Facebook Violated The Computer Fraud And
        Abuse Act Fails As A Matter Of Law ................................................ 17

    F.    Plaintiffs' Claim For Unjust Enrichment Fails As A Matter Of Law ................. 20

    G.    Plaintiffs' Prayer For Injunctive Relief Must Be Stricken From The
        Complaint As Moot ....................................................................... 21

    H.    Plaintiffs' Claims Class Allegations Must be Stricken Because They Fail
        To Allege Any Actual Damages And Statutory Damages Are Grossly
        Disproportionate To Any Purported Harm To Plaintiffs ......................... 22

V.    CONCLUSION ................................................................................................. 25

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

i.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

# TABLE OF AUTHORITIES

PAGE

## CASES

*Alsup v. Montgomery Ward & Co.*
57 F.R.D. 89 (N.D. Cal. 1972) ........................................................................ 24

*Arikat v. JP Morgan Chase & Co.*
430 F. Supp. 2d 1013 (N.D. Cal. 2006) ........................................................... 13

*Bell Atl. Corp. v. Twombly*
127 S. Ct. 1955 (2007) ........................................................................... 4, 8, 19

*Blanco v. CEC Entm't Concepts, L.P.*
No. CV 07-0559 GDS (JWJx), 2008 WL 239658 (C.D. Cal. Jan. 10, 2008) ...................... 24

*Bly-Magee v. Cal.*
236 F.3d 1014 (9th Cir. 2001) ......................................................................... 13

*Carlson v. United Academics-AAUP/AFT/APEA AFL-CIO*
265 F.3d 778 (9th Cir. 2001) ........................................................................... 22

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*
511 U.S. 164 (1994) ....................................................................................... 12

*Chance v. Ave. A, Inc.*
165 F. Supp. 2d 1153 (W.D. Wash. 2001) ........................................................ 5, 6

*Columbia Pictures, Inc. v. Bunnell*
245 F.R.D. 443 (C.D. Cal. 2007) ..................................................................... 10

*Daniel v. Cantrell*
375 F.3d 377 (6th Cir. 2004) ........................................................................... 11

*Deteresa v. ABC Inc.*
121 F.3d 460 (9th Cir. 1997) ............................................................................. 7

*Doleman v. Meiji Mut. Life Ins. Co.*
727 F.2d 1480 (9th Cir. 1984) ......................................................................... 12

*DoubleClick, Inc. Privacy Litig., In re*
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....................................................... *passim*

*Fantasy, Inc. v. Fogerty*
984 F.2d 1524 (9th Cir. 1993) ......................................................................... 22

*Forman v. Data Transfer*
164 F.R.D. 400 (E.D. Pa. 1995) ....................................................................... 25

*Freeman v. DirectTV, Inc.*
457 F.3d 1001 (9th Cir. 2006) ......................................................................... 11

*Gottlieb v. Tropicana Hotel & Casino*
109 F. Supp. 2d 324 (E.D. Pa. 2000) ............................................................... 14

*Halkin v. VeriFone, Inc.*
11 F.3d 865 (9th Cir. 1993) ............................................................................... 8

*Intuit Privacy Litig., In re*
138 F. Supp. 2d 1272 (C.D. Cal. 2001) ........................................................ 8, 19

*Jogani v. Superior Court*
165 Cal. App. 4th 901, 911 (2008) .................................................................. 20

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

ii.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

1

**TABLE OF AUTHORITIES**
**CONTINUED**

2

3

**PAGE**

*Kidron v. Movie Acquisition Corp.*
   40 Cal. App. 4th 1571 (1995)................................................................. 12

4

*Kline v. Coldwell Banker & Co.*
   508 F.2d 226 (9th Cir. 1974)............................................................. 23, 24

5

*Konop v. Hawaiian Airlines, Inc.*
   302 F.3d 868 (9th Cir. 2002)................................................................. 10

6

*Legge v. Nextel Communications, Inc.*
   No. CV 02-8676 DSF (VBKx), 2004 WL 5235587 (C.D. Cal. June 25, 2004) .................... 24

7

*London v. Walmart Stores, Inc.*
   340 F.3d 1246 (11th Cir. 2003)........................................................... 24, 25

8

*McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc*
   339 F.3d 1087 (9th Cir. 2003)................................................................. 21

9

*Med. Lab. Mgmt. Consultants v. ABC Inc.*
   30 F. Supp. 2d 1182 (D. Ariz. 1998)............................................................ 7

10

*Melchior v. New Line Productions, Inc.*
   106 Cal. App. 4th 779 (Cal. App. 2003) ..................................................... 20

11

12

*Navarro v. Block*
   250 F.3d 729 (9th Cir. 2001)................................................................... 4

13

*Outdoor Media Group, Inc. v. City of Beaumont*
   506 F.3d 895 (9th Cir. 2007)................................................................. 22

14

*Parks Sch. of Bus., Inc. v. Symington*
   51 F.3d 1480 (9th Cir. 1995)................................................................... 4

15

16

*Ratner v. Chem. Bank*
   54 F.R.D. 412 (S.D.N.Y. 1972) .............................................................. 23

17

*Rayford v. Maselli*
   73 S.W.3d 410 (Tex. App. 1st Dist. 2002)................................................... 14

18

*Schick v. Lerner*
   193 Cal. App. 3d 1321, (1987)............................................................... 12

19

20

*Shields v. First Nat'l Bank*
   56 F.R.D. 442 (D. Ariz. 1972) ............................................................... 25

21

*Stack v. Lobo*
   903 F. Supp. 1361 (N.D. Cal. 1995) ........................................................ 12

22

*Steinberg v. Chicago Medical School*
   371 N.E.2d 634 (Ill. 1977)................................................................... 14

23

24

*Sussman v. ABC Inc.*
   186 F.3d 1200 (9th Cir. 1999)................................................................. 7

25

*Tan v. University of Cal. San Francisco*
   No. 06-04697, 2007 WL 963223 (N.D. Cal. Mar. 29, 2007).................................... 22

26

*Total Care Physicians, P.A. v. O'Hara*
   798 A.2d 1043 (Del. Super. 2001) ........................................................... 21

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

iii.

**FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS**

**TABLE OF AUTHORITIES**
**CONTINUED**

**PAGE**

*Toys R US, Inc. Privacy Litig., In re*
No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ...................... 6, 9, 10, 11, 18

*Trans Union Corp. Privacy Lit., In re*
211 F.R.D. 328 (N.D. Ill. 2002) .................................................................................. 24

*United States v. Caceres*
440 U.S. 741 (1979) ......................................................................................................... 6

*Vasquez-Torres v. StubHub, Inc.*
No. CV 07-1328 FMC (FFMx), 2008 U.S. Dist. LEXIS 22503 (C.D. Cal. Mar. 4, 2008) ......................................................................................................................... 24

*Vess v. Ciba-Geigy Corp. USA*
317 F.3d 1097 (9th Cir. 2003) .................................................................................... 12

*Wilcox v. Commerce Bank*
474 F.2d 336 (10th Cir. 1973) .................................................................................... 25

*Wilson v. Am. Cablevision*
133 F.R.D. 57 (W.D. Mo. 1990) ................................................................................. 25

**STATUTES**

18 U.S.C.
§ 1030(a)(2)(C) ................................................................................................ 17, 18
§ 1030(a)(5)(A) ................................................................................................ 17, 18
§ 1030(a)(5)(A)(i) ............................................................................................ 17, 19
§ 1030(a)(5)(B) ................................................................................................ 17, 18
§ 1030(a)(5)(B)(i)-(v) ............................................................................................. 17
§ 1030(g) ..................................................................................................... 17, 18, 19
§ 2510 ...................................................................................................................... 5, 9
§ 2510(17)(a) ............................................................................................................. 9
§ 2511 ......................................................................................................................... 7
§ 2511(1) ..................................................................................................................... 5
§ 2511(2)(d) ...................................................................................................... 5, 6, 7, 8
§ 2520(a) .................................................................................................................. 11
§ 2701 ................................................................................................................... 9, 10
§ 2701(a) .............................................................................................................. 9, 10
§ 2701(c) .................................................................................................................. 10
§ 2701(c)(2) ............................................................................................................. 10
§ 2702 ...................................................................................................................... 10
§ 2710(a)(4) ............................................................................................................. 11
§ 2710(b) .................................................................................................................. 11
§ 2710(b)(1) ............................................................................................................. 11

