SCOTT KAMBER (admitted *pro hac vice*)
DAVID STAMPLEY (admitted *pro hac vice*)
*skamber@kamberedelson.com*
*dstampley@kamberedelson.com*
KAMBEREDELSON, LLC
11 Broadway, 22nd Floor
New York, New York 10004
Telephone: (212) 920-3072
Facsimile:  (212) 202-6364

JOSEPH H. MALLEY (admitted *pro hac vice*)
LAW OFFICE OF JOSEPH H. MALLEY
1045 North Zang Boulevard
Dallas, Texas 75208
Telephone: (214) 943-6100
Facsimile:  (214) 943-6170

DAVID C. PARISI (SBN 162248)
SUZANNE HAVENS BECKMAN (SBN 188814)
*dcparisi@parisihavens.com*
*shavens@parisihavens.com*
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone: (818) 990-1299
Facsimile:  (818) 501-7852

ATTORNEYS FOR PLAINTIFFS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SEAN LANE, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., a Delaware Corporation, BLOCKBUSTER, INC., a Delaware Corporation, FANDANGO, INC., a Delaware Corporation, HOTWIRE, INC., a Delaware Corporation, STA TRAVEL, INC., a Delaware Corporation, OVERSTOCK.COM, INC., a Delaware corporation, ZAPPOS.COM, INC., a Delaware Corporation, GAMEFLY, INC., a Delaware Corporation, and DOES 1-40, corporations,<br><br>                    Defendants. | No. 08-cv-3845 RS<br><br>[Assigned to the Hon. Richard Seeborg]<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Location: Courtroom 4, 5th Floor<br>280 South First Street<br>San Jose, CA 95113<br>Date: October 14, 2009<br>Time: 9:30 a.m. |

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that the plaintiffs in the above-captioned matter ("Plaintiffs") will, pursuant to Federal Rule of Civil Procedure 23(e), move that the above-named Court grant preliminary approval of a proposed settlement (the "Settlement Agreement") in this class action on October 14, 2009 at 9:30 a.m., or at such other time as may be set by the Court at the Case Management Conference presently set for that time with the Court, located at 280 South First Street, San Jose, California 95113, in Courtroom 4, 5th Floor, before the Honorable Richard Seeborg.

Plaintiffs seek preliminary approval of this class action settlement, certification of the proposed class for the purposes of the settlement, sending of notice to the settlement class, and appointment of Plaintiffs and their counsel as class representatives. The Motion is based on this Notice of Motion, Plaintiffs' Brief in Support of the Motion and the authorities cited therein, oral argument of counsel, and any other matter that may be submitted at the hearing.

Dated: September 18, 2009

SCOTT A. KAMBER
DAVID A. STAMPLEY
KAMBEREDELSON, LLC

DAVID C. PARISI
SUZANNE HAVENS BECKMAN
PARISI & HAVENS LLP

JOSEPH H. MALLEY
THE LAW OFFICE OF JOSEPH H. MALLEY


By: s/David A. Stampley

Attorneys for Plaintiffs

# TABLE OF CONTENTS

NOTICE OF MOTION ............................................................................................................. ii

TABLE OF AUTHORITIES ................................................................................................. iv

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT ........... 1

I.  NATURE OF THE LITIGATION ................................................................................. 2
    A.  Summary of the Litigation .................................................................................... 2
    C.  Mediation and Settlement ..................................................................................... 2
    D.  Defendants' Position ............................................................................................. 3

II.  TERMS OF THE SETTLEMENT ................................................................................ 3
    A.  Definitions ............................................................................................................ 3
    B.  General Relief ...................................................................................................... 4
    C.  Additional Relief .................................................................................................. 5
    D.  Release ................................................................................................................. 6

III.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ..................... 6
    A.  The Requirement of Numerosity Is Satisfied ....................................................... 7
    B.  The Requirement of Commonality is Satisfied .................................................... 7
    C.  The Requirement of Typicality is Satisfied .......................................................... 8
    D.  The Requirement of Adequate Representation is Satisfied .................................. 9
    E.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ......... 9