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

iv.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

# TABLE OF AUTHORITIES
## CONTINUED

**PAGE**

§ 2710(c)(2)......................................................................................................23

Cal. Civ. Code
§ 1761(d) .........................................................................................................14

Cal. Civ. Code
§ 1770(a)(5) and (14) ......................................................................................14

Cal. Civ. Code
§ 1782 ..............................................................................................................13

Cal. Penal Code
§ 502 ...................................................................................................15, 16, 23

Cal. Penal Code
§ 502(b)(10) .....................................................................................................16

Cal. Penal Code
§ 502(e)(1).......................................................................................................15

Cal. Penal Code
§ 632 .................................................................................................................7

Fed. R. Civ. P.
12(f)....................................................................................................1, 21, 22

Fed. R. Civ. P.
12(b)(6) ....................................................................................................1, 4, 8

## OTHER AUTHORITIES

H.R. Rep. No. 106-932
October 4, 2000................................................................................................9

Senate Report (Judiciary Committee) No. 100-599
October 5, 1988..............................................................................................11

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

v.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 28, 2009, or as soon thereafter as the matter may be heard in the above entitled court, located at 280 South First Street, San Jose, CA 95113, defendant Facebook, Inc. ("Facebook") will move to dismiss, with prejudice, the Complaint brought against it by Plaintiffs, to strike the injunctive relief sought and the class allegation.

Facebook's Motion to Dismiss and to Strike is made pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all records and papers on file in this action and any evidence or oral argument offered at the hearing on this motion.

### STATEMENT OF ISSUES TO BE DECIDED

**A.** Because each of Plaintiffs' seven causes of action fails to state a claim for which relief can be granted, should all claims be dismissed?

**B.** Because Facebook Beacon became an opt-in service on December 5, 2007, should Plaintiffs' request for injunctive relief be stricken from the Complaint?

**C.** Because Plaintiffs seek disproportionately large statutory damages while alleging no actual damages, should Plaintiffs' class allegations be stricken from the Complaint?

### MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Facebook is a social utility that connects people with friends and others who work, study and live around them. People use Facebook to keep up with friends, upload an unlimited number of photos, share links and videos, and learn more about the people they meet. Facebook's service is free. Users merely agree to a set of terms of use, create unique profiles, decide who can see and share their personal information, and an array of robust web technologies are immediately at the users' disposal.

In November 2007, Facebook launched "Beacon." Beacon allowed users to share information with their selected friends about actions taken on affiliated, but third party, websites. Beacon admittedly attracted a lot of public and media attention. Facebook made several interim changes shortly after the service went live. Ultimately, just 30 days after launch and consistent

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

1.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

with its commitment to respond to community input, Facebook changed Beacon to require an affirmative opt-in before actions on third party affiliated websites would be fed back to the users' personal profiles.

Facebook founder and visionary Mark Zuckerberg publicly apologized for any confusion created by Beacon's launch and reassured the Facebook user community that the company had heard them and would zealously protect their privacy interests.

Against this background, opportunistic plaintiffs filed this purported class action. The complaint is chock full of insinuation, innuendo and accusation. But nowhere does the complaint articulate a cogent theory of how any of the putative class members suffered any actual injury or damages. Facebook's service is free and users have complete control over who sees their personal profiles. To the extent any user personal information was broadcast, Beacon information was only seen by those whom the users had previously designated.

Put simply, this is a strike suit. Without a single allegation as to how Facebook caused any member of the class a penny of pecuniary harm, and with the undisputed fact that the company changed the service just 30 days after launch coupled with a very public apology, this case should not proceed.

Each of Plaintiffs' seven causes of action against Facebook fails as a matter of law and the Complaint must be dismissed. Count I alleges violation of the Electronic Communications Privacy Act. Under that Act, however, the consent of one party to a communication precludes any liability on the part of a third party alleged to have violated the Act. As the facts pled in the complaint allege, the websites with whom Plaintiffs communicated expressly consented to participation in the Facebook Beacon program. In Counts III and IV against Facebook, Plaintiffs invent, out of whole cloth, a theory of secondary liability under the rarely invoked Video Privacy Protection Act that has no basis in the law. In Count V, Plaintiffs seek to impose upon Facebook violations of California's Consumer Legal Remedies Act even though they plead nothing particular with respect to Facebook, and in any event, Facebook's services to users are wholly gratuitous and thus outside the scope of the Act. In Count VI, despite alleging no actual damages, Plaintiffs nonetheless attempt to hold Facebook liable for violations of California's Computer

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

2.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

1  Crime law, which explicitly grants a civil right of action solely to those who suffered "damage or

2  loss." In Count VII, Plaintiffs attempt to make a claim for violations of the Computer Fraud and

3  Abuse Act, but completely fail to adequately allege the damages required for a civil right of

4  action. Finally, in Count VIII, Plaintiffs assert a claim for unjust enrichment, but do not allege

5  how they are impoverished by Facebook's actions.

6       Finally, the injunctive relief Plaintiffs seek is a red herring. Each of the allegedly

7  improper activities that Plaintiffs complain about has been rectified, as Plaintiffs themselves

8  concede.

9       Facebook's motion to dismiss should be granted.

10 **II.  STATEMENT OF FACTS**

11      Founded in February 2004, Facebook operates one of the most popular online social

12 networks on the Internet, www.facebook.com, that helps people communicate more efficiently

13 with their friends, family and coworkers based upon existing friendships, collegiate allegiances,

14 and common interests. Compl. ¶ 44. The company develops technologies that facilitate the

15 sharing of information through the digital mapping of people's real-world social connections.

16 Compl. ¶ 51. Millions of people use Facebook everyday to keep up with friends, share updates,

17 upload an unlimited number of photos, share links and videos, and learn more about the people

18 they meet. *Id.* As of November 2007, there were over 60 million people around the world

19 actively using Facebook. Compl. ¶ 96.

20      On November 6, 2007, Facebook launched a new program called Facebook Beacon.

21 Compl. ¶ 66. Beacon was designed to allow Facebook users to easily share information about

22 their activities on the internet with their friends, such as posting an item for sale, completing a

23 purchase, or scoring a high score in an online game, a function Facebook believed users would

24 enjoy and find useful. Compl. ¶¶ 42, 89.

25      As part of the Beacon program, Facebook presented the Facebook user with a "pop-up"

26 dialog box after the user had completed a particular "triggering" action on a third party site

27 affiliated with Facebook Beacon (Facebook Beacon Activated Affiliate, or "FBAA"). Compl. ¶

28 77. The user could then send the information about the transaction ("the story") to Facebook by

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

3.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

taking no action or closing the pop-up, or the user could choose to decline publication of the information related to the transaction. *Id.* If the user did the former, the next time the user visited Facebook, the user's home page displayed an alert message reminding the user that this story was not yet posted, and presenting the user with the option to decline to post the story. Compl. ¶ 66. If the story was posted, it became visible to the user's Facebook "friends." Compl. ¶ 42.

On December 5, 2007, less than thirty days after its implementation, Facebook released a privacy control that turned Beacon into an "opt-in" service and allowed Facebook users to opt-out of Beacon entirely. Compl. ¶ 89. Beacon has remained an "opt-in" service ever since.

## III.   LEGAL STANDARDS ON RULE 12(B)(6) MOTION TO DISMISS

This Court may dismiss a claim when "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion under Rule 12(b)(6), "all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." *Id.* However, as the Supreme Court recently emphasized, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). A claim should be dismissed if a statutory cause of action does not apply to the defendant's conduct as a matter of law. *See, e.g.*, *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1485-86 (9th Cir. 1995) (dismissal of plaintiff's statutory claim warranted where plaintiff's allegations are insufficient to bring defendant within the parameters of that statute).

## IV.   ARGUMENT

### A.   Plaintiffs' Allegations That Facebook Violated The Electronic Communications Privacy Act Fail As A Matter Of Law.