IV.  THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL ............................................................................................................................. 10

V.  THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT ..................................................................................................................... 11

VI.  THE PROPOSED PLAN OF CLASS NOTICE ......................................................... 13

VII.  PROPOSED PRELIMINARY SCHEDULE .............................................................. 14

VIII.  CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

Cases

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................. 6, 10

*Armstrong v. Bd. of Schl. Dirs. of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) ...................... 11

*Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) ......................................................... 7

*Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168 (9th Cir. 2007) .................................................................. 7

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ........................................................................ 7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................................................. 12

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359 (N.D. Ohio 2001). ............................. 12

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ........................................................ 11, 12

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................... 11

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...................................... 12

*Pierce v. County of Orange*, 519 F.3d 985 (9th Cir. 2008) .............................................................. 9

Other Authorities

*DeLise vs. Fahrenheit Entm't*, Civ. Action No CV-014297 (Cal. Sup. Ct. Marin Cty. Sept. 2001) 12

*In Re DoubleClick, Inc. Privacy Litigation*, No. 00 Civ. 0641 (NRB) (S.D.N.Y. 2001) ................ 12

*Manual for Complex Litigation* § 21.632 (4th ed. 2004) ............................................................ 6, 11

Rules

*Dukes*, 509 F.3d at 1184 fn.12 ......................................................................................................... 8

*Dukes*, 509 F.3d at 1185 ................................................................................................................... 9

Federal Rule of Civil Procedure 23(a) ............................................................................................. 6

Federal Rule of Civil Procedure 23(a)(1) ........................................................................................ 7

Federal Rule of Civil Procedure 23(a)(2) ........................................................................................ 7

Federal Rule of Civil Procedure 23(a)(3) ..................................................................................... 8, 9

Federal Rule of Civil Procedure 23(a)(4) ........................................................................................ 9

1   Federal Rule of Civil Procedure 23(b)(3) ................................................................................. 7, 9

2   Federal Rule of Civil Procedure 23(c)(2)(B) ................................................................................ 13

3   Federal Rule of Civil Procedure 23(e) ......................................................................... 11, 12, 13

4   Federal Rule of Civil Procedure 23(e)(1) ....................................................................................... 13

5   Federal Rule of Civil Procedure 23(g)(1) ..................................................................................... 10

### Treatises

8   Alba & Conte, 4 *Newberg on Class Actions*, §11.25 (4th Ed. 2002) ........................................ 11, 13

9   *Manual for Complex Litigation* §30.41 (3rd ed. 1995) ................................................................... 11

10   Alba & Conte, 4 *Newberg on Class Actions*, §11.53, at 167 (4th Ed. 2002) .................................. 13

1  **MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

2   This putative class action seeks recovery based on Plaintiffs' allegation that Defendants failed to obtain informed consent from consumers before causing their personal information to be transmitted to Facebook. Plaintiffs assert that Facebook, via its "Beacon" program, obtained personal information regarding specific transactions at Beacon-affiliated companies, including the other named Defendants in this lawsuit, whether or not the users were Facebook users. Defendants have and continue to deny all of these allegations and that they engaged in any wrongdoing entitling any member of the putative class to any relief. Plaintiffs contend that Defendants' alleged acts violate various federal and state privacy laws, as well as other state statutory and common laws and seek recovery for the alleged loss of privacy and other injuries caused by Defendants' alleged conduct.

The parties' representatives met and engaged in substantial private settlement mediation discussions before Mr. Antonio Piazza on December 9, 2008 in San Francisco, California and again on July 28, 2009. The parties were able to reach an agreement in principle in connection with these mediations and through extensive, ongoing negotiations between the principal lawyers for the Class (Mr. Kamber) and Facebook (Mr. Rhodes). A true copy of the proposed Stipulation and Agreement of Settlement (the "Settlement Agreement") is attached hereto as *Exhibit A*.