In their first claim for relief, Plaintiffs allege that Facebook violated the Electronic Communications Privacy Act ("ECPA"). Compl. ¶¶ 108-121. Although the scope of Plaintiffs' allegations is not altogether clear, Plaintiffs' allegations appear directed at two parts of the ECPA, the Wiretap Act and the Stored Electronic Communications Act ("SECA"). Plaintiffs' allegations fail to state a claim under either part.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

4.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

1.      **Plaintiffs Fail To State A Claim Under The Wiretap Act.**

     a.      **Plaintiffs' Wiretap Act Claims Fails Because Facebook's Conduct Is Explicitly Permitted By The Act.**

Plaintiffs allege that Facebook violated the Wiretap Act by purportedly "intentionally obtain[ing] and/or intercept[ing]" electronic communications between Plaintiffs and the websites of the FBAAs.  Compl. ¶ 112.  Even if Plaintiffs' factual allegations concerning Facebook's conduct were true (they are not), Facebook's actions are explicitly deemed *lawful* by the Wiretap Act because the FBAAs – parties to the communications at issue – explicitly agreed to provide the information concerning those communications to Facebook.[1]

The Wiretap Act provides for a private right of action against "any person who . . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept wire, oral, or electronic communication[.]"  18 U.S.C. § 2511(1).  The Wiretap Act, however, provides the following exception:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a[n] . . . electronic communication where such person is a party to the communication or *where one of the parties to the communication has given prior consent to such interception* unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis added).  On the face of Plaintiffs' complaint, the facts alleged (and all reasonable inferences drawn therefrom) establish that Facebook's actions fall within this exception, and thus are not actionable.

The FBAAs were necessarily parties to the Plaintiffs' communications with them, and by entering into agreements with Facebook to participate in the Beacon program, the FBAAs expressly consented to provide information about those communications to Facebook.  Compl. ¶ 3.  Plaintiffs' allegations that the *Plaintiffs* did not consent to Facebook's alleged "interception" are of no import – what matters for the purposes of 18 U.S.C. § 2511(2)(d) is whether *one* of the parties to the communication consented; it need not be both.  *See Chance v. Ave. A, Inc.*, 165 F.

---

[1] Facebook does not concede that its conduct at issue in this case constitutes "interception" as defined by 18 U.S.C. § 2510 and reserves the right to argue that it does not in the event this Court denies the present motion.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

5.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

1   Supp. 2d 1153, 1162 (W.D. Wash. 2001) ("One-party consent is sufficient to negate liability

2   under the consent prong of the Wiretap Act's exception.") (citing *United States v. Caceres*, 440

3   U.S. 741, 750 (1979)).  The FBAAs' consent is sufficient to place the activities at issue within the

4   scope of the exception.

5         This Court has applied this statutory exception in the context of internet communications

6   and dismissed a Wiretap Act claim in a strikingly similar case where, as here, the websites at

7   issue consented to any purported "interception" of communications between them and the

8   plaintiffs.  *In re Toys R US, Inc. Privacy Litig.*, No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal.

9   Oct. 9, 2001).    In *Toys R US*, plaintiffs alleged that Toys R US and a third party advertising

10  service, Coremetrics, "devised a scheme whereby Coremetrics used [ ] data collection methods to

11  secretly intercept and access Webusers' confidential online purchase and Webbrowsing

12  information" in violation of the Federal Wiretap Act. *Id.* at *1.  This Court dismissed plaintiffs'

13  Wiretap Act claim because the complaint pled that Toys R US consented to any interception by

14  Coremetrics, satisfying the Section 2511(2)(d) exception.

15        Just like in *Toys R Us*, the Complaint here demonstrates that the FBAAs provided the

16  required prior consent, thus satisfying the statutory exception.  For example, Plaintiffs assert that

17  FBAAs "were involved in an online marketing joint venture," and that the FBAAs "knowingly

18  authorized, directed, ratified, approved, acquiescent (sic), or participated" in Facebook Beacon.

19  Compl. ¶¶ 1, 3.[2]  Thus, as a matter of law, the allegedly improper Beacon activities fall squarely

20  under the statutory exception and Plaintiffs' Wiretap Act action against Facebook must be

21  dismissed even if Facebook committed every act alleged in the Complaint.  *See also In re*

22  *DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) (dismissing the Wiretap

23  Act claim against defendant because internet site operators consented to placement of cookies and

24  thus defendants' actions were exempted from liability under the Wiretap Act by § 2511(2)(d));

25  *Chance v. Avenue A, Inc.*, 165 F. Supp. 2d 1153 (W.D. Wash. 2001) (holding that because web

26  _____

27  [2] The Facebook press release quoted by Plaintiffs further illustrates that the FBAAs consented to
    and authorized the provision of information to Facebook.  For example, the press release states
    Fandango "is using Beacon so when Facebook users purchase a movie ticket on Fandango.com,

28  they can share their movie plans with their friends on Facebook."  Compl. ¶ 42.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN                                    6.                    FACEBOOK'S MOT. TO DISMISS
                                                                    AND STRIKE COMPL.
                                                                    5:08-CV-03845-RS

pages visited by plaintiffs consented to defendant's placement of "cookies" and action tags on users' computers allegedly without the users' consent, defendant was not liable for a violation of the Wiretap Act).

### b. Plaintiffs' Wiretap Act Claim Further Fails Because Facebook Did Not Purposely Commit Any Criminal Or Tortious Act.

Plaintiffs' Wiretap Act fails not only because they ignored the statutory exception, but also because Plaintiffs fail to plead that Facebook's purpose in implementing its Beacon program was "tortious" or "criminal." 18 U.S.C. § 2511(2)(d).

The "criminal" or "tortious" purpose requirement of Section 2511(2)(d) must be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort. *In re DoubleClick*, 154 F. Supp. 2d at 515. Courts applying Section 2511(2)(d) have consistently ruled that a plaintiff cannot establish that a defendant acted with a "criminal or tortious" purpose simply by proving that the defendant committed a tort or crime. *Id. See also Sussman v. ABC Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("[U]nder section 2511, 'the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception – its intended use – was criminal or tortious.'") (internal citations omitted)). Instead, a plaintiff can only state a claim under Section 2511(2)(d) by alleging that the defendant's purpose and intent was to commit a tort or crime. *See Deteresa v. ABC Inc.*, 121 F.3d 460, 467 (9th Cir. 1997) (holding, under Section 2511, plaintiff must show defendant "taped the conversation for the purpose of violating Cal. Penal Code § 632, for the purpose of invading her privacy, for the purpose of defrauding her, or for the purpose of committing unfair business practices"); *Med. Lab. Mgmt. Consultants v. ABC Inc.*, 30 F. Supp. 2d 1182, 1205 (D. Ariz. 1998) ("Even if Defendants were found liable for fraud, the question is not whether they are ultimately liable for conduct found to be tortious, but whether, at the time the recording took place, they recorded the conversation with the express intent of committing a tort.").

Nowhere have Plaintiffs alleged that Facebook's intent in implementing Beacon was to injure Plaintiffs tortiously or criminally.[3] On the contrary, Plaintiffs' allegations affirmatively

---

[3] Plaintiffs' bald assertion that Facebook's purpose was to "solicit, advertise, and market business

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

demonstrate Facebook's good-faith commercial purpose behind Beacon:

- Mark Zuckerberg, founder of Facebook, stated in a press release that Beacon was released "to try to help people share information with their friends about things they do on the web. . . . When we first thought of Beacon, our goal was to build a simple product to let people share information across sites with their friends.  . . . [W]e believe a lot of information people want to share isn't on Facebook, and if we found the right balance, Beacon would give people an easy and controlled way to share more of that information with their friends." Compl. ¶ 89.

- Facebook told advertisers that Beacon will "allow [advertisers'] customers to share with their friends the actions they take on [advertisers'] website" and "promote [advertisers'] business in an organic, social way."  Facebook further stated that "users remain in control of their information" and that Beacon will "enable effortless sharing while protecting user privacy." Compl. ¶ 66.

- Facebook stated in a press release that "Beacon is a core element of the Facebook Ads system for connecting businesses with users and targeting advertisers to the audiences they want." Compl. ¶ 42.