Under the Settlement Agreement, Facebook will terminate the Beacon program in its entirety. .In addition, Facebook will establish a settlement fund of $9.5 million that will be used to establish an independent privacy foundation, the purpose of which will be to fund and sponsor programs designed to educate users, regulators, and enterprises regarding critical issues relating to protection of identity and personal information online through user control, and to protect users from online threats. Out of this fund will be paid all attorneys' fees, costs, any enhanced awards to the named Plaintiffs, various costs associated with establishment of the foundation and settlement administration costs.

Given the challenges and uncertainties facing Plaintiffs if they were to litigate this matter, the results achieved through the settlement are well beyond those required to satisfy preliminary approval standards. Accordingly, Plaintiffs move the Court to preliminarily approve the instant set-

tlement; certify the settlement class; appoint Sean Lane, Mohannaed Sheikha, Sean Martin, Ali Sammour, Mohammaed Zidan, Sara Karrow, Colby Henson, Denton Hunker, Firas Sheikha, Hassen Sheikha, Linda Stewart, Tina Tran, Matthew Smith, Erica Parnell, John Conway, Austin Muhs, Phillip Huerta, Alicia Hunker, and M.H., a minor, by and through her parent Rebecca Holey as class representatives; and Scott A. Kamber and David A. Stampley of KamberEdelson, LLC; and Joseph Malley of the Law Office of Joseph H. Malley as class counsel. For convenience, a proposed preliminary schedule of events leading to a final approval hearing is provided in Section VII of this brief.

## I. NATURE OF THE LITIGATION

### A. Summary of the Litigation

On August 12, 2008, Plaintiffs initially brought this action individually and on behalf of a purported class of all Facebook members who, during the period of November 7, 2007 to December 5, 2007, visited one or more the Facebook Beacon Activated Affiliates' websites and engaged in one or more activities that triggered the Beacon program to communicate with Facebook regarding the activity, alleging that Defendants, through their Beacon program, violated the Electronic Communications Privacy Act ("ECPA"), the Video Privacy Protection Act ("VPPA"), the Computer Fraud and Abuse Act ("CFAA"), the California Consumer Legal Remedies Act ("CLRA"), and the California Computer Crime Law ("CCCL"). (*See* Declaration of Scott Kamber, ¶ 4, a copy of which is attached hereto as *Exhibit B*) ("Kamber Decl.") Plaintiffs alleged Defendants violated consumers' privacy rights by failing to properly provide notice and obtain informed consent before acquiring and transmitting personal information from Beacon-affiliated websites to Facebook. (Kamber Decl. ¶ 4.)   On October 10, 2008, Facebook filed a motion to dismiss (Dkt. 14). (Kamber Decl. ¶ 4.) Prior to the plaintiffs' filing their opposition or the Court's issuing a decision on this motion, the parties agreed to enter into private mediation. (Kamber Decl. ¶ 5.)

### C. Mediation and Settlement

On December 9, 2008, counsel and senior corporate representatives for Facebook and counsel for Plaintiffs met in person in the offices of Gregorio, Haldeman, Piazza, Rotman, Frank & Feder in San Francisco, California for mediation with the assistance of Mr. Antonio Piazza. The

mediation session included joint meetings between the parties' representatives to review particular issues relating to Plaintiffs' prior findings regarding the mechanics of users' interactions on Facebook's website and the websites of Beacon affiliates. (Kamber Decl. ¶¶ 3, 6(a).) At the end of the mediation session, the parties agreed on all substantive relief and memorialized their mutual understanding in document outlining the principal terms of settlement. (Kamber Decl. ¶ 6(a).) The parties did not discuss the amount of any incentive fee or payment to class counsel until after reaching agreement on the other terms of settlement. (Kamber Decl. ¶ 6(b).) The parties continued to engage in settlement negotiations for the next seven months to work out the details of the settlement. (Kamber Decl. ¶¶ 6(b)-(c).)