Plaintiffs' allegations that Facebook committed a number of torts is insufficient to show tortious or criminal intent. *In re DoubleClick,* 154 F. Supp. 2d at 519 ("a culpable mind does not accompany every tortious act").  The *DoubleClick* court concluded that the complaint did not articulate any facts that supported an inference that DoubleClick accessed plaintiffs' electronic communications with the "insidious" intent to harm plaintiffs because, as here, the complaint suggested that DoubleClick executed a "highly-publicized market-financed business model in pursuit of commercial gain – a goal courts have found permissible under § 2511(2)(d)." *Id.*  In light of the abundant evidence proffered in the Complaint that Facebook's motivations were licit and commercial and the utter lack of evidence that its intent was tortious, Plaintiffs have failed to plead that Facebook acted with a "tortious" purpose as a matter of law and thus, their Wiretap Act claim must fail.

---

transactions to the Facebook user and the user's friends without having obtained any of the user's consent," Complaint ¶ 4, is not only factually inaccurate, but is insufficient to survive this motion. Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim. *Halkin v. VeriFone, Inc.*, 11 F.3d 865, 868 (9th Cir. 1993). *See also Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) ("labels and conclusions, and a formulaic recitation of the elements of a cause of action will not survive a motion to dismiss"); *In re Intuit Privacy Litigation*, 138 F.Supp.2d 1272, 1277 (C.D. Cal. 2001) (holding that merely reciting statutory language is insufficient to survive a Rule 12(b)(6) motion to dismiss).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

8.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

## 2.    Plaintiffs Fail To State A Claim That Facebook Violated SECA.

Plaintiffs do not appear to appreciate the difference between the Wiretap Act (18 U.S.C. § 2510 *et. seq.*) and the Stored Electronic Communications Act ("SECA") (18 U.S.C. § 2701) or the mutual exclusivity of these allegations.  Plaintiffs' purported SECA claim against Facebook appears in one single sentence buried among allegations of Wiretap Act violations: "Defendants exceeded their authorization to access and control private information concerning Plaintiffs' electronic communications, in violation of 18 U.S.C. § 2701."  Compl. ¶ 115.  Plaintiffs patently fail to plead how Facebook met the elements of SECA.  Moreover, Plaintiffs are barred from pursuing this Count even if it were properly pled, because like the Wiretap Act, SECA's statutory exception provides that the authorization of one party to a communication renders any alleged "access" lawful.

Plaintiffs do not plead that the communications at issue were in "electronic storage," which is a required element of a violation under SECA.  Section 2701(a)  provides that SECA is violated by a person who (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication *while it is in electronic storage* in such system.  18 U.S.C. § 2701(a).  The ECPA defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof."  18 U.S.C. § 2510(17)(a).  The legislative history reveals that Congress intended such a limited definition: "temporary intermediate storage describes an e-mail message that is being held by a third party Internet service provider until it is requested to be read."[4]  *See* H.R. Rep. No. 106-932, at *41 (2000) filed concurrently herewith as Exhibit A to the Declaration of Melina K. Patterson in Support of Facebook's Request for Judicial Notice ("Patterson Decl.").  The Complaint does not even mention the term "electronic storage," much less explain how the alleged communications

---

[4]  Notably, this Court has held that cookies stored on hard drives of computers are not in "electronic storage" for purposes of SECA.  *In re Toys R US*, 2001 WL 34517252 at *3.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

1   were so stored and thus there is no support for a violation of Section 2701 in the Complaint.[5]

2   Furthermore, Section 2701(a) of SECA does not apply "with respect to conduct authorized

3   . . . by a user of that service with respect to a communication of or intended for that user." 18

4   U.S.C. § 2701(c).   As with the Wiretap Act, courts have consistently held that the statutory

5   exception set forth in Section 2701(c)(2) is applicable as long as *one* party to a communication

6   provides consent – and as described in detail in section IV(A)(1), supra, Plaintiffs have amply

7   pled that the FBAAs have consented to Facebook's purported access to the communications at

8   hand.  *See, e.g., In re Toys R US*, 2001 WL 34517252 (dismissing plaintiffs' SECA claim because

9   websites with whom plaintiffs communicated authorized advertising service to use technology to

10   access certain of those communications); *In re DoubleClick*, 154 F. Supp. 2d 497 (same).  Thus,

11   Plaintiffs' allegations that Facebook violated SECA must be dismissed.[6]

12   **B.     Plaintiffs' Allegations That Facebook Aided And Abetted Violations Of, And**
     **Conspired To Violate The Video Privacy Protection Act Fail Because The Act**
13   **Does Not Allow For Secondary Liability**

14   In Counts III and IV of the Complaint, Plaintiffs allege that Facebook aided and abetted

15   violations of the Video Privacy Protection Act (the "VPPA," which is a provision within the

16   ECPA) and conspired with certain other defendants to violate the VPPA, respectively.  Plaintiffs'

17   efforts to tailor new causes of actions out of the VPPA fail as a matter of law.  Barred from

18

19   _____

20   [5] Moreover, the Ninth Circuit has held that under ECPA, an electronic communication may either
     be intercepted and actionable under the Wiretap Act or acquired while in electronic storage and
21   actionable under SECA, but *not both*.  *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 450
     (C.D. Cal. 2007) (citing *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 877 (9th Cir. 2002)).
22   Therefore, to the extent Plaintiffs contend that the communications are subject to SECA, their
     Wiretap Act claim must fail by default, or vice versa.

23   [6] Plaintiffs' allegation that "Defendants unlawfully and knowingly divulged Plaintiffs' electronic
     communication contents and user information in violation of 18 U.S.C. § 2702," Complaint ¶
24   116, also fails.  Plaintiffs have made no effort to support this amorphous claim with any facts in
     their Complaint and it is unclear whether this allegation is meant to target Facebook or the other
25   Defendants in this case.  Moreover, while it is impossible to intuit which subsection of § 2702, if
     any, Plaintiffs allege Facebook violated, subsection (1) limits liability to entities "providing an
26   electronic communication service to the public" and subsections (2) and (3) limit liability to
     providers of "remote computing service or electronic communication service to the public."
27   Plaintiffs failed to plead how Facebook - a social networking website - fits into either of these
     categories.
28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN                                    10.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

holding Facebook directly liable under the VPPA,[7] Plaintiffs fashion a novel and wholly unsupportable theory of secondary liability for other defendants' alleged primary violations of the VPPA. Compl. ¶¶ 135-142 (alleging aiding and abetting violations of the VPPA) and Compl. ¶¶ 143-148 (alleging conspiracy to violate the VPPA).

The Ninth Circuit recently refused to read secondary liability into an ECPA statute. *Freeman v. DirectTV, Inc.*, 457 F.3d 1001 (9th Cir. 2006). In *Freeman*, plaintiffs sued DirectTV for allegedly conspiring with and aiding and abetting another party in violating SECA, which, like the VPPA, is part of the ECPA. *Id.* at 1004. In dismissing the secondary liability claims, the court found "no textual support for [plaintiffs'] contention that Congress explicitly provided for aiding and abetting or conspiracy claims," and that the legislative history did not support the application of secondary liability. *Id.* at 1004-1005. The court instructed that "[w]hen a statute is precise about who . . . can be liable, courts should not implicitly read secondary liability into the statute." *Id. at* 1006 (internal citations omitted). *See also In re Toys R US*, 2001 WL 34517252 (holding that Section 2520(a) of the ECPA, of which the VPPA is a part, does not provide a cause of action against aiders and abetters).

Just as in *Freeman*, nothing in the text of the VPPA or its legislative history implies that Congress intended for secondary liability to attach from another party's alleged violation. First, the plain text of the statute clearly limits liability to video tape service providers, or VTSPs. Second, the legislative history indicates that the statute was only intended to apply to the VTSPs who disclose the information, not to a third party who publishes the information disclosed to them by a VTSP. The VPPA was enacted in response to a video store providing a reporter with the titles of 146 movies Judge Robert H. Bork rented over the years, which were then published in a newspaper. *See* S. REP. No. 100-599, at *5 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 4342-1,

---

[7] Direct liability under the VPPA is unambiguously limited to "video tape service providers" ("VTSP") by the plain text of the statute. 18 U.S.C. § 2710(a)(4) ("A *video tape service provider* who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable . . . ." 18 U.S.C. § 2710(b)(1) (emphasis added)). Facebook is not a VTSP, and nor do Plaintiffs allege that Facebook is a VTSP. Accordingly, Facebook cannot be directly liable under the VPPA. *See Daniel v. Cantrell*, 375 F.3d 377, 384 (6th Cir. 2004) (it is "clear that only a VTSP can be liable under § 2710(b)").