The parties concluded their negotiations and finalized the terms of the settlement in August 2009 after yet another mediation session on July 28, 2009 before Mr. Piazza. (Kamber Decl. ¶ 6(e).) The parties now seek preliminary approval of this long-negotiated settlement.

### D. Defendants' Position

At all times, all Defendants have denied and continue to deny any wrongdoing whatsoever or that they, or any of them, committed or have threatened or attempted to commit, any wrongful acts or violations of law or duty, including, but not limited to, those alleged in the Complaint. (Kamber Decl. ¶ 5.) Defendants contend that they have acted properly and therefore deny that the plaintiffs and putative class are entitled to any form of damages based on the conduct alleged in the Complaint. (Kamber Decl. ¶ 5.) In addition, Defendants have maintained and continue to maintain that they have meritorious defenses to all claims alleged in the Complaint and that Defendants were and are prepared to vigorously defend against all claims asserted in this litigation. (Kamber Decl. ¶ 5.)

## II. TERMS OF THE SETTLEMENT

The key terms of the settlement are detailed below.

### A. Definitions

1. Section 1.3 of the Settlement Agreement defines "Class" as:

1. All Facebook members who, during the period of November 6, 2007 to the Preliminary Approval Date, engaged in one or more Triggering Activities on a Beacon Merchant website.

2. Section 1.10 of the Settlement Agreement defines "Facebook" as "defendant Facebook, Inc. and its successors, representatives, and assignees."

3. Section 1.22 of the Settlement Agreement defines "Preliminary Approval Date" as "the date entered by the Court on the Preliminary Approval and Notice Order."

4. Section 1.31 of the Settlement Agreement defines "Triggering Activity" as "certain activity, that when completed on a Beacon Merchant website, triggered Beacon."

5. Section 1.2 of the Settlement Agreement defines "Beacon Merchant" as:
   any company, corporation, business enterprise, or other person that entered into an agreement with Facebook with respect to Beacon or otherwise launched the Beacon program (specifically including, without limitation and by way of example, all non-Facebook defendants named in the Complaint, namely, Blockbuster, Inc., Fandango, Inc., Hotwire, Inc., STA Travel, Inc., Hotwire, Inc., Zappos.com, Inc., Overstock.com, Inc., and Gamefly, Inc.).

**B.     General Relief**

Facebook will establish and administer a cash settlement fund of nine million, five hundred thousand dollars ($9,500,000), which will be used to establish and operate a privacy foundation devoted to funding and sponsoring programs designed to educate users, regulators, and enterprises regarding critical issues relating to protection of identity and personal information online through user control, and to protect users from online threats. Individual class members will not receive direct compensation. Out of the $9.5 million fund, all attorneys' fees, costs, any enhanced awards to the named Plaintiffs, various costs associated with establishment of the foundation, settlement administration costs, and notice and administration costs will be paid as provided for under the Set-

tlement Agreement and described below in sections II.C.2–4 on page 5. The privacy foundation will have sole and exclusive control of the management and disposition of its funds.

**C.     Additional Relief**

In addition to the payments and credits discussed above, Facebook will provide the following relief.

1. Termination of Beacon Program: In connection with this Settlement, and within sixty (60) days of the Preliminary Approval Date, Facebook shall terminate the Beacon program in its entirety.

2. Payment of Notice and Administrative Fees: The full cost of claims administration and effectuation of the Settlement Agreement shall be paid out of the settlement fund.

3. Compensation of Class Representatives: In addition to any benefits afforded under the settlement, and in recognition of their efforts on behalf of the class, subject to Court approval, Sean Lane shall receive $15,000, Sean Martin and Mohammad Sheikha shall each receive $7,500 and the other representative Plaintiffs shall each receive $1,000 as appropriate compensation for their time and effort serving as the class representatives in the litigation against Defendants. Facebook or Defense Counsel shall pay such amount from the Settlement Fund to the Representative Plaintiffs, in care of Class Counsel, within thirty (30) days of the Effective Date.