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

11.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

1  attached as Exh. B to the Patterson Decl.  Although the reporter published the titles of Judge

2  Bork's rentals, Congress drafted the VPPA to provide liability only for the video store.  Congress

3  could have drafted the VPPA to include secondary liability for the reporter and for the newspaper,

4  but chose not to.[8]  Accordingly, as there is absolutely nothing in the text or history of the VPPA

5  to support Plaintiffs' contention that Facebook could face secondary liability under the VPPA for

6  conspiracy or aiding and abetting a violation of the Act, both Counts III and IV must fail.[9]

7      **C.**    **Plaintiffs' Allegation That Facebook Violated California's Consumer Legal Remedies Act Fails As A Matter Of Law.**

8          **1.**    **Plaintiffs Do Not Plead Their CLRA Claim With the Requisite Particularity.**

9

10       Plaintiffs' allegations that Facebook violated California's Consumer Legal Remedies Act

11  ("CLRA") fall woefully short of the requirements of Rule 9(b) of the Federal Rules of Civil

12  Procedure and thus must be dismissed.

13       Where, as here, plaintiffs allege a course of fraudulent conduct as the basis of a claim, the

14  claim is said to be "grounded in fraud" or to "sound in fraud" and plaintiffs must satisfy the

15  requirements of Rule 9(b) by pleading "the who, what, when, where, and how" of the misconduct

16  charged.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (holding that

17  certain allegations of violations of CLRA were grounded in fraud and thus must satisfy Rule

18  9(b)).  Merely making general conclusory allegations of fraud and then reciting a list of neutral

19  facts is not sufficient to meet the requirement of Rule 9 of Civil Procedure that averments of fraud

20  or inequitable conduct be stated with particularity.  *Stack v. Lobo*, 903 F.Supp. 1361, 1367 (N.D.

21  Cal. 1995).  Allegations of fraud must be specific enough to give defendants notice of the

---

[8] Moreover, because "Congress has not enacted a general civil aiding and abetting statute" "there is no general presumption that the plaintiff may also sue aiders and abetters."  *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994).

[9] Moreover, Plaintiffs have not pled that Facebook had the requisite *mens rea* for a civil conspiracy claim. Plaintiffs failed to allege that Facebook and the FBAAs "agreed to a common plan or design to commit a tortious act." *See Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581-82 (1995) (internal citations omitted).  Plaintiffs also failed to plead that Facebook knew the plan was unlawful and intended to aid in achieving an unlawful objective with the purpose of harming another.  *See Schick v. Lerner*, 193 Cal. App. 3d 1321 (1987); *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480 (9th Cir. 1984).  On the contrary, Plaintiffs' pleadings demonstrate that Facebook had a licit, commercial purpose for implementing Beacon.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

12.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

1    particular alleged misconduct so that they can defend against the charge and not just deny that

2    they have done anything wrong.  *Bly-Magee v. Cal.*, 236 F.3d 1014 (9th Cir. 2001).

3        The Complaint is beyond simply failing to meet this standard – the CLRA allegations with

4    respect to Facebook are virtually incomprehensible.  The Complaint contains a blanket statement

5    that all CLRA Defendants represented that (a) the use of their websites has characteristics, uses,

6    benefits, or quantities which they do not have; and (b) the use of their websites confers or

7    involves rights, remedies, or obligations which they do not have or involve, or which are

8    prohibited by law.  Compl. ¶ 157.  In addition, the Complaint alleges that the CLRA Defendants

9    concealed material facts regarding the use and implementation of their websites from Plaintiffs,

10   including the existence of the Beacon Program.  Compl. ¶ 158.  However, the Complaint contains

11   no factual allegations whatsoever to support how Facebook allegedly perpetrated these particular

12   wrongs.[10]   Indeed, the Complaint devotes four paragraphs to describing the purportedly

13   fraudulent activities of each of the other defendants alleged to have violated CLRA, but says

14   nothing whatsoever about Facebook.  Compl. ¶¶ 150-153.

15       It is completely *impossible* to determine from the Complaint which "characteristics, uses,

16   benefits" or which "rights, remedies, or obligations" of www.facebook.com Facebook allegedly

17   misrepresented or what "material facts" Facebook allegedly "concealed."  Without notice of the

18   particular misconduct that is alleged to constitute the fraud charged, Facebook is wholly unable to

19   defend against the allegations.  *See Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013,

20   1022-1023 (N.D. Cal. 2006) (dismissing fraud claim because plaintiffs' allegations improperly

21   ascribe conduct generally to all thirteen defendants but fail to allege specific facts regarding how

22   each defendant has committed fraud upon plaintiffs).  Plaintiffs' CLRA cause of action, therefore,

23   must be dismissed for failing to meet the necessary pleading standards.[11]

24

---

25   [10] On the contrary, the Complaint alleges that Facebook disclosed to its users that it defaults to

26   share users' personal information.  Compl. ¶ 57.

     [11] Moreover, Plaintiffs did not bother to follow the procedures required to assert damages under

27   CLRA, presumably because they have not suffered any actual damages. (CLRA requires that at

28   least thirty days prior to commencing an action for damages, the consumer must send a written
     demand letter to the party alleged to have violated CLRA.  Cal. Civ. Code § 1782.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

13.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

**2.     Plaintiffs Are Precluded From Bringing A CLRA Action Against Facebook Because Plaintiffs Are Not Facebook's "Consumers."**

Even assuming, *arguendo*, that Plaintiffs satisfied Rule 9(b), their allegations that Facebook violated CLRA fail.  CLRA authorizes actions by "consumers," but Plaintiffs are not Facebook "consumers" under a plain reading of the statute.

Plaintiffs allege that Facebook violated Sections 1770(a)(5) and (14) of CLRA, which refer to "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the *sale or lease* of goods or services to any *consumer* . . . ." *See* Cal. Civ. Code § 1770(a)(5) and (14) (emphasis added). Plaintiffs baldly allege that they are "consumers" within the meaning of Civil Code Section 1761(d) (Compl. ¶ 155), which defines a "consumer" as "an individual who seeks or acquires, *by purchase or lease*, any goods or services for personal, family, or household purposes."  *See* Cal. Civ. Code § 1761(d) (emphasis added).

But as Plaintiffs concede, Facebook is "free for use." Compl. ¶ 45.  Plaintiffs never bought or leased any tangible chattels or goods from Facebook.  Plaintiffs never bought or leased any services from Facebook.  And none of Facebook's allegedly improper activities was part of a transaction intended to result in the sale or lease of goods or services to any consumer.  Because Facebook is a *free* service that never sold or attempted to sell or lease any goods or services to Plaintiffs, Plaintiffs are not consumers for the purposes of CLRA[12] and thus Plaintiffs cannot state a cause of action under CLRA.

---

[12] While there is no case law interpreting CLRA's definition of "consumer," courts in states with similar statutes have consistently held that a "gratuitous act is not a purchased good or service" under that state's unfair business practices law.  *See Rayford v. Maselli*, 73 S.W.3d 410, 411 (Tex. App. 1st Dist. 2002) (dismissing appellant's claim under the Texas Deceptive Trade Practices - Consumer Protection Act because appellant received legal services gratuitously and thus was not a consumer); *Gottlieb v. Tropicana Hotel & Casino*, 109 F. Supp. 2d 324 (E.D. Pa. 2000) (holding that participant in casino's prize promotion game was not a purchaser or lessor of goods and services and, thus, lacked standing to bring claim against casino under Pennsylvania's Unfair Trade Practices and Consumer Protection Law for failing to pay her prize money); *Steinberg v. Chicago Medical School*, 371 N.E.2d 634 (Ill. 1977) (holding that an unsuccessful medical school applicant was not a "consumer" under the Illinois Consumer Fraud and Deceptive Business Practice Act because he did not purchase merchandise).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

14.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

D.   **Plaintiffs' Allegation That Facebook Violated California's Computer Crime Law Fails As A Matter Of Law.**

1.   **Plaintiffs Cannot State A Cause Of Action Under California Penal Code § 502 Because They Have Not Suffered Any "Damage Or Loss" As A Result Of Facebook's Alleged Misconduct.**

Plaintiffs' Count VI, violation of California's Computer Crime Law (Cal. Penal Code § 502), fails as a matter of law because Plaintiffs have not satisfied the statute's prerequisite that they suffer any "damage or loss" prior to bringing a claim. Indeed, the Complaint states in no uncertain terms that Plaintiffs "have no adequate remedy at law." Compl. ¶ 172.