4. Payment of Attorneys' Fees and Expenses: Defendants have agreed that a payment out of the Settlement Fund to Class Counsel, subject to Court approval, of up to one-third of the settlement fund in attorneys' fees and for the reimbursement of Class Counsel's costs is fair and reasonable, and Defendants will not object to or otherwise challenge Class Counsels' application for payment of fees from the Settlement Fund if limited to such an amount. Proposed Class Counsel has, in turn, agreed not to seek more than said amount from the Court.

**D.      Release**

Upon the entry of a final order approving this settlement and following the expiration of the time for appeal or the entry of a decision on such appeal, class representatives and each and every member of the settlement class who have not timely filed a request to be excluded from the settlement class will release and forever discharge Facebook and all Beacon Merchants, and each of their respective past and present officers, directors, employees, insurers, agents, representatives, partners, joint-venturers, parents, subsidiaries, affiliates, attorneys, successors and assigns from any and all manner of claims for payment, non-economic, or injunctive relief of any kind or nature and any and all liabilities, demands, obligations, losses, actions, causes of action, damages, costs, expenses, attorneys' fees and any and all other claims of any nature whatsoever, whether known or unknown, that have been, could have been, or in the future might be asserted in the pending litigation or in any other court or proceeding, arising from or relating to any of the allegations or statements made in, or in connection with, the Litigation (and including, without limitation, any and all claims based upon any of the laws, regulations, statutes, or rules cited, evidenced and referenced by all such allegations and statements), or any other known or unknown claims arising from or relating to Beacon (including, without limitation, arising from or relating to the use of data gathered through Beacon) and shall be permanently barred and enjoined from instituting, prosecuting, or from asserting, either directly, indirectly, derivatively, or representatively any claims against Defendants, as further provided for in the attached Settlement Agreement.

**III.      THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

Prior to granting preliminary approval of a settlement, the Court should determine that the proposed settlement class is a proper class for settlement purposes. *Manual for Complex Litigation* § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court may certify a class when the plaintiff demonstrates that the proposed class and proposed class representatives meet the following prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1)–(4). After meeting the strictures of Rule 23(a), the plaintiff must then demonstrate that common questions of law or fact predominate and

that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3).

In determining whether to certify a class, courts do not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). As such, a court accepts the allegations of the plaintiff's complaint as true, but may consider matters beyond the pleadings to determine if the claims are suitable for resolution on a class-wide basis. *Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007).

### A. The Requirement of Numerosity Is Satisfied

The numerosity prerequisite is met when "the class is so numerous that joinder of all members is impractical. Fed. R. Civ. P. 23(a)(1). To satisfy this requirement there is no specific number required, nor are Plaintiffs required to state the exact number of potential class members. *Celano*, 242 F.R.D. at 548. Generally, the numerosity requirement is satisfied when the class comprises 40 or more members. *See id.*, 242 F.R.D. at 549. In this case, the class is estimated to number in the millions of individuals, easily enough to satisfy the numerosity requirement. (*See* Kamber Decl. ¶ 3.)

### B. The Requirement of Commonality is Satisfied

The second threshold to certification requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "[P]laintiffs may demonstrate commonality by showing that class members have shared legal issues by divergent facts or that they share a common core of facts but base their claims for relief on different legal theories." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007). "[O]ne significant issue common to the class may be sufficient to warrant certification." *Id.* As alleged in this case, all class members share the common issue of having their privacy rights affected when Defendants allegedly caused or permitted unauthorized communications of private and personally identifying information to be delivered to Facebook and others through the use of the Beacon program without adequate notice, consent, or opportunity to opt out.