Section 502 permits "the owner or lessee of the computer, computer system, computer network, computer program, or data" to bring a civil action "for compensatory damages and injunctive relief" if the owner or lessee "*suffers damage or loss* by reason of a violation of any of the provisions of subdivision (c) . . . ." Cal. Penal Code § 502(e)(1) (emphasis added). The Penal Code does not provide a definition of "damage" or "loss" for the purposes of Section 502.

However, no definition of damage or loss, no matter how broad, would permit Plaintiffs to recover under Section 502, as Plaintiffs fail to allege that the alleged privacy violations caused Plaintiffs any actual "damage" or "loss" that could be redressed by compensatory damages. The statute defines compensatory damages as including "any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(e)(1). Nowhere in the Complaint do Plaintiffs allege that they have expended any monies at all – much less any money to verify that their computer systems, networks, programs, or data were not altered, damaged, or deleted.[13] Because Plaintiffs fail to allege that they have suffered

---

[13] While Plaintiffs attempt to reserve their rights to assert pecuniary loss at some future point with their vague assertion that Facebook has "caused loss to Plaintiffs in an amount to be proven at trial," Complaint ¶ 171, Plaintiffs' contentions defeat their own class action. While Facebook contends that its actions did not cause anyone any damage, even assuming *arguendo* that some individuals were indeed damaged, it is logically impossible that all members of Plaintiffs' purported class suffered identical or even similar "damages" or "losses." By failing to plead damages in their Complaint and punting that determination until trial, Plaintiffs are effectively conceding that damages are highly individualized and that therefore, this action may not be maintained as a class action.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

15.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

any damage or loss, they cannot state a claim under Section 502.

### 2. Facebook Did Not Introduce A "Contaminant" As Defined By California Penal Code § 502(C)(8).

Plaintiffs allege that Facebook violated Penal Code Section 502 by introducing a "contaminant" into transactions between Plaintiffs and certain FBAAs.  Compl. ¶ 170.  Section 502(b)(10)  defines "computer contaminant" as "any set of computer instructions that are designed to modify, damage, destroy, record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information."

It is plainly evident that the Beacon program is not a contaminant under the statute. Contaminants are defined to include "a group of computer instructions commonly called viruses or worms, that are self-replicating or self-propagating and are designed to contaminate other computer programs or computer data, consume computer resources, modify, destroy, record, or transmit data, or in some other fashion usurp the normal operation of the computer, computer system, or computer network."  Cal. Penal Code § 502(b)(10).  Facebook Beacon – a widely publicized program developed by a widely known company – is plainly not the destructive and self-replicating "worm" or "virus" envisioned by the statute.  Beyond simply reciting the words of Section 502, Plaintiffs plead nothing to support their allegations that Beacon was such a "contaminant."

Furthermore, Plaintiffs fail to plead that any set of computer instructions created by Facebook were "designed" to do anything without the user's permission because, as explained previously, Plaintiffs concede that they were provided with a pop-up screen (called a "toast") asking for their consent to publish their information on their Facebook profiles.  Compl. ¶ 77. Facebook also provided users with a second opportunity to decline publication of the transaction on its home page.  Compl. ¶ 66.  In sum, the issue is not whether Facebook users were asked for their consent, just merely whether it was done effectively enough.  Moreover, Plaintiffs fail to plead that Beacon was designed for illicit purposes, which is at the heart of Penal Code 502.

//

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

16.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

E.   **Plaintiffs' Allegation That Facebook Violated The Computer Fraud And Abuse Act Fails As A Matter Of Law.**

1.   **Plaintiffs Fail To State A Claim Under The CFAA Because They Have Not Adequately Alleged the Damages Required by the Statute.**

Plaintiffs allege that Facebook violated provisions of the Federal Computer Fraud and Abuse Act ("CFAA") in two ways: (1) by intentionally accessing a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information form such a protected computer (Compl. ¶ 174, citing 18 U.S.C. § 1030(a)(2)(C) (the "(a)(2)(C) violation")); and (2) by knowingly causing the transmission of a program, information, code, or command, and as a result, causing a loss to one or more persons during any one-year period aggregating at least $5,000 in value (Compl. ¶ 175, citing 18 U.S.C. § 1030(a)(5)(A)(i) (the "(a)(5)(A) violation")).

Plaintiffs' CFAA claims must fail for three reasons:  (1) Plaintiffs' claims under Section 1030(a)(2)(C) fail because they do not allege any of the five injuries that give rise to a civil action under 1030(g); (2) Plaintiffs' claims under Section 1030(a)(5)(A) fail because Plaintiffs' alleged losses are not economic losses; and (3) Plaintiffs' claims fail because they fail to allege that Facebook intentionally caused any damage.  Thus, Count VII should be dismissed in its entirety.

a.   **Plaintiffs Completely Fail to Allege Any Damages In Connection With Their 1030(a)(2)(C) Claim.**

The CFAA permits a private civil right of action to anyone who suffers a damage or loss by reason of violation of certain provisions of the CFAA.  18 U.S.C. § 1030(g).  The types of damage or injury that give rise to a private civil right of action under Section 1030(g) are specifically listed in Section 1030(a)(5)(B).[14]  Despite the clear requirement that a civil litigant must allege damages falling within the harms set forth in Section 1030(a)(5)(B), Plaintiffs completely fail to allege any of these with respect to Facebook's alleged (a)(2)(C) violation.

---

[14] A civil litigant must allege damages or injury in one of the following five categories to bring an action under Section 1030(g): "(i) loss to one or more persons during any one-year period . . . aggregating at least $5,000 in value; (ii) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of one or more individuals; (iii) physical injury to any person; (iv) a threat to public health or safety; or (v) damage affecting a computer system used by or for a government entity in furtherance of the administration of justice, national defense, or national security." 18 U.S.C. § 1030(a)(5)(B)(i)-(v).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

17.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

Instead, Plaintiffs only allege that "Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), by intentionally accessing a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a protected computer." Compl. ¶ 174. *Nowhere* in this paragraph is a claim that Facebook's alleged 1030(a)(2)(C) violation caused any of the losses or injuries set forth in Section 1030(a)(5)(B).  As such, Plaintiffs' allegations have a fatal defect, and Plaintiffs' CFAA claim with respect to the alleged (a)(2)(C) violation must be dismissed.

> **b.       Plaintiffs Fail To Adequately Allege The Requisite $5,000 In Economic Damages In Connection With Their 1030(a)(5)(A) Claim.**

Plaintiffs' CFAA claim under Section 1030(a)(5)(A) must also be dismissed.  As noted above, Section 1030(g) requires that the alleged conduct involve one of the five injuries set forth in subsection (a)(5)(B)(i)-(v).  18 U.S.C. §1030(g).  Plaintiffs attempt to plead an injury under subsection (a)(5)(B)(i) by alleging that Facebook's actions allegedly "cause[d] a loss to one or more persons during any one-year period aggregating at least $5,000 in value."  Compl. ¶ 175. However, the "loss" referred to in subsection (a)(5)(B)(i) is limited to *economic damages*.  18 U.S.C. § 1030(g) ("Damages for a violation involving only conduct described in subsection (a)(5)(B)(i) are limited to economic damages.").  Thus, Section 1030(g) requires that, if the alleged conduct involves subsection (i) of 1030(a)(5)(B) (as Plaintiffs have alleged), then the only damages recoverable are economic damages.  *See In re Toys R US*, 2001 WL 34517252, at *10; *In re DoubleClick*, 154 F. Supp. 2d at 525 n.33 ("only economic losses are recoverable under 1030(g)").[15]

Plaintiffs do not plead any *economic* damages.  Instead, Plaintiffs allege that their "loss" arises by reason of: 1) violations of the right of privacy; 2) disclosure of affiliation and business

---

[15] Although the cases cited also deal with complicated issues of how many acts, computers, or individuals may be aggregated to meet the $5,000 threshold, those issues need not be addressed in this Motion, as the *type* of damages Plaintiffs rely on are not the "economic damages" required by Section 1030(g) – no amount of aggregation across multiple acts, computers, or individuals would change that fact.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

18.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

relationships between Plaintiffs and internet product and service providers; and 3) disclosure of specific purchase and transactional information. Compl. ¶ 176. None of these three alleged "losses" is an *economic loss*.