This common issue among class members results in common factual and legal questions such as: (a) What was the Beacon program and how did it work? (b) What information did the

Beacon program collect and what did it do with that information? (c) Was there proper or any notice, of the operation of the Beacon program to consumers? (d) Was there proper or any opportunity to decline the operation of the Beacon program provided to consumers? (e) Did Facebook members, by virtue of their membership, give prior consent to the operation of the Beacon program on the non-Facebook websites? (f) Did the operation, function, and/or implementation of the Beacon program violate the ECPA? (g) Did the operation, function, and/or implementation of the Beacon program violate the VPPA? (h) Did the implementation of the Beacon program by the CLRA defendants violate the CLRA? (i) Did the operation, function, and/or implementation of the Beacon program violate the CCCL? (j) Did the operation, function, and/or implementation of the Beacon program violate the CFAA?? (k) Is Facebook liable under a theory of aiding and abetting, or conspiracy, for Affiliate Defendants' violations of the VPPA? (l) Did the Beacon program send back to Facebook personally identifiable information? (m) Did Facebook and the CLRA Defendants, by conduct set forth in the Complaint, engage in unfair, deceptive, untrue, or misleading promotion, implementation, and operation of their websites? (n) Was Facebook unjustly enriched by its actions in implementing the Beacon program? (o) Are class members entitled to damages as a result of the implementation of the Beacon program, and, if so, what is the measure of those damages?

In addition, such common questions for the settlement include whether the settlement is fair, and what is the proper form of notice. Accordingly, the commonality requirement is satisfied.

### C. The Requirement of Typicality is Satisfied

Rule 23 next requires that a plaintiff's claims be typical of those of the class. Fed. R. Civ. P. 23(a)(3). "[T]ypicality focuses on the relationship of facts and issues between the class and its representatives." *Dukes*, 509 F.3d at 1184 fn.12 (citation omitted) ("[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical[;] some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality"). Here, Defendants' alleged practice of causing or permitting unauthorized communications of private and personally identifying information to be delivered to Facebook and others through the use of the Bea-

con program without adequate notice, consent, or opportunity to opt out is alleged to have resulted in Plaintiffs and the proposed settlement class having their privacy rights violated in breach of the state and federal law, as well as the terms and conditions and use of Facebook.com, owed equally Plaintiffs and to members of the class. It is alleged that Plaintiffs and each proposed class member were all subjected to Defendants' identical wrongful conduct in a nearly identical manner. As such, Plaintiffs' claims are typical of those of the proposed class and Fed. R. Civ. P. 23(a)(3) is met.

### D. The Requirement of Adequate Representation is Satisfied

The final Rule 23(a) prerequisite requires that the proposed class representatives have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Dukes*, 509 F.3d at 1185.

In this case, Plaintiffs have the same interests as the proposed class members—all have allegedly been wrongfully harmed by Defendants' alleged mishandling of private and personally identifiable information through the Facebook Beacon program. Therefore, Plaintiffs have no interests antagonistic to the interests of the proposed class. Further, class counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have had extensive experience in consumer class action lawsuits that are similar in size, scope and complexity to the present case. (*See* Firm Resume of KamberEdelson, LLC, a copy of which is attached hereto as *Exhibit C*.) Accordingly, both Plaintiffs and their counsel have and will adequately represent the class.

### E. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

Once the subsection (a) prerequisites are satisfied, Federal Rule of Civil Procedure 23(b)(3) provides that a class action can be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3); *Pierce v. County of Orange*, 519 F.3d 985, 991 n.5 (9th Cir. 2008). In this case and in the context of the proposed settlement, common issues of

fact and law predominate. Defendants' alleged practice of causing or permitting unauthorized communications of private and personally identifying information to be delivered to Facebook and others through the use of the Beacon program without adequate notice, consent, or opportunity to opt out is common to the class members' claims and their damages and predominates over any issues applicable to any individual members of the class.