Previous courts looking at the type of "losses" that Plaintiffs allege here (violation of right of privacy and collection of information) have held that these "losses" are not the type of economic losses required by the statute. Collection of demographic information by computer systems does not translate into a corresponding "loss" to Plaintiffs under Section 1030(g). *See In re DoubleClick*, 154 F. Supp. 2d at 524-25. Emotional distress due to invasion of privacy is not an economic loss recoverable under Section 1030(g). *Id.* at 525 n.33. Gathering of information about user's actions on the internet does not constitute an economic loss under Section 1030(g). *See In re Intuit*, 138 F. Supp. 2d at 1274.

The mere fact that Plaintiffs baldly allege that they have suffered the requisite $5,000 in economic damages by merely repeating the language of the statute does not remedy the fatal defect that they have failed to allege any specific facts showing any economic loss. *See Bell Atl. Corp.*, 127 S. Ct. at 1965 ("labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" survive a motion to dismiss). Plaintiffs alleged "losses" do not constitute the economic losses required by the CFAA. As such, Plaintiffs' CFAA claims must be dismissed.

### 2. Plaintiffs' 1030(a)(5)(A)(i) Claim Also Fails Because Plaintiffs Fail To Plead That Facebook "Intentionally Caused Damage."

Plaintiffs allege that Facebook violated the CFAA "by knowingly causing the transmission of a program, information, code, or command and as a result causing a loss to one or more persons during any one-year period aggregating at least $5,000 in value." Compl. ¶ 175. Plaintiffs' conclusory allegation is insufficient to meet the requirement under the CFAA that an action can only be brought against a defendant who "*intentionally* causes damage without authorization, to a protected computer . . . ." 18 U.S.C. § 1030(a)(5)(A)(i) (emphasis added). Not only do Plaintiffs fail to allege that Facebook intended to cause damage, it is simply not the case. As noted in Section IV(A)(2) above, Facebook had a good-faith purpose for instituting the

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

19.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

1   Beacon program, rather than a sinister intent to cause damage on its users' computers.  Because

2   Plaintiffs do not, and cannot, allege that Facebook *intentionally* caused damage, Plaintiffs' CFAA

3   claim with respect to the alleged (a)(5)(A) violation must be dismissed.

4       **F.**    **Plaintiffs' Claim For Unjust Enrichment Fails As A Matter Of Law.**

5       Last in the laundry list of Plaintiffs' claims, Plaintiffs bring as Count VIII a claim for

6   unjust enrichment.   Compl. ¶¶ 178-181.   Although Plaintiffs do not articulate which state's

7   common law governs their claim for unjust enrichment, presumably Plaintiffs' claim for unjust

8   enrichment is governed by either California or Delaware law – California because Plaintiffs have

9   chosen to bring their claims in this state, or Delaware because that is the state law governing the

10   contractual relationship between the parties.[16]   This Court need not engage in a choice of law

11   exercise to determine which law to apply.   Under either state's law, Plaintiffs' claim fails.

12       **1.**    **Plaintiffs' Unjust Enrichment Claim Under California Law Fails**
**Because There is No Such Cause of Action in California.**

13

14       California courts have held that unjust enrichment is not in itself a cause of action.   *See,*

15   *e.g. Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008) ("[U]njust enrichment is not a

16   cause of action. . . .   Rather, it is a general principle underlying various doctrines and remedies,

17   including quasi-contract." (internal citations omitted)); *Melchior v. New Line Productions, Inc.*,

18   106 Cal. App. 4th 779, 794 (2003) ("[T]here is no cause of action in California for unjust

19   enrichment.   The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an

20   effect: the result of a failure to make restitution under circumstances where it is equitable to do

21   so. . . . Unjust enrichment is a general principle, underlying various legal doctrines and remedies,

22   rather than a remedy itself" (internal citations and quotation marks omitted)).   As such, Plaintiffs'

23   unjust enrichment claim fails because no such claim exists under California law, and Count VIII

24   must be dismissed.

25

26   ───────────────

[16]   As Plaintiffs note in their Complaint, Facebook members are contractually bound to

27   Facebook's Terms of Use.   Compl. ¶ 56.   The Facebook Terms of Use state that the law of the
State of Delaware "govern[s] these Terms of Use and any dispute of any sort that might arise

28   between you and the Company or any of our affiliates."   Patterson Decl., Exh. C.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

20.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

**2. Under Delaware Law, Plaintiffs Have Not Alleged That They Have Been Impoverished, Or That There Is No Adequate Remedy At Law.**

To the extent Plaintiffs purport to bring their unjust enrichment claim under Delaware law, that claim fails as well. Plaintiffs fail to plead essential elements of an unjust enrichment claim under Delaware law. The elements of unjust enrichment under Delaware law are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law. *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043 (Del. Super. 2001); *see also McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc*, 339 F.3d 1087 (9th Cir. 2003).

Plaintiffs have not alleged that they have suffered an impoverishment. Nowhere do Plaintiffs claim that Facebook's alleged actions are to Plaintiffs' monetary detriment. Indeed, other courts addressing the value of collected demographical information have noted its complete lack of monetary value to the person from whom the information is collected. *See In re DoubleClick*, 154 F. Supp. 2d at 525 (noting that "although demographic information is valued highly . . . the value of its collection has never been considered a[n] economic loss to the subject" and further noting that no court "has held the value of this collected information constitutes . . . unjust enrichment to collectors."). Plaintiffs' failure to allege the essential element of impoverishment is fatal to their unjust enrichment claim.

Similarly, Plaintiffs fail to allege that they have no adequate remedy at law. The entirety of Count VIII spans a mere four paragraphs, and nowhere in those four paragraphs do Plaintiffs allege that they have no adequate remedy at law. Compl. ¶¶ 178-179. Moreover, any attempt to claim that Plaintiffs have no adequate remedy at law would be belied by the *seven other claims* brought in the lawsuit, under both Federal and State law. Plaintiffs' unjust enrichment claim must fail because they do not, and cannot, allege that they have no adequate remedy at law, and therefore, Count VII should be dismissed.

**G. Plaintiffs' Prayer For Injunctive Relief Must Be Stricken From The Complaint As Moot.**

Pursuant to Federal Rule of Civil Procedure 12(f), a Court may strike from any pleading

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

21.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

1   "any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).  This rule

2   allows the parties and the Court to "avoid the expenditure of time and money that must arise from

3   litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty,*

4   984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517 (1994).  A defendant

5   is entitled to an order striking any part of the prayer for relief when the damages sought are not

6   recoverable as a matter of law.  *Tan v. University of Cal. San Francisco*, Case No. 06-04697,

7   2007 WL 963223 (Mar. 29, 2007 N.D. Cal.)

8       Plaintiffs' prayer for relief seeks a preliminary and permanent injunction, restraining

9   Facebook from engaging in the acts described in the Complaint.  Plaintiffs define the "Class

10  Period" as ending on December 5.  Compl. ¶ 90.  Inasmuch as Plaintiffs themselves acknowledge

11  that Facebook Beacon became an "opt-in" system on December 5, 2007, (Compl. ¶ 5) they can

12  scarcely dispute that all the claims for injunctive relief advanced in the Complaint are moot.  As

13  Plaintiffs have conceded that Facebook remedied Beacon's alleged defects, this Court cannot

14  grant effective relief to Plaintiffs and must thus strike any prayer for injunctive relief from the

15  Complaint.  *See Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895 (9th Cir. 2007)

16  (dismissing claims for injunctive relief as moot where changed legislation cured the constitutional

17  deficiencies originally alleged); *Carlson v. United Academics-AAUP/AFT/APEA AFL-CIO*, 265

18  F.3d 778 (9th Cir. 2001) (defect in union's notice to plaintiff was cured, and therefore mooted, by

19  union's subsequent notice, so that plaintiff's request for injunctive relief as to earlier notice was

20  properly denied).