In addition, the instant class action is superior to any other method available to fairly, adequately, and efficiently resolve the class members' claims. Absent a class action, most members of the class would find the cost of litigating their claims to be prohibitive, and such multiple individual actions would be judicially inefficient. Also, because the action, with the Court's permission, will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 (citation omitted) ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"). Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

## IV. THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

As discussed above, proposed class counsel have extensive experience in prosecuting class actions and other complex litigation. (Kamber Decl. ¶ 9; s*ee also Exhibit C*.) Further, proposed class counsel have diligently investigated and prosecuted this matter, dedicating substantial resources to the investigation of the claims at issue in the action, and have successfully negotiated the settlement of this matter to the benefit of the class. (Kamber Decl. ¶ 10.) Counsel and class representatives, assisted by non-legal experts, spent over three months considering legal theories as well as investigating factual and technology-related issues regarding Defendants' acquisition

and sharing of personal information and their related notice and choices practices. (Kamber Decl. ¶ 3.) Accordingly, the Court should appoint Plaintiffs' counsel to serve as class counsel for the proposed class pursuant to Rule 23(g) and Scott A. Kamber and David Stampley of KamberEdelson, LLC and Joseph Malley of the Law Office of Joseph H. Malley as class counsel.

## V. THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

After certifying the settlement class, the Court should preliminarily approve the settlement. The procedure for review of a proposed class action settlement is a well-established two-step process. Fed. R. Civ. P. 23(e); *see also* Alba & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (quoting *Manual for Complex Litigation* §30.41 (3rd ed. 1995)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110 (9th Cir. 2008). This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *In re Syncor ERISA Litig.*, 516 F.3d at 1110. Notice of a settlement should be sent where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). The *Manual for Complex Litigation* characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual for Complex Litigation* § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39. The standard of scrutiny for preliminary approval is more relaxed than for final approval. *Armstrong v. Bd. of Schl. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980).

A strong judicial policy exists that favors the voluntary conciliation and settlement of complex class action litigation. *In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv.*

1  *Comm'n*, 688 F.2d 615 (9th Cir. 1982). While the district court has discretion regarding the ap-
2  proval of a proposed settlement, it should give "proper deference to the private consensual deci-
3  sion of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In fact, when a
4  settlement is negotiated at arms' length by experienced counsel, there is a presumption that it is
5  fair and reasonable. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio
6  2001). Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reason-
7  able, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Syncor*, 516 F.3d at 1100.

8        In this case, there is no question that the proposed settlement is at least "within the range of
9  possible approval." Only after extended arms-length negotiations, conducted under the supervision
10 of Mr. Antonio Piazza, were the parties able to reach an agreement as to relief for the class. (Kam-
11 ber Decl. ¶ 6.) Under that agreement, class members will benefit in the near-term from the termi-
12 nation of the Beacon program. In the long-term, class members and consumers in general will
13 benefit from the realization of a privacy foundation. The settlement's formulation for allocating
14 settlement resources, which does not include compensation to members of the at-large class, is
15 consistent with other settlements resolving claims that a defendant's insufficient online notice and
16 choice resulted in unconsented sharing of personal information with affiliated third-party busi-
17 nesses. *See*, *e.g.*, *In Re DoubleClick, Inc. Privacy Litigation*, No. 00 Civ. 0641 (NRB) (S.D.N.Y.
18 2001) (DoubleClick, an Internet ad-serving company, revised its notice, choice, and data collection
19 practices and conducted a privacy-oriented public information campaign by distributing 300 mil-
20 lion Internet banner ads); *DeLise vs. Fahrenheit Entm't*, Civ. Action No CV-014297 (Cal. Sup. Ct.
21 Marin Cty. Sept. 2001) (sellers of interactive music CD updated privacy policies, added warning
22 labels to CDs, and purged previously collected data).

23       A comparison of the potential costs and benefits of consummating the Settlement Agree-
24 ment versus continuing to prosecute this matter requires consideration of a number of factors.
25 These factors include the strengths of the Plaintiffs' claims and ability to prevail at trial—in which
26 class counsel remain confident—and the relief Plaintiffs anticipate from a successful trial out-
27 come. Countervailing considerations include the legal and factual burdens Plaintiffs would bear in
28 bringing the matter to trial, the defenses Defendants would assert—in which Defendants have ex-

1  pressed continued confidence (Kamber Decl. ¶ 5), the complexities of class action practice, and
2  the risks that inevitably attend litigation, including the risk that Plaintiffs will not ultimately pre-
3  vail and so will not secure any post-trial relief. Even if successful in prosecuting this matter, Plain-
4  tiffs would have forfeited the valuable, additional relief now being offered at Defendants' discre-
5  tion, and which could not be compelled from Defendants following trial.