21  **H.    Plaintiffs' Claims Class Allegations Must be Stricken Because They Fail To
        Allege Any Actual Damages And Statutory Damages Are Grossly
22      Disproportionate To Any Purported Harm To Plaintiffs.**

23       Plaintiffs have alleged no actual damages and yet, if they win on the merits of their

24  Complaint, Facebook would be held liable for a minimum of $125 million in statutory damages.

25  Given the extreme disparity between any actual harm to individual members of the purported

26  class and the shocking damage award, all class allegations must be stricken from the Complaint

27  pursuant to Rule 12(f) because by maintaining a class action, Plaintiffs seek damages that are not

28  recoverable as a matter of law.  *Tan*, 2007 WL 963223 at *1 (striking damages sought because

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

22.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

1   they are "not recoverable as a matter of law.")

2       For Count I (violation of the ECPA), in addition to "preliminary, equitable, and

3   declaratory relief," Plaintiffs seek "statutory damages of the greater of $10,000 or $100 a day for

4   each day of violation, actual and punitive damages." Compl. ¶ 121. For Counts III and IV (aiding

5   and abetting and conspiring to violate the VPPA), Plaintiffs allege that they suffered injury and

6   loss resulting out of the loss of their privacy but allege no actual damages. The VPPA allows the

7   court to award "actual damages but not less than liquidated damages in an amount of $2,500." 18

8   U.S.C. § 2710(c)(2). Nowhere in their 59-page Complaint do Plaintiffs allege that any of

9   Facebook's alleged misconduct caused any of them any pecuniary harm.[17] However, if Plaintiffs

10  succeed on the merits of their ECPA claims and the class is determined to be ten thousand people

11  – the floor of Plaintiffs' current estimation[18] – Facebook could be liable for a staggering statutory

12  penalty of *$100 million* for violations that caused nobody any actual loss. Furthermore, if

13  Plaintiffs succeed on the merits of their VPPA claims, the penalty could increase by another *$25*

14  *million*. Where, as here, enormous statutory damages awards would constitute "horrendous,

15  possibly annihilating punishment, unrelated to any damage to the purported class," courts have

16  denied certification for failure to meet Rule 23(b)(3)'s superiority requirement. *See Ratner v.*

17  *Chem. Bank,* 54 F.R.D. 412, 416 (S.D.N.Y. 1972) (refusing to certify a class due to the disparity

18  between the potential $13 million liability for 130,000 class members and non-existent actual

19  harm).

20      In *Kline v. Coldwell, Banker & Co.*, the Ninth Circuit adopted the reasoning in *Ratner* and

21  _____

22  [17] With respect to Plaintiffs' other Counts, Plaintiffs seek solely injunctive relief for Count V
    (CLRA) and claim that Facebook have caused loss to Plaintiffs "in an amount to be proved at

23  trial" for Count VI (Cal. Penal Code § 502). Defendants also baselessly allege that Facebook's
    purported violations of the Federal Computer Fraud and Abuse Act (Count VII) have caused a

24  "loss to one or more persons during any on-year period aggregating at least $5,000 in value," but
    fail to demonstrate how those losses are economic in nature. Moreover, even if any of the

25  Plaintiff were able to demonstrate actual pecuniary loss, it would be unique to that Plaintiff and

26  could not be pursued on a class basis.
    [18] Plaintiffs allege that "there are estimated to be tens of thousands of Class members." Compl. ¶

27  96. It is unclear how Plaintiffs came up with this estimation but they appear to be basing it on the
    fact that when Facebook introduced Beacon, Facebook had more than 60 million members and

28  that the FBAAs are themselves "heavily trafficked websites." *Id.*

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN                          23.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

denied certification where "outrageous" statutory penalties are sought in disproportion to the injury claimed.  508 F.2d 226, 234 (9th Cir. 1974) (reversing certification of antitrust class where trebled damages of $750 million were "staggering" compared to actual harm).  Courts in this Circuit have continued to refuse to certify classes where, as here, no actual harm or injury was alleged, yet defendants face disproportionate and potentially ruinous statutory damages.  For instance, in *Vasquez-Torres v. StubHub, Inc.*, the court, adopting *Kline* and similar cases, denied certification of a 2 million member class that alleged no actual harm but sought statutory damages between $36 million and $2 billion.  *Vasquez-Torres v. StubHub, Inc.*, Case No. CV 07-1328 FMC (FFMx), 2008 U.S. Dist. LEXIS 22503 (C.D. Cal. Mar. 4, 2008).  Noting that certification has been denied on superiority grounds where "defendant's potential liability would be enormous and completely out of proportion to any harm suffered the plaintiff," the *Vasquez-Torres* court held that the class treatment was not appropriate because there was "a great potential for excessive and disproportionate damages."  *Id.* (citing *London v. Walmart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003)).  In another decision, the court refused to certify a 1.5 million member class seeking statutory damages of $1.5 billion despite no allegation of actual harm because the potential statutory damages constituted a "horrendous, possibly annihilating punishment, unrelated to any damage to the purported class."  *See Legge v. Nextel Communications, Inc.*, No. CV 02-8676 DSF (VBKx), 2004 WL 5235587 at *17 (C.D. Cal. June 25, 2004).  The *Legge* court held that "the class action procedure should not be used as a mechanism to impose 'super penalties,'" and held that "allowing th[e] case to proceed as a class action has potentially ruinous results - without concomitant benefit to the class."  The disparity between colossal statutory damages and a lack of corresponding actual harm has prompted many courts to deny certification on superiority grounds.  *See, e.g.*, *Alsup v. Montgomery Ward & Co.*, 57 F.R.D. 89, 92-93 (N.D. Cal. 1972) (denying certification of a class where plaintiff sought statutory damages of $20 million, but alleged no actual harm).[19]  As in these cases, the astounding

---

[19] *See also Blanco v. CEC Entm't Concepts, L.P.*, No. CV 07-0559 GPS(JWJx), 2008 WL 239658 (C.D. Cal. Jan. 10, 2008) (denying class certification where the statutory damages are grossly disproportionate to the harm, especially when defendant had rectified the problem); *In re Trans*

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

24.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS

$125 million statutory damages that Plaintiffs seek here are so grossly disproportionate to any actual damages (of which there are none), that as a matter of law, they are not recoverable. Accordingly, all class allegations should be stricken from the Complaint.

## V.   CONCLUSION

For all of these reasons, Defendant Facebook Inc. respectfully requests that this Court strike the class allegations and any prayer for injunctive relief from the Complaint and dismiss each of Plaintiffs' causes of action.

Dated: October 10, 2008                    COOLEY GODWARD KRONISH LLP


                                           /s/ Melina K. Patterson
                                           Michael G. Rhodes (116127)
                                           Melina K. Patterson (211907)
                                           Emily F. Burns (228123)
                                           Attorneys for Defendant
                                           FACEBOOK, INC.

---

*Union Corp. Privacy Lit.*, 211 F.R.D. 328, 342 (N.D. Ill. 2002) (denying class certification because the disproportionate damage award has little relation to the harm actually suffered by the class); *Shields v. First Nat'l Bank*, 56 F.R.D. 442 (D. Ariz. 1972) (denying class certification where 180,000 class members sought statutory damages but did not allege actual harm); *London v. Wal-Mart*, 340 F.3d 1246, 1255 (11th Cir. 2003) (doubting that superiority requirement is met where defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff); *Wilcox v. Commerce Bank*, 474 F.2d 336 (10th Cir. 1973) (upholding denial of TILA certification where 180,000 class members sought statutory damages but did not allege actual harm); *Forman v. Data Transfer*, 164 F.R.D. 400 (E.D. Pa. 1995) (denying certification because minimum recovery of $500 per violation under the Telephone Consumer Protection Act bore no relation to actual harm); *Wilson v. Am. Cablevision*, 133 F.R.D. 57 (W.D. Mo. 1990) (denying certification under the Cable Communications Act where plaintiffs sought $198 million but suffered no actual harm).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW

28657 v2/BN

25.

FACEBOOK'S MOT. TO DISMISS
AND STRIKE COMPL.
5:08-CV-03845-RS