6      In advocating for approval of the Settlement Agreement, class counsel are aided by their
7  collective experience and awareness of the costs and risks described above and are mindful of the
8  interests of Plaintiffs and the putative class, particularly given the proposed settlement's substan-
9  tial and prompt relief and meaningful long-term benefits. It is apparent that the proposed settle-
10 ment serves the best interests of class members. Accordingly, this settlement easily falls well
11 "within the range of possible approval" and merits the Court's preliminary approval.

## VI.  THE PROPOSED PLAN OF CLASS NOTICE

13     Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court
14 must direct to class members the best notice practicable under the circumstances, including indi-
15 vidual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.
16 23(c)(2)(B). Rule 23(e)(1) similarly says, "The court must direct notice in a reasonable manner to
17 all class members who would be bound by a proposed settlement, voluntary dismissal, or com-
18 promise." Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be understood by the average class
19 member." *Newberg on Class Actions*, §11.53, at 167 (4th Ed. 2002).

20     The proposed settlement provides for a notice campaign designed to reach virtually all
21 members of the proposed class. After entry of preliminary approval, Facebook shall display to
22 each potential member of the class as identified as users whose information was likely to have
23 been transmitted to Facebook via Beacon, as determined by Facebook based on reasonable efforts,
24 an internal Facebook message containing the Court-approved Notice or links to such Notice, and a
25 link to a blog post, in a form substantially similar to that attached as *Exhibit 2* to the Settlement
26 Agreement.

27     Additionally, during the Notice period, Facebook shall also cause the Court-approved
28 summary form of publication notice, in a form substantially similar to that attached as *Exhibit 5* to

the Settlement Agreement (the "Publication Notice"), to be published in one daily issue of the *USA Today*.

Each of the above-described summary notices, which are neutral in tone and neither promote nor discourage the assertion of claims, direct potential members of the class to a website where a detailed explanation of the litigation and class members' options are presented in a manner designed to allow each of them to make an informed decision. The text of the proposed web notice is attached as *Exhibit 2* to the Settlement Agreement.

The notice to the class will be completed within ninety (90) days after preliminary approval of the settlement is granted. As such, the proposed methods of notice comport with Rule 23 and the requirements of Due Process and should be approved by this Court.

## VII. PROPOSED PRELIMINARY SCHEDULE

The parties propose the following schedule leading to the Fairness Hearing for final approval of the settlement:

1. Facebook begins to send notice to targeted users as soon as practicable after entry of Preliminary Approval and Notice Order (PAO) to be completed on or before November 30, 2009;

2. Publication notice to current and former class members to be completed on or before November 30, 2009;

3. Deadline for Opt-outs/Objections: February 1, 2010(or such date as is convenient for the Court);

4. Submission of papers in support of final approval and application for attorneys' fees: 14 days prior to Final Fairness Hearing Date; and

5. Final Fairness Hearing: February 24, 2009 (or such date as is convenient for the Court)

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that the Court grant preliminary approval of the proposed Settlement Agreement, approve the form and manner of notice described

above, and enter the proposed order separately submitted herewith (a copy of which is *Exhibit 4* to the Settlement Agreement), and grant such further relief the Court deems reasonable and just.

Dated: September 18, 2009

SCOTT A. KAMBER
DAVID A. STAMPLEY
KAMBEREDELSON, LLC

JOSEPH H. MALLEY
THE LAW OFFICE OF JOSEPH H. MALLEY

DAVID C. PARISI
SUZANNE HAVENS BECKMAN
PARISI & HAVENS LLP


By:  s/ David A. Stampley

Attorneys for Plaintiffs