1  SCOTT KAMBER (admitted *pro hac vice*)
   DAVID STAMPLEY (admitted *pro hac vice*)
2  *skamber@kamberedelson.com*
   *dstampley@kamberedelson.com*
3  KAMBEREDELSON, LLC
   11 Broadway, 22nd Floor
4  New York, New York 10004
   Telephone: (212) 920-3072
5  Facsimile:  (212) 202-6364

6  JOSEPH H. MALLEY (admitted *pro hac vice*)
7  LAW OFFICE OF JOSEPH H. MALLEY
   1045 North Zang Boulevard
8  Dallas, Texas 75208
   Telephone: (214) 943-6100
9  Facsimile:  (214) 943-6170

10 DAVID C. PARISI (SBN 162248)
   SUZANNE HAVENS BECKMAN (SBN 188814)
11 *dcparisi@parisihavens.com*
   *shavens@parisihavens.com*
12 PARISI & HAVENS LLP
   15233 Valleyheart Drive
13 Sherman Oaks, California 91403
   Telephone: (818) 990-1299
14 Facsimile:  (818) 501-7852

15 ATTORNEYS FOR PLAINTIFFS

16          **UNITED STATES DISTRICT COURT**

17         **NORTHERN DISTRICT OF CALIFORNIA**

                **SAN JOSE DIVISION**
18

19 SEAN LANE, *et al*.,                        No. 08-cv-3845 RS

20            Plaintiffs,                       [Assigned to the Hon. Richard Seeborg]
   v.
21                                              **DECLARATION OF DAVID A.L**
   FACEBOOK, INC., a Delaware Corporation,      **STAMPLEY IN OPPOSITION TO**
22 BLOCKBUSTER, INC., a Delaware Corporation,   **PLAINTIFFS' MOTION FOR**
   FANDANGO, INC., a Delaware Corporation,      **LIMITED INTERVENTION**
23 HOTWIRE, INC., a Delaware Corporation,
   STA TRAVEL, INC., a Delaware Corporation,    Location: Courtroom 4, 5th Floor
24 OVERSTOCK.COM, INC., a Delaware corporation, 280 South First Street
   ZAPPOS.COM, INC., a Delaware Corporation,    San Jose, CA 95113
25 GAMEFLY, INC., a Delaware Corporation, and   Date: October 14, 2009
   DOES 1-40, corporations,                     Time: 9:30 a.m.
26
            Defendants.
27

28

---

## DECLARATION OF DAVID A. STAMPLEY

I, David A. Stampley, declare as follows:

1.     I am an attorney for plaintiffs in the above-captioned litigation and make this decla-
ration in opposition to Proposed Intervenors' Motion for Limited Intervention (Dkt. 39) currently
pending before this Court. I am personally familiar with all facts alleged herein and, if called upon
to testify to such matters, I am competent to testify that the following facts are true and correct to
the best of my knowledge, information, and belief.

2.     Attached hereto are true and correct copies of the documents or selected pages of
documents listed below, according to the cases in which they were filed, the exhibit identifiers
here assigned, their docket numbers and, for selected pages of documents, the pages or paragraph
numbers selected. These documents or pages of documents were retrieved by accessing the Public
Access to Court Electronic Records System (PACER) website, *https://pacer.login.uscourts.gov/*.

| *Exh.* | *Dkt.* | *Document* |
|--------|--------|------------|
| | | ***Harris v. Blockbuster, Inc.,* 2:08-CV-00155-DF (E.D. Tex.)** |
| **A** | 1 | Complaint |
| **B** | 5 | First Amended Class Action Complaint |
| **C** | 11 | Plaintiff's Response to Defendant's Opposed Motion to Change Venue |
| **D** | 8 | Blockbuster Motion to Change Venue |
| **E** | 30 | Order |
| **F** | 28 | Plaintiff's Response to Defendant's Amended Motion to Change Venue |
| | | ***Harris v. Blockbuster, Inc.,* 3:09-cv-00217-M (N.D. Tex.)** |
| **G** | 37 | Order Staying Case |
| | | ***Blockbuster, Inc. v. Harris,*  Docket #: 09-10420 (5th Cir.)** |
| **H** | | General Docket as of Sept. 29, 2009 |
| | | ***Fresco v. Auto. Directions, Inc.,* Case No. 0:03-cv-61063-JE (S.D. Fla.)** |
| **I** | 415 | Motion for Limited Intervention |
| **J** | 478 | Order Denying Motion for Limited Intervention |

3.     I declare under penalty perjury under the laws of the United States of America that
the foregoing is true and correct.

Executed on October 12, 2009 at New York, New York.

/s David A. Stampley
David A. Stampley

---

Declaration of D. Stampley in Opposition
to Motion for Limited Intervention

Case No. No. 08-cv-3845 RS

class members' video selections and distributing them to a Facebook was how Defendant planned on participating in the consumer's community. Defendant clearly knows that Plaintiffs' and class members' personally identifiable information was and currently is still being distributed to Facebook because Defendant's website pop-up screen tells Plaintiffs and class members that their information is being sent to Facebook every time Plaintiffs and class members rent, purchase or adds a movie to their queue.

29.     The information Defendant is obtaining from their website constitutes "personal identifiable information" within the meaning of the VPPA, 18 U.S.C. §2710.     Defendant's distributed Plaintiffs and class members information such as movie purchases, rentals and queue selections that Plaintiffs and class members made to Facebook.   Each occurrence where Defendant's knowingly distributed a consumer's personal identifiable information to a third party is a separate and distinct violation of the VPPA, remediable under the VPPA, 18 U.S.C. §2710.

## IV.

## CLASS ACTION ALLEGATIONS

30.     Pursuant to Fed. R. Civ. P. 23(b)(3), and 23(b)(2) Plaintiffs bring this action on behalf of themselves, and all others similarly situated, as representatives of the following class (the "Class"):

> Each and every individual in the United States of America who has ever been a member of Facebook and Blockbuster on-line during the same time period beginning from November 6, 2007, through the date of judgment herein whose name, and/or address, or a title, description, or subject matter of any video tapes or other audio visual materials that were rented, sold or delivered to each individual were distributed to third parties by Defendant without the informed written consent of such individuals or a clear and conspicuous manner to prohibit the disclosure of such individuals name and address.

Excluded from the class are persons who have expressly authorized the State of Texas's Department of Public of Public Safety to provide third parties with their "personal information" for any purpose; those persons whose information was obtained for a permissible purpose defined by the VPPA; all employees, including, but not limited to, Judges, Magistrate Judges, clerks and court staff and personnel of the United States District Courts of the Eastern District of Texas, the United States Court of Appeals for the Fifth Circuit and the United States Supreme Court; their spouses and any minor children living in their households and other persons within a third degree of relationship to any such Federal Judge; and finally, the entire jury venire called to for jury service in relation to this lawsuit.

31. The requirements of Fed. R. Civ. P. 23 are met in this case. The Class, as defined, is so numerous that joinder of all members is impracticable.

32. There are questions of fact and law common to the Class as defined, which common questions predominate over any questions affecting only individual members. The common questions include:

a. whether Defendants improperly distributed and/or used "personal identifiable information" obtained from their websites of members of the Class, within the meaning of the VPPA, 18 U.S.C. §2710, and,

b. whether Defendants' obtaining and distributing "personal identifiable information" from the Defendants' websites of members of the Class was done knowingly, within the meaning of the VPPA, 18 U.S.C. §2710.

c. whether Defendants' when disclosing the names and addresses of members of the Class provided members of the Class "a clear and conspicuous manner, to prohibit such disclosure," within the meaning of the VPPA, 18 U.S.C. §2710.

d. whether Defendants' disclosure of the names and addresses of members of the Class disclosed the "title, description, or subject matter of any video tapes or other audio visual materials," within the meaning of the VPPA, 18 U.S.C. §2710.

e. whether Defendants' disclosure of the names and addresses of members of the Class was for the "exclusive use of marketing goods and services directly to the consumer," within the meaning of the VPPA, 18 U.S.C. §2710.

---

**PLAINTIFFS' ORIGINAL COMPLAINT – CLASS ACTION**                                      Page 11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CATHRYN ELAINE HARRIS, MARIO HERRERA, and MARYAM HOSSEINY on behalf of themselves and all others similarly situated, <br> Plaintiffs, <br><br> v. <br><br> BLOCKBUSTER, INC. <br> Defendant. | CAUSE NO. 2:08-CV-00155-DF <br><br> JUDGE: T. JOHN WARD <br><br> **PLAINTIFFS' FIRST AMENDED COMPLAINT – CLASS ACTION** <br> **JURY TRIAL DEMAND** |

### PLAINTIFFS' FIRST AMENDED COMPLAINT – CLASS ACTION

Plaintiffs, Cathryn Elaine Harris, Mario Herrera, AND Maryam Hosseiny on behalf of themselves and all others similarly situated, sues Defendant, BLOCKBUSTER, INC. and states:

1.     This is a class action pursuant to the Video Privacy Protection Act, 18 U.S.C. §2710. (the "VPPA" or "the Act").  Plaintiffs bring this action on their own behalf and on behalf of all similarly situated individuals whose "personally identifiable information" was knowingly disclosed to third parties by Defendant in violation of the Act.

## I.

## PARTIES

2.     Plaintiff CATHRYN ELAINE HARRIS is a resident of Dallas County, Texas and registered user of Blockbuster Online and Facebook.  During all times relevant Plaintiff's "personal identifiable information" was transmitted to Facebook from Blockbuster Inc.'s online website.

3.     Plaintiff, MARRIO HERRERA, is a resident of Dallas County, Texas and registered user of Blockbuster Online and Facebook.  During all times relevant Plaintiff's

"personal identifiable information" was transmitted to Facebook from Blockbuster Inc.'s online website.

4.     Plaintiff, MARYAM HOSSEINY, is a resident of Dallas County, Texas and registered user of Blockbuster Online and Facebook.   During all times relevant Plaintiff's "personal identifiable information" was transmitted to Facebook from Blockbuster Inc.'s online website.

5.     Defendant BLOCKBUSTER, INC. is a Delaware corporation with its principal place of business at PO Box 8019 McKinney, Collin County, Texas 75070-8019, and which, at all times material to this action, has been doing business in this District and throughout the State of Texas.   Defendant may be served with process through its registered agent, Corporation Service Company, 701 Brazos Street, Suite 1050, Austin, Texas 78701

## II.

## JURISDICTION AND VENUE

6.     This action arises under a federal statute and this Court has jurisdiction pursuant to 18 U.S.C. §2710(c) (conferring jurisdiction on the United States District Court for actions under the VPPA) and 28 U.S.C. §1331 (federal question jurisdiction).

7.     Venue is appropriate in this District because members of the proposed class, are a residents of the District and Defendant has committed violations of the VPPA within the Eastern District of Texas.

## III.

## FACTS APPLICABLE TO ALL COUNTS

**A.   THE ENACTMENT OF THE VIDEO PRIVACY PROTECTION ACT**

8.   Congress enacted the Videotape Privacy Protection Act "to protect [certain personal information of an individual who rents video materials] from disclosure." S.Rep. No. 100-599, 100th Cong., 2d Sess. at 16 (1988). The impetus for enacting the measure arose as a result of Judge Robert Bork's 1987 Supreme Court nomination battle, during which a Washington, D.C. newspaper obtained a list of 146 video tapes the Bork family had previously rented from their neighborhood store.   Members of the Senate Judiciary Committee were outraged by the invasion into the Bork family's privacy.   Both houses of Congress acted quickly to outlaw certain disclosures of such clearly private information, resulting in the Videotape Privacy Protection Act.   Senator Leahy echoed the nation's desire to protect individual's privacy rights when he commented on the act by saying,

> "[Privacy] is not a conservative or liberal or moderate issue.   It is an issue that goes to the deepest yearnings of all Americans that we are free and we cherish our freedom and we want our freedom.   We want to be left alone."

> S. Rep. No. 100-599, 100th Cong., 2 Sess. At 6 (1988).

9.   Section 2710(c) of the Act provides broadly that "[a]ny person aggrieved by any act of a person in violation of [§ 2710] may bring a civil action" in an appropriate U.S. District Court.   The Act can be violated in one or all of the following three ways: (1) a "video tape service provider" discloses 'personally identifiable information' regarding a customer without meeting any of the enumerated exceptions listed in the act, (2) if personally identifiable information obtained in any manner other than as narrowly provided by the Act is "received in evidence" in almost any adversarial proceeding, and (3) a "person" fails to timely destroy a

---

customer's personally identifiable information. 18 U.S.C. § 2710(e). Upon finding any of these violations, a plaintiff is entitled to a range of relief including actual damages, statutory damages, punitive damages, attorneys' fees, or "such other ... equitable relief as the Court may determine to be appropriate." 18 U.S.C. § 2710(c).

**B.**  **FACEBOOK**

10.    Facebook is owned and operated by a privately held company named, Facebook, Inc.  The website was created by Harvard University graduate, Mark Zuckerberg while a student attending the University in 2004.  Originally, the website was established to allow Harvard University students to communicate with each other on the Facebook network.  However, the website quickly became a medium for anyone aged 13 and over.

11.    Facebook now has more than 64 million active users worldwide.  From September 2006, to September 2007, the website rose in ranking among all websites, in terms of traffic, from 60th to 7th.  Facebook is also the most popular website for uploading photos, with 14 million uploaded daily.

12.    The free-access website allows users to join one or more networks, such as a school, place of employment, or geographic region to easily communicate with other users joined to the same network.  Facebook was named after the paper facebooks depicting members of a campus community that some American colleges and preparatory schools give to incoming students, faculty, and staff as a way to get to know other people on campus.

13.    On November 6, 2007, Facebook announced to the public that 44 websites would work hand-in-hand with Facebook and its new Facebook Beacon system.  One of these 44 websites was www.blockbuster.com a Blockbuster, Inc. owned website.

## C.   THE BEACON SYSTEM

14.   Beacon was created to provide members of Facebook a new way to socially distribute information on the website. Facebook implemented the new computer program as a core element in the Facebook Ads system for connecting businesses with users.

15.   The way Beacon functions is third-party sites that affiliate with Beacon are given javascript code (herein referred to as "tag") to place on its website pages. Once an individual goes to the third-party's page and performs certain actions (such as renting a movie) the tag "calls" Facebook programming software. An iframe is generated and the information is loaded into Facebook software. At this point, Facebook knows about the news feed item whether an individual has chosen to publish that information or not. Next, Facebook programming software sends the information back to the third-party website and creates a pop-up that displays on the bottom right corner of your computer screen window stating that the website (such as blockbuster) is sending a summary of your action to your Facebook profile. The summary reads something like this, "Preston added Lord of the Rings to his queue on Blockbuster.com." Listed below the summary is "Learn More/This isn't me" and "x no thanks." The "x no thanks" is the only option that is presented to a user in order to enable him/her to opt-out of blockbuster sending that summary to Facebook friends.

16.   Essentially, websites that have implanted the Beacon system can distribute summary information collected from a users actions that she/he performed on the companies website to Facebook. These actions include the distribution of video rental information, video game rental information, what movies individuals are going to see in movie theaters, etc.

## D.   **PUBLIC OUTCRY AND APOLOGY**

17.    Many members of Facebook began to complain about the new Beacon system and even claimed that they never saw the "opt-out" option (which was the pop-up window that was supposed to show up at the bottom right-hand of your computer screen). After much public outcry and criticism for collecting more information on users for advertisers than was previously stated of the new Beacon system, on December 5, 2007, Mark Zuckerberg publicly apologized for the way that Facebook launched the Beacon system, saying "the problem with our initial approach of making it an opt-out system instead of opt-in was that if someone forgot to decline to share something, Beacon still went ahead and shared it with their friends."

18.    In addition, Mark Zuckerberg, stated:

> About a month ago, we released a new feature called Beacon to try to help people share information with their friends about things they do on the web. We've made a lot of mistakes building this feature, but we've made even more with how we've handled them. We simply did a bad job with this release, and I apologize for it. While I am disappointed with our mistakes, we appreciate all the feedback we have received from our users. I'd like to discuss what we have learned and how we have improved Beacon.

> When we first thought of Beacon, our goal was to build a simple product to let people share information across sites with their friends. It had to be lightweight so it wouldn't get in people's way as they browsed the web, but also clear enough so people would be able to easily control what they shared. We were excited about Beacon because we believe a lot of information people want to share isn't on Facebook, and if we found the right balance, Beacon would give people an easy and controlled way to share more of that information with their friends.

> But we missed the right balance. At first we tried to make it very lightweight so people wouldn't have to touch it for it to work. The problem with our initial approach of making it an opt-out system instead of opt-in was that if someone forgot to decline to share something, Beacon still went ahead and shared it with their friends. It took us too long after people started contacting us to change the product so that users had to explicitly approve what they wanted to

share. Instead of acting quickly, we took too long to decide on the right solution. I'm not proud of the way we've handled this situation and I know we can do better.

Facebook has succeeded so far in part because it gives people control over what and how they share information. This is what makes Facebook a good utility, and in order to be a good feature, Beacon also needs to do the same. People need to be able to explicitly choose what they share, and they need to be able to turn Beacon off completely if they don't want to use it.

This has been the philosophy behind our recent changes. Last week we changed Beacon to be an opt-in system, and today we're releasing a privacy control to turn off Beacon completely. You can find it here. If you select that you don't want to share some Beacon actions or if you turn off Beacon, then Facebook won't store those actions even when partners send them to Facebook.

On behalf of everyone working at Facebook, I want to thank you for your feedback on Beacon over the past several weeks and hope that this new privacy control addresses any remaining issues we've heard about from you.

Thanks for taking the time to read this.

19.    On or about November 29, 2007, Facebook changed their opt-out system to an opt-in system where users of Facebook would have to give their express consent to send the beacon summaries to friends.

20.    To this day; however, Facebook still receives personal identifiable information from participating websites with the Beacon javascript, whether the Facebook member has chosen to distribute their information or not.

## E.    BLOCKBUSTER ALIGNS WITH FACEBOOK TO SHARE "PERSONALLY IDENTIFIABLE INFORMATION"

21.    Facebook aligned with 12 major U.S. Corporations in 2007, including Blockbuster in order to share information collected by the movie giant with Facebook to create a new advertisement medium.

22.      Jim Keyes, Blockbuster's Chief Executive Officer, commented on the new Beacon system, "this is beyond creating advertising impressions. This is about Blockbuster participating in the community of the consumer so that, in return, consumers feel motivated to share the benefits of our brand with their friends."

23.      Blockbuster participated in the community of the consumer by placing the Beacon tag on their website to gather and distribute personally identifiable information about a consumer every time the individual performs an action, such as renting or buying a movie, or placing movie selections into the user's queue.

24.      Every time Beacon gathers the personal identifiable information the information is sent to Facebook. Blockbuster shares information collected by the Beacon tag to Facebook and then to Facebook users. The information that the tag collects is information such as the specific movie an individual rents, movie purchases made and even movies that users place in their queues on the Blockbuster website.

25.      In early November of 2007, Blockbuster first implemented the Beacon tag. At this time, a member of Blockbuster who was either renting, buying or placing a movie into their queue (which is a way to store a number of movies for future rental) was prompted with a summary of their action that the tag gathered on the bottom right-hand corner of the member's screen telling the member that the information collected from the Beacon tag would be sent in a summary form to the user's Facebook friends. Users of the Blockbuster's website were given an opportunity to prevent friends from seeing the information from a "x no thanks" box that appeared at the bottom of the summary; however, if users did not quickly respond, the popup went away . . . and a "yes" was sent to Facebook who then distributed the information to your friends. For example, if someone buys a movie from Blockbuster online, and does not choose to

**PLAINTIFFS' FIRST AMENDED COMPLAINT – CLASS ACTION**                    Page 8

opt-out in time, the consumer's selection on Blockbuster (such as the name of the movie rented by that consumer) was placed in the consumer's news feed on their Facebook profile and in their friends' news feeds. Along with the story was a picture of the individual who purchased the movie and a Blockbuster ad.

26. Sometime in December 2007, Blockbuster began notifying online users that a summary of the user's actions would be sent to Facebook. However, the summary is immediately sent to a user's Facebook profile even before the user has a chance to decline the distribution of his/her personal identifiable information (as long as you have not marked the privacy feature telling blockbuster never to send summaries). To this day, Blockbuster online members remain unsuspecting victims.

27. Blockbuster remains as a distributor of personally identifiable information.

## F. **CAUSES OF ACTION**

### I. **Video Tape Rental and Sale Records, VPPA 18 U.S.C. §2710(b)**

28. Defendant violated §2710(b) of the Video Privacy Protection Act when Defendant knowingly distributed Plaintiffs' and class members' video tape rental and sale records to third parties who did not have the informed, written consent of Plaintiffs or class members at the time of the disclosure.

29. Defendant is a "video tape service provider[s]" within the meaning of the VPPA 18 U.S.C. §2710 because Defendant is a "person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." Blockbuster Online is a website where consumers can log in and rent, purchase or add movies to a queue for later rental. Blockbuster's online website is one of the nation's largest online companies for rental, sale and delivery of audiovisual materials. In

fact, Blockbuster has 1.6 million consumers joined to their Blockbuster on-line rental service. Blockbuster is clearly a "video tape service provider."

30.    Defendant's violations of the VPPA have been committed "knowingly," within the meaning of the VPPA 18 U.S.C. §2710.  In the context of the VPPA, to act knowingly is to act with knowledge of the facts that constitute the offense. *See, e.g., Bryan v. Unites States,* 524 U.S. 184, 193, 118 S.Ct. 1939, 1946, (1998) ("[U]nless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense.").  Defendant knew that it distributed Plaintiffs' and class members' personal identifiable information when Defendant placed Beacon javascript code on its webpage to copy each action Plaintiffs and class members made on the Defendant's webpage and subsequently sent that information to third parties including Facebook.  Defendant's acts of copying Plaintiffs' and class members' video selections and distributing them to a Facebook was how Defendant planned on participating in the consumer's community.  Defendant clearly knows that Plaintiffs' and class members' personally identifiable information was and currently is still being distributed to Facebook because Defendant's website pop-up screen tells Plaintiffs and class members that their information is being sent to Facebook every time Plaintiffs and class members rent, purchase or adds a movie to their queue.

31.    The information Defendant is obtaining from their website constitutes "personal identifiable information" within the meaning of the VPPA, 18 U.S.C. §2710.    Defendant's distributed Plaintiffs and class members information such as movie purchases, rentals and queue selections that Plaintiffs and class members made to Facebook.  Each occurrence where Defendant's knowingly distributed a consumer's personal identifiable information to a third

**PLAINTIFFS' FIRST AMENDED COMPLAINT – CLASS ACTION**                              Page 10

party is a separate and distinct violation of the VPPA, remediable under the VPPA, 18 U.S.C. §2710.

## IV.

## CLASS ACTION ALLEGATIONS

32.     Pursuant to Fed. R. Civ. P. 23(b)(3), and 23(b)(2) Plaintiffs bring this action on behalf of themselves, and all others similarly situated, as representatives of the following class (the "Class"):

> Each and every individual in the United States of America who has ever been a member of Facebook and Blockbuster on-line during the same time period beginning from November 6, 2007, through the date of judgment herein whose name, and/or address, or a title, description, or subject matter of any video tapes or other audio visual materials that were rented, sold or delivered to each individual were distributed to third parties by Defendant without the informed written consent of such individuals obtained at the time the disclosure was made.

> Excluded from the class are all employees, including, but not limited to, Judges, Magistrate Judges, clerks and court staff and personnel of the United States District Courts of the Eastern District of Texas, the United States Court of Appeals for the Fifth Circuit and the United States Supreme Court; their spouses and any minor children living in their households and other persons within a third degree of relationship to any such Federal Judge; and finally, the entire jury venire called to for jury service in relation to this lawsuit.

33.     The requirements of Fed. R. Civ. P. 23 are met in this case. The Class, as defined, is so numerous that joinder of all members is impracticable.

34.     There are questions of fact and law common to the Class as defined, which common questions predominate over any questions affecting only individual members. The common questions include:

      a.    whether Defendants improperly distributed and/or used "personal identifiable information" obtained from their websites of members of the Class, within the meaning of the VPPA, 18 U.S.C. §2710, and,

      b.    whether Defendants' obtaining and distributing "personal identifiable information" from the Defendants' websites of members of the Class was done knowingly, within the meaning of the VPPA, 18 U.S.C. §2710.

      c.    whether Defendants' obtaining and distribution of "personal identifiable information" from the Defendants' websites of members of the Class was destroyed "as soon as practicable, but no[t] later than one year from the date the information is no longer necessary for the purpose for which it was collected," within the meaning of the VPPA, 18 U.S.C. §2710.

35.    Plaintiffs can and will fairly and adequately represent and protect the interests of the Class as defined and have no interests that conflict with the interests of the Class. This is so because:

      a.    All of the questions of law and fact regarding the liability of the Defendants are common to the class and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs will necessarily establish the liability of the Defendants to all class members;

      b.    Without the representation provided by Plaintiffs, it is unlikely that any class members would receive legal representation to obtain the remedies specified by the VPPA;

      c.    A remedy available under the VPPA is the liquidated sum of $2,500, which Plaintiffs intend to seek for all members of the Class; and

      d.    Plaintiffs have retained competent attorneys who are experienced in the conduct of class actions. Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the class members and are determined to diligently discharge those duties to obtain the best possible recovery for the Class.

36.    All class members have the same legal rights under the VPPA. Defendant's violations of the VPPA have affected numerous individuals throughout the United States of America in a similar way. The class action is superior to any other method for remedying Defendant's violations of the VPPA given that common questions of fact and law predominate

---

**PLAINTIFFS' FIRST AMENDED COMPLAINT – CLASS ACTION**        Page 12

and the liquidated damage provisions of the VPPA make the remedy available to class members identical. Class treatment is likewise indicated to ensure optimal compensation for the Class and limiting the expense and judicial resources associated with thousands of potential claims.

37.     Defendants knowingly distributed "personal identifiable information," pertaining to Plaintiffs and the members of the Class to third-parties, in violation of the VPPA. 18 U.S.C. §2710.  Defendant's distribution of this "personal identifiable information" did not meet any of the enumerated exceptions nor was the distribution for a purpose authorized by the VPPA.

38.     Pursuant to the VPPA, 18 U.S.C. §2710, Defendants are liable for knowingly distributing "personal identifiable information" pertaining to Plaintiffs and the members of the Class to third parties in violation of the VPPA.

39.     Plaintiffs and the members of the Class are entitled to liquidated damages in the amount of $2,500.00 for each instance in which Defendants violated the VPPA.

WHEREFORE, Plaintiffs demand judgment on his behalf and on behalf of the other members of the Class to the following effect:

a.     declaring that this action may be maintained as a class action;

b.     granting judgment in favor of Plaintiffs and the other members of the Class against the Defendant in the amount of $2,500.00 for each instance in which the Defendant disclosed, or used personal identifiable information concerning the Plaintiffs and members of the Class;

c.     punitive damages should be the Court find that the Defendants acted in willful or reckless disregard of the VPPA;

d.     reasonable attorney's fees and other litigation costs reasonably incurred

e.      requiring the Defendants to destroy any personal information illegally distributed; and

f.     such other relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Respectfully submitted,

**THE COREA FIRM P.L.L.C.**


/Jeremy R. Wilson/
Thomas M. Corea
Texas Bar No. 24037906
Jeremy R. Wilson
Texas Bar No. 24037722
Preston J. Dugas III
Texas Bar No. 24050189
The Republic Center
325 North St. Paul Street, Suite 4150
Dallas, Texas 75201
Telephone:     214.953.3900
Facsimile:     214.953.3901

**OTSTOTT & JAMISON, P.C.**
George A. Otstott
Texas Bar No. 15342000
Ann Jamison
Texas Bar No. 00798278
Two Energy Square
4849 Greenville Avenue, Suite 1620
Dallas, Texas 75206
Telephone:     214.522.9999
Facsimile:     214.828.4388

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that on June 3, 2008, I electronically filed the above Motion with the Clerk of the

Court using CM/ECF and that the Motion has been forwarded by CM/ECF to all counsel of

record.


/Jeremy R. Wilson/
Jeremy R. Wilson

determination of transfer request" that "should not be lightly disturbed."[16]   Contrary to

Blockbuster's assertions, the notion that "Plaintiff's choice of forum should be given little

deference" is based on an unwarranted extrapolation of the common law,[17] as Blockbuster has

substantial and continuous operations within the Eastern District of Texas.

In any event, it is universally accepted that a plaintiff has a choice in where he chooses to

file suit in Federal Court.   Many factors are considered in such a decision.[18]   Plaintiff chose to

bring suit in the Eastern District of Texas, and specifically in the Marshall Division for myriad

reasons, including but not limited to: 1) the Marshall Division's relatively small criminal docket;

and 2) the fact that the Eastern District of Texas implemented a Civil Justice Expense and Delay

---

[16] *In re Triton Limited Securities Litigation*, 70 F. Supp. 2d 679, 687 (E.D. Tex. 1999) (internal citations and quotations omitted); *see also Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 774, n.18 (E.D. Tex. 2000) (". . . plaintiff's choice of forum is typically the *first* factor listed for Section 1404(a) analyses in most court's opinions.   It is axiomatic that the *very first* factor historically considered by courts in Section 1404(a) analyses is not the tailbone.   If anything, it's the head.") (internal citations and quotations omitted).

[17] *Mohamed v. Mazda Motor Corp.* 90 F.Supp.2d 757, 773 -774 (E.D.Tex.,2000)("Judge Schell held that "deference to plaintiff's choice of forum disappears when the lawsuit has no connection ... to the venue chosen." *Reed v. Fina Oil and Chemical Co.*, 995 F.Supp. 705, 714 (E.D.Tex.1998) (citing *Lindloff*, 950 F.Supp. at 185; *Fletcher*, 648 F.Supp. at 1404; *Lands v. St. Louis Southwestern R.R. Co.*, 648 F.Supp. 322, 324 (E.D.Tex.1986)). But closer examination of this authority reveals that it is, in fact, a proposition taken out of context from a district court opinion on a class action over forty years ago-more important, this proposition is in direct contravention to the United States Supreme Court's admonition *774 that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should *rarely* be disturbed." *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839 (considerable emphasis added*.*)("* **The time has come to lay this ungrounded, "disappearing deference" proposition to rest; and this Court does so today. In this Court, deference to the plaintiff's choice of forum never "disappears" under any circumstances. Rather, it routinely falls under this Court's analysis with the other ten or so private and public interest factors necessary for a proper Section 1404(a) analysis."*)(emphasis added)

[18] *See McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261-62 (5th Cir. 1983) ("The existence of [forum choices] not only permits, but indeed invites counsel in an adversary system, seeking to serve his client's interest, to select the forum that he considers most receptive to his cause.   The motive of the suitor in making his choice is ordinarily of no moment: the court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are move favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor."); *see also Texas Instruments, Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 996 (E.D. Tex. 1993) ("every litigant who files a lawsuit engages in forum shopping when he chooses a place to file suit.   The Court is concerned only with whether the choice of forum is a proper one under the law, and not with the motives of the party selecting the forum.   The venue statutes are inherently broad, and litigants must often make an election from among several options as to where to file a lawsuit. The litigant's right to choose a forum is well established, and there are well-recognized tests under 28 U.S.C. § 1404 to determine whether a party has exceeded the bounds of fairness, convenience, and judicial economy in the selection made.") (internal citation omitted).

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO TRANFER VENUE**                    Page 6

Reduction Plan pursuant to the Civil Justice Reform Act of 1990[19] well over a decade ago.[20] According to the Office of the Federal Judiciary's Annual Report, in September 2007, the median time to reach trial in a jury case in the Northern District of Texas was 21 months, while the median time to reach a jury trial in the Eastern District of Texas was 17 months.[21] Accordingly Plaintiff's choice of forum is logically related to this litigation and should be given deference.

As stated above, Blockbuster is imposed with a heavy burden in establishing that transfer is warranted and that Plaintiffs' choice of forum should be overruled. When one closely examines the factors discussed by Blockbuster, however, it becomes clear that Blockbuster has failed to meet that burden.

**b.** **The Relative East of Access to Sources of Proof.**

Blockbuster's claim that proof would be more easily obtained in The Northern District ignores modern technology. When the United States Supreme Court decided *Gulf Oil* in 1947 law offices were not equipped with copiers, computers, or scanners, and the video camera and e-mail had yet to be conceived. In this modern era of videotaped depositions, pdf files, e-mail, and computers, the accessibility and location of sources of proof has become decreasingly important.[22] Blockbuster claims that since witnesses and evidence are located in Dallas County, this case should be transferred. The fact is, however, that the only evidence involved in this case is contained on computers belonging to Blockbuster and Facebook. It is no more difficult for Blockbuster to access its own computers, or allow inspection of those computers by Plaintiff if

---

[19] 28 U.S.C. § 471 *et seq.*

[20] *Box v. Ameritrust Texas, N.A.*, 810 F. Supp. 776, 781 (E.D. Tex. 1992).

[21] *See* Federal Judicial Caseload Statistics, Statistical Table C-10 (Sept. 2007), http://www.uscourts.gov/judbus2007/appendices/C10Sep07.pdf.

[22] *Mohamed*, 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000) ("Typically, the accessibility and location of sources of proof should weigh only slightly in this Court's transfer analysis, particularly since these factors have been given decreasing emphasis due to advances in copying technology and information storage.") (citing *Arrow Elecs., Inc. v. Ducommun, Inc.* 724 F. Supp. 264, 266 (S.D.N.Y. 1989); *Houk v. Kimberly-Clark Corp.,* 613 F. Supp. 923, 932 (W.D. Mo 1985))

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO TRANFER VENUE** Page 7

Texas.[30]   Finally, the Eastern District of Texas Local Rule CV-26 evidences the significant efforts made by the Court to endeavor to move the discovery process along and bring cases before it to trial.[31]   Accordingly, this factor too weighs against transfer.  At best this factor is a non-factor.  Both Courts are busy and this case should not cause significant congestion on either Courts' docket.  In any event, this factor, standing alone, is an insufficient basis to overcome Plaintiffs' choice of venue in this case.

### b.    The Local Interest of Having Localized Interests Decided at Home.

Blockbuster erroneously claims that the alleged wrong occurred within The Northern District.  The alleged wrong in this case is the disclosure of Plaintiffs' "personally identifiable information" to a California entity.  Facebook operates in California.  The information which was wrongfully disclosed, was wrongfully disclosed in California.  All of the evidence of the contents of those wrongful disclosures is contained on Facebook's computers, in California.  The fact that Blockbuster may wish to rely on information on its own computers in Dallas to attempt to excuse this wrongful disclosure does not change the fact that the disclosure is the underlying violation of the Video Privacy Protection Act, and the wrongful disclosure was made in California.  Thus, this factor does not weigh in favor of transfer.

Blockbuster also argues there is no local interest in adjudicating this cause in the Eastern District.  Plaintiffs strongly believe that through discovery it will become apparent that numerous individuals who reside in the Eastern District of Texas also use Blockbuster's services and have also had their "personally identifiable information" wrongfully disclosed to Facebook.  Blockbuster's violations of the VPPA were systemic violations occurring through their online video rental services.  Certainly, many individuals residing in the Eastern District of Texas used

---

[30] *See* Federal Judicial Caseload Statistics, Statistical Table C-10 (Sept.  2007), http://www.uscourts.gov/judbus2007/appendices/C10Sep07.pdf.
[31] E.D. Tex. LR CV-26.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO TRANFER VENUE**          Page 12

members' decisions to further share information with their Facebook friends. On this motion, however, the merits of Plaintiffs' claims are not at issue.

**B.      The Location of the Parties and the Place of the Alleged Wrong.**

This case has no connection to the Eastern District of Texas, including the Marshall Division of the Eastern District of Texas. Miller Dec. ¶¶ 6-7. All of the parties are located in Dallas, and the conduct alleged in the Complaint took place within the Dallas Division of the Northern District of Texas.

Each Plaintiff alleges that he or she resides in Dallas County, within the Dallas Division of the Northern District of Texas. Compl. ¶ 2-4. Defendant Blockbuster also resides in Dallas County, with its nationwide headquarters and corporate offices located at 1201 Elm Street, Dallas, Texas 75270 – within the Dallas Division of the Northern District of Texas. Miller Dec. ¶ 4. In fact, Blockbuster's headquarters are approximately three blocks from the federal courthouse in Dallas. *Id.* This office employs approximately 530 Blockbuster employees, including corporate management, Blockbuster Online staff, Blockbuster's counsel, and all of the Blockbuster employees who are likely witnesses in this case. *Id.*

Blockbuster Online, a division of Blockbuster, is also located at 1201 Elm Street, Dallas, Texas 75270. *Id.* ¶ 5.      Blockbuster Online's only office and its employees are located there.[2] *Id.* All of Blockbuster Online's computers, data, and documents are located at 1201 Elm Street, Dallas, Texas. *Id.* Because the Complaint involves the alleged disclosure of Plaintiffs' information by Blockbuster Online, all of the conduct alleged of Blockbuster in the Complaint – if it occurred at all – could only have occurred in Dallas, Texas. *Id.*

---

[2]  Blockbuster has a customer service call center in McKinney, Texas, located within the Eastern District of Texas, which does include customer service calls related to Blockbuster Online. None of the allegations in the Complaint even remotely relate to any conduct that could be claimed as taking place at Blockbuster's call center in McKinney.

3

Plaintiffs have alleged that Blockbuster's principal place of business is at P.O. Box 8019, McKinney, Texas 75070 in Collin County. Compl. ¶ 3. This allegation is false. Miller Dec. ¶ 3. Blockbuster's principal office is at 1201 Elm Street, Dallas, Texas, not McKinney, Texas. *Id.* ¶¶ 3-4. Blockbuster's facility in McKinney, Texas is the McKinney Distribution Center. *Id.* ¶ 6. The McKinney Distribution Center is a distribution center for Blockbuster stores. *Id.* There is also a customer service call center at that location. *Id.* Based on the allegations in the Complaint, the McKinney Distribution Center has no connection whatsoever to this case. *Id.* None of the conduct alleged of Blockbuster – even if true – could have occurred in McKinney, Texas. *Id.*

Facebook, Inc. is located on University Avenue in Palo Alto, California. *See* the Declaration of Frank Brame ("Brame Dec.") ¶ 7, attached hereto as Exhibit B. It is not alleged to have engaged in any relevant conduct that could have occurred in the Eastern District of Texas.

**C.  Location of the Witnesses and Documents.**

None of the relevant evidence in this case, including the witnesses and documents, is located in the Marshall Division of the Eastern District of Texas. Meanwhile, the parties and much of the evidence is located in the Dallas Division of the Northern District of Texas.

Blockbuster has at least four witnesses from Dallas that it would call in a trial of this matter. Brame Dec. ¶ 6. They are Ryan Miller, Chris Zarski, Drexel Owusu, and Phillip K. Morrow.[3]  *Id.* Each of these witnesses is employed at 1201 Elm Street, Dallas, Texas. Miller

---

[3] Ryan Miller's job title is Director of Product Management Online. He is likely to testify regarding Blockbuster Online operations. Chris Zarski's job title is Director of Customer Acquisition. He is likely to testify regarding Blockbuster Online's marketing. Drexel Owusu's job title is Director of Strategic Planning. He is likely to testify regarding Facebook. Phillip K. Morrow's job title is Senior Vice President and Chief Information Officer. He is likely to testify regarding Blockbuster Online operations and management. *See* Brame Dec. ¶ 6.

4

Dec. ¶¶ 9-12. Their offices are approximately three blocks from the federal courthouse in Dallas, but approximately 150 miles from the federal courthouse in Marshall, Texas.[4] *Id.* Any other fact witnesses Blockbuster is likely to call in this case will also be located in Dallas, Texas. Brame Dec. ¶ 6.

In addition, any Blockbuster documents that would relate to the allegations in this case, such as Blockbuster Online's documents, are located at its downtown Dallas headquarters. Miller Dec. ¶ 5. This is also true for any other physical evidence that may be relevant, such as data, servers, or any other Blockbuster evidence. *Id.* If trial were held in Marshall, Blockbuster would incur additional expense and inconvenience hauling documents, exhibits, and other evidence from Dallas. *Id.* ¶ 13.

Plaintiff Harris also resides in Dallas County, approximately 150 miles from Marshall, Texas. Compl. ¶ 2. Her documents, computer, and other evidence are likely to be located where she resides – in Dallas County, Texas. *Id.* The same is also true for Plaintiffs Mario Herrera and Maryam Hosseiny, both of whom also reside in Dallas County, Texas. *Id.* at ¶¶ 3-4.

Facebook's witnesses would also likely find it more convenient to proceed in Dallas. Blockbuster likely will call at least two Facebook witnesses to testify in this matter. Brame Dec. ¶ 7. Facebook, Inc. is located on University Avenue in Palo Alto, California. *Id.* Each Facebook witness would likely need to travel from Palo Alto, California to Texas for hearings and trial. *Id.* American Airlines operates several non-stop flights per day to Dallas, Texas from San Jose International Airport, the nearest major airport to Palo Alto. *Id.* There are no flights between San Jose International and Marshall, Texas. *Id.*

---

[4] To the extent hearings are held in Texarkana, Texas, the courthouse there is approximately 180 miles from Blockbuster's headquarters in Dallas.

Lead counsel for the parties are located in Dallas. The offices of Vinson & Elkins, lead counsel for Blockbuster, are located at 2001 Ross Avenue in Dallas, approximately eight or nine blocks from the federal courthouse in Dallas. Brame Dec. ¶ 4. The Corea Firm's offices, lead counsel for Harris, are located a similar distance from the federal courthouse in Dallas. *Id.*

In short, this case could be tried much more conveniently in Dallas than in Marshall. *Id.* ¶ 8. The documents and witnesses are located at Blockbuster's headquarters in downtown Dallas. *Id.* A trial in Marshall would be approximately 150 miles away and would require additional substantial expense for travel, hotel, and time away from work for witnesses who live and work in Dallas. *Id.* Meanwhile, in Dallas, witnesses could return to work on a same-day basis and would not need to travel or stay overnight. *Id.* For these reasons, it would be significantly more convenient for these parties, witnesses, and counsel to try this case in Dallas. *Id.*

### III.     ARGUMENT AND AUTHORITIES

Under Fifth Circuit precedent, this case should be transferred to the United States District Court for the Northern District of Texas, Dallas Division. As further explained below, (1) venue is proper in the Northern District of Texas; (2) each of the private interest factors weighs in favor of transfer because all the relevant parties and evidence are located in Dallas; and (3) each of the public interest factors weighs in favor of transfer because this District and Division have no connection to this case and it would be inappropriate to impose the burden and expense of this matter on this District's courts and jurors.

#### A.     The Legal Standard for Transfer Under 28 U.S.C. § 1404(a).

Section 1404(a) states:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

6



**EXH. E**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| CATHRYN ELAINE HARRIS, et al., | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **3-09CV0217-M** |
| vs. | § | CIVIL ACTION NO. 2:08-CV-155 (DF) |
| | § | |
| BLOCKBUSTER INC., | § | |
| | § | |
| **Defendant.** | § | |

## O R D E R

Before the Court is Defendant's Amended Motion to Transfer Venue Pursuant to 28 U.S.C.

§ 1404(a). Dkt. No. 27. Also before the Court are Plaintiffs' response and Defendant's reply. Dkt.

Nos. 28 & 29. Having considered all relevant papers and pleadings, the Court finds that Defendant's

motion should be **GRANTED**.

## I. BACKGROUND

Plaintiffs, residents of Dallas County, bring this class action alleging that Blockbuster Inc.

violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, by disclosing their personal

information to the social networking site Facebook. Amended Complaint, Dkt. No. 5. Defendant

Blockbuster Inc., and affiliated Blockbuster Online, has its nationwide headquarters and corporate

offices in Dallas as well. Dkt. No. 27 at 4-5. Defendant now moves, pursuant to 28 U.S.C.

§ 1404(a) ("§ 1404(a)"), to transfer venue from the Marshall Division of Eastern District of Texas

to the Dallas Division of the Northern District of Texas.

## II. LEGAL PRINCIPLES

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of

A TRUE COPY I CERTIFY
DAVID MALAND, CLERK
U.S. DISTRICT COURT
EASTERN DISTRICT, TEXAS

By: _____

-1-

justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

Section 1404(a) presupposes that the action has been brought in a proper venue but authorizes its transfer to another proper district that is more suited to the convenience of witnesses and the needs of justice. The Supreme Court has noted that § 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

This Court generally recognizes a plaintiff's right to choose a venue and will not disturb that choice absent a showing that convenience and fairness necessitate transfer under the facts of that particularized case. *In re Triton*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999). Accordingly, the defendant has the burden to show "good cause" that transfer is appropriate. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (en banc) ("[I]n order to support its claim for a transfer, [defendant] must satisfy the statutory requirement and *clearly demonstrate* that a transfer is for the convenience of parties and witnesses, in the interest of justice." (emphasis added)).

The Fifth Circuit has made clear that the first determination a district court must make is whether the claims might have been brought in the suggested transferee district. *Id.* at 312-13. After such a determination, the district court must then consider the convenience of the parties in both venues. *Id.* at 314-16; *see also Bolt v. Toyota Indus. Corp.*, 351 F. Supp. 2d 597, 599 (E.D. Tex. 2004) (Davis, J.). A convenience determination is essentially a balancing of the inconveniences that will transpire as a result of the plaintiff's choice of venue.

This balancing of conveniences involves of examination of several private and public interest

-2-

factors, none of which has dispositive weight. *In re Volkswagen*, 545 F.3d at 315. The private

factors address (1) the availability of sources of proof, (2) the court's ability to secure witnesses'

attendance, (3) the expense associated with witnesses' attendance, and (4) all other factors relevant

in conducting an expeditious and inexpensive trial. *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S.

501(1947)). The public convenience factors address (1) administrative issues and the congestion of

the courts' dockets, (2) the local interest in having the dispute decided locally, (3) the courts'

familiarity with the controlling law, and (4) the potential conflicts of law issues that may arise. *Id.*

## III. DISCUSSION

The initial inquiry in resolving a motion to transfer venue under § 1404(a) is whether the

district court to which the movant requests transfer is a district in which the case could have been

initially filed. *In re Volkswagen*, 545 F.3d at 312-13. The parties do not contest that venue would

have been proper had this case been brought in the Dallas Division of the Northern District of Texas

because Blockbuster has its principal place of business therein. *See* Dkt. No. 28 at 2-3. The Court

now moves to the second stage of the analysis, which considers the private and public interest factors

restated in *In re Volkswagen*.

### A. Private Convenience Factors

#### 1. Availability of Sources of Proof

Defendant argues that nearly all of the relevant evidence and witnesses are located in the

Northern District of Texas. Dkt. No. 27 at 8-9. Specifically, most of the documents, data, and

computers relevant to this case are located in Dallas at the headquarters of Blockbuster Inc. and

Blockbuster Online. *Id.* In addition, the three named plaintiffs in this putative class all reside in

Dallas County. *Id.*

-3-

The Plaintiffs argue that in "this modern era of videotaped depositions, pdf files, e-mail, and computers, the accessibility and location of sources of proof has become decreasingly important." Dkt. No. 11 at 7. The Fifth Circuit, however, has recently rejected such reasoning and found that the physical location of proof still effects the relative convenience of parties to a lawsuit. *In re Volkswagen*, 545 F.3d at 316 ("That access to some sources of proof presents a less inconvenience now than it might have absent recent developments does not render this factor superfluous.").

Because all named parties reside in Dallas County and the Defendant's operations are headquartered in Dallas, this Court finds that the majority of the evidence in this case would be located there. Thus, this factor weighs in favor of transfer.

## 2. The Court's Ability to Secure Witnesses' Attendance

Neither party specifically identifies witnesses that would be outside this Court's subpoena power. At most, potential witnesses from Facebook, a company located in California, would have to travel to Texas. *See* Dkt. No. 28-29 at 6. Such witnesses, however, would be outside of the subpoena power of both the Northern and Eastern Districts of Texas. As a result, this factor is neutral.

## 3. The Cost of Obtaining Attendance of Witnesses and Other Trial Expenses

Defendant argues its employees and witnesses reside in or near Dallas. Dkt. No. 27 at 10. In addition, the named plaintiffs also reside in Dallas. *Id.* The Fifth Circuit has repeatedly attached a 100-mile threshold to this factor: "When the distance between an existing venue for trial of a matter and the proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. *Volkswagen*, 545 F.3d at 317 (citing *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004)). Recently, the

-4-

Circuit found it "apparent" that Dallas parties would find it more convenient to try a case in Dallas rather than travel the additional 155 miles to Marshall. *Id.* This Court sees no reason to distinguish the present case from *In re Volkswagen*.

Thus, this factor weighs in favor of transfer.

### 4. Other Factors Relevant in Conducting an Expeditious and Inexpensive Trial

This case, filed April 9, 2008, is still in its earliest stages. In addition, any delay and prejudice associated with transfer is only relevant "in rare and special circumstances" and only if "such circumstances are established by clear and convincing evidence." *In re Horseshoe*, 337 F.3d at 434. Finding no such circumstances, and given the fact the that the parties submit no other relevant factors for consideration, the Court finds this factor neutral.

## B. Public Interest Factors

### 1. Administrative Issues

The parties argue over the comparative congestion in the Northern and Eastern District of Texas. *See* Dkt. No. 27 at 13-14, Dkt. No. 18 at 11-12. This Court finds any such difference to be negligible. Therefore, the Court finds this factor neutral.

### 2. Burdens of Jury Duty and the Local Interest in Adjudicating Local Disputes

Defendant argues that this case has no meaningful connection to the Marshall Division. Dkt. No. 27 at 12-13. Although Blockbuster has stores located throughout the nation, the Defendant argues that the alleged conduct could only have occurred in at the company's headquarters in Dallas. *Id.* Defendant contends that the location of the witnesses and the parties give the Northern District of Texas a greater local interest in this case while the Eastern District has not particularized interest in the case. *Id.*

-5-

Plaintiffs respond by arguing that the alleged wrongful conduct occurred in California where Facebook is located rather than in Dallas. Dkt. No. 11 at 12. Moreover, Plaintiffs "strongly believe that through discovery it will become apparent that numerous individuals who reside in the Eastern District of Texas also use Blockbuster's services and have had their 'personally identifiable information' wrongfully disclosed to Facebook." *Id.* As such, Plaintiffs contend that Marshall residents are part of this putative class. *Id.* at 13.

The Fifth Circuit, however, has recognized that the relevant venue question in class action cases is "whether venue is proper as among the parties who have in fact been brought personally before the court as named parties to the action, the parties representing and in effect standing in for the absent class members." *Abrams Shell v. Shell Oil Co.*, 343 F.3d 482, 489-90 (5th Cir. 2003); *see also Bywaters v. United States*, 196 F.R.D. 458, 464-65 (E.D.Tex. 2000) ("[T]he relevant venue question in a class action is whether venue is proper as to the parties representing, and 'in effect standing in for the absent class members.' "). Although the Circuit has not specifically addressed this issue in connection with § 1404(a), this Court finds no reason to apply a different rule to transfer motions. As such, this Court finds that Marshall has no presently cognizable interest in adjudicating this dispute because all three named plaintiffs reside elsewhere.

Therefore, this factor weighs in favor of transfer.

### 3. The Courts' Familiarity with the Controlling Law

The parties submit no reason why one district would have more familiarity with the controlling law in this case. Therefore, this factor is neutral.

### 4. Conflicts of Law

The parties submit no conflict of law issues and the Court finds none. Therefore, this factor

is neutral.

## IV. CONCLUSION

Defendant has clearly demonstrated that the Dallas Division of the Northern District of Texas is more convenient for this litigation. Every private and public factor is either neutral or weighs in favor of the transfer. None of the factors suggest that Marshall is a more convenient venue for this litigation.

For all of the foregoing reasons, Defendant's Motion to Transfer Venue (Dkt. No. 27) is hereby **GRANTED**.

It is therefore **ORDERED** that the above-captioned case is hereby **TRANSFERRED** to the Northern District of Texas, Dallas Division.

**IT IS SO ORDERED**.

**SIGNED this 30th day of December, 2008.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

-7-

possession somehow warrants transfer.  Unlike in *Volkswagon II,* there are no non-party fact witnesses located in the Northern District.  Only documentary evidence.  And nothing in *Volkswagon II* prohibits this Court from recognizing that documents are much easier to obtain in other districts and the fact that computers and documents may be located in another district does not, by itself, warrant transfer to that district.

As for evidence in Facebook's possession, that evidence becomes no more accessible if this case is transferred to the Northern District.  As noted by Blockbuster, Facebook remains outside of the subpoena power of both the Northern and Eastern Districts.  Thus, information from Facebook will have to be obtained in California.  This is no easier if the case is in the Northern District.  In short, Blockbuster has failed to identify any piece of evidence which will be more easily obtained in the Northern District than in the Eastern District.  Thus, this factor does not really favor either party's position.

Unlike in *Volkswagon II*, where numerous fact witnesses to an automobile accident were located in Dallas, this case does not involve medical professionals, police officers, or third party bystander witnesses who would be required to travel to this forum.  In short, all of the evidence necessary to try this case is already in the possession of the parties to this lawsuit, except for that evidence in the possession of Facebook.  Moving this case to the Northern District does not make it any easier to obtain evidence and deposition testimony from a California company.  Blockbuster has simply failed to demonstrate how this factor warrants transfer.  And Blockbuster has certainly not demonstrated why this factor should "clearly" trump Plaintiffs' venue choice.

### c.   The Availability of Compulsory Process to Secure the Attendance of Witnesses.

Blockbuster admits that this factor would have no relevance for any Facebook witnesses, as those witnesses reside in California and are outside of the subpoena power of both of the proposed and existing venues.  Amazingly, however, Blockbuster contends that compulsory

**EXH. G**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| CATHRYN ELAINE HARRIS et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 3:09-cv-217-M |
| | § | |
| BLOCKBUSTER, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## <u>ORDER STAYING CASE</u>

Before the Court is Defendant Blockbuster, Inc.'s Motion to Stay Proceedings Pending

Appeal [Docket Entry #34].  The Motion is **GRANTED**.  The Court has considered the

Plaintiffs' Response to the Motion, and concludes that regardless of whether staying the case is

automatic or in the Court's discretion, the case should be stayed until the Fifth Circuit rules on

Defendant's appeal.

**SO ORDERED**.

May 1, 2009.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**

**General Docket**
**United States Court of Appeals for the 5th Circuit**

---

**Court of Appeals Docket #:** 09-10420                     **Docketed:** 04/29/2009
**Nature of Suit:** 3890 Other Statutory Actions
Cathryn Harris, et al v. Blockbuster Inc
**Appeal From:** Northern District of Texas, Dallas

---

**Case Type Information:**
   **1)** Private Civil Federal
   **2)** Private
   **3)**

---

**Originating Court Information:**
   **District:** 0539-3 : 3:09-CV-217
   **Ordering Judge:** Barbara M. G. Lynn, U.S. District Judge
   **Date Filed:** 02/03/2009
   **Date NOA Filed:**                         **Date Rec'd COA:**
   04/22/2009                                  04/22/2009

---

**Prior Cases:**
   None

**Current Cases:**
   None

---

**Panel Assignment:**      Not available

---

| | |
|---|---|
| CATHRYN ELAINE HARRIS, on behalf of herself and all other similarly situated<br>                  Plaintiff - Appellee | Jeremy R. Wilson<br>Direct: 214-953-3900<br>Email: jwilson@corealaw.com<br>Fax: 214-953-3901<br>[COR LD NTC Retained]<br>The Corea Firm, P.L.L.C.<br>Suite 4150<br>1201 Elm Street, Renaissance Tower<br>Dallas, TX 75201-0000 |
| MARIO HERRERA, on behalf of himself and all other similarly situated<br>                  Plaintiff - Appellee | Jeremy R. Wilson<br>Direct: 214-953-3900<br>[COR LD NTC Retained]<br>(see above) |
| MARYAM HOSSEINY, on behalf of herself and all other simlilary situated<br>                  Plaintiff - Appellee | Jeremy R. Wilson<br>Direct: 214-953-3900<br>[COR LD NTC Retained]<br>(see above) |

v.

BLOCKBUSTER INC
                Defendant - Appellant

Michael L. Raiff
Direct: 214-220-7705
Email: mraiff@velaw.com
Fax: 214-999-7705
[COR LD NTC Retained]
Vinson & Elkins, L.L.P.
Suite 3700
2001 Ross Avenue
Trammell Crow Center
Dallas, TX 75201-2975

Frank Converse Brame
Direct: 214-220-7818
Email: fbrame@velaw.com
Fax: 214-999-7818
[COR NTC]
Vinson & Elkins, L.L.P.
Suite 3700
2001 Ross Avenue
Trammell Crow Center
Dallas, TX 75201-2975

Thomas S. Leatherbury
Direct: 214-220-7792
Email: tleatherbury@velaw.com
Fax: 214-999-7792
[COR NTC Retained]
Vinson & Elkins, L.L.P.
Suite 3700
2001 Ross Avenue
Trammell Crow Center
Dallas, TX 75201-2975

CATHRYN ELAINE HARRIS, on behalf of herself and all others similarly situated; MARIO HERRERA, on behalf of himself and all others similarly situated; MARYAM HOSSEINY, on behalf of herself and all others similarly situated,

                Plaintiffs - Appellees

v.

BLOCKBUSTER INC,

                Defendant - Appellant

D. Stampley Decl. in Opp. to Motion to Intervene

Exhibits

| | | |
|---|---|---|
| 04/29/2009 | 6 pg, 241.95 KB | PRIVATE CIVIL FEDERAL CASE docketed. NOA filed by Appellant Blockbuster Inc [09-10420] (GRM) |
| 05/01/2009 | 2 pg, 66.51 KB | INITIAL CASE CHECK by Attorney Advisor complete. Action: Case OK to Process. [6269586-2] Initial AA Check Due satisfied.. Notice of Certified ROA due on 05/18/2009.. [09-10420] (GRM) |
| 05/08/2009 | | APPEARANCE FORM FILED by Attorney Michael L Raiff in 09-10420 for Appellant Blockbuster Inc in 09-10420, by Attorney(s) Frank Converse BrameThomas S Leatherbury for party(s) Appellant Blockbuster Inc Blockbuster Inc, in case 09-10420 [09-10420] (MKC) |
| 05/11/2009 | | NOTICE RECEIVED FROM DISTRICT COURT. Record Part: ROA Certified by DCt, Action Type: FILED Certified ROA due deadline satisfied. [09-10420] (MCS) |
| 05/12/2009 | | APPEARANCE FORM FILED by Attorneys Jeremy R. Wilson, Jeremy R. Wilson and Jeremy R. Wilson in 09-10420 for Appellees Hosseiny, Maryam, Herrera, Mario and Harris, Cathryn Elaine in 09-10420 [09-10420] (GRM) |
| 06/15/2009 | 3 pg, 81.02 KB | BRIEFING NOTICE ISSUED A/Pet's Brief Due on 07/27/2009 for Appellant Blockbuster Inc. [09-10420] (MCS) |
| 07/13/2009 | | PHONE EXTENSION CONFIRMED for Appellant Blockbuster Inc. Extension granted to and including 08/26/2009. A/Pet's Brief deadline updated to 08/26/2009 for Appellant Blockbuster Inc [09-10420] (MCS) |
| 08/06/2009 | 1 pg, 58.85 KB | LETTER OF ADVISEMENT. Reason: Sending corrected caption to counsel of record. [09-10420] (MCS) |
| 08/27/2009 | 77 pg, 3.17 MB | APPELLANT 'S BRIEF FILED by Blockbuster Inc.. # of Copies Provided: 7 A/Pet's Brief deadline satisfied. Appellee's Brief due on 09/28/2009 for Appellee Cathryn Elaine Harris, Appellee Mario Herrera and Appellee Maryam Hosseiny [09-10420] (GRM) |
| 08/27/2009 | 60 pg, 3.4 MB | RECORD EXCERPTS FILED by Appellant Blockbuster Inc. # of Copies Provided: 4 [09-10420] (GRM) |
| 09/04/2009 | | PHONE EXTENSION CONFIRMED for Appellees Ms. Cathryn Elaine Harris, Mr. Mario Herrera and Ms. Maryam Hosseiny. Extension granted to and including 10/28/2009. E/Res's Brief deadline updated to 10/28/2009 for Appellee Cathryn Elaine Harris, Appellee Mario Herrera and Appellee Maryam Hosseiny [09-10420] (MFY) |

right under F.R.C.P. 24(a). Alternatively, Intervenors seek permissive intervention pursuant to F.R.C.P. 24(b).

### A.   Intervenors are entitled to intervene as a matter of right.

Rule 24 provides two methods of seeking intervention:   by right or by permission.[5] There are essentially four requirements for intervention as a matter of right:  1) the applicant must have an "interest" in the property or transaction which is the subject of the action; 2) disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest; 3) the application is timely; and 4) no existing party adequately represents the applicant's interest. Intervenors meet each of these requirements.

First, in Plaintiffs' Second Amended Complaint, Plaintiffs seek, for the first time, to extend the proposed class beyond those persons whose personal information was sold by Florida governmental agencies. The proposed class would now include any person in the nation whose rights might have been violated by Defendants.   Under the proposed settlement, Intervenors would lose their right to pursue any remedies through a class action, effectively barring them from recovery. Clearly, Intervenors have an interest in the outcome of this lawsuit.

Second, as discussed above, Intervenors' ability to pursue their own action against Defendants will essentially be barred and their rights to appeal would be eliminated if they are

---

[5] Rule 24 provides in pertinent part:

> a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ···· (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common···· In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties

denied intervention and the proposed settlement is approved. Thus, Intervenors will be denied the ability to protect their interest should intervention be denied.

Third, Intervenors' application is timely, as Plaintiffs only recently filed their Second Amended Complaint (on December 21, 2006) and the Court has not yet taken any action on the proposal for class certification and settlement approval. In fact, the Court's deadline for filing responses to the motion to approve the settlement agreement is January 5, 2007.

Finally, the class representatives are simply not adequately representing Intervenors' interest. Under the terms of the settlement agreement, Defendants agree only to injunctive relief (they essentially promise not to break the law in the future) and the named Plaintiffs receive incentive awards. The named Plaintiffs justify this settlement on asserted weaknesses in their case, including an inability to show that Defendants knowingly violated the DPPA. As will be discussed in more detail in Intervenors' Objection to Class Certification, there is little doubt that Defendants knowingly violated the DPPA in Texas as they obtained Texas' entire database – some twenty (20) million names – acknowledging in writing that the State of Texas had not obtained express consent for their distribution. This issue does not appear to have been explored in the Florida Litigation. Thus, the named Plaintiffs have only focused on Florida issues and are not protecting the rights of plaintiffs in other states, such as Texas. Because the manner in which the personal information at issue was obtained is different in each case, named Plaintiffs and counsel in each of those states are necessary to adequately protect Texas citizens' rights.

For these reasons, Intervenors assert that they meet all of the requirements for intervention as a matter of right and ask that the Court grant their Motion.

**EXH. J**

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 03-61063-CIV-MARTINEZ-BANDSTRA**

RICHARD FRESCO, *et al.*,

      Plaintiffs,

vs.

AUTO DATA DIRECT, INC., *et al.*,

      Defendants.

_____/

**ORDER DENYING MOTION FOR LIMITED INTERVENTION**

THIS CAUSE came before the Court upon the Proposed Limited Intervenors'[1] Motion for

Limited Intervention **(D.E. No. 415)**. The Court has carefully considered the motion, Plaintiffs'

Response in Opposition (D.E. No. 433), certain Defendants' Response in Opposition (D.E. No.

434), Proposed Limited Intervenors' Reply Memorandum (D.E. No. 446), and is otherwise duly

advised.[2] This Court held an hour-long status conference that was attended by representatives of

all the parties as well as the Proposed Limited Intervenors. The Court heard oral argument

relating to the instant Motion for Limited Intervention. After carefully, reviewing the record in

this case, this Court concludes that the Motion for Limited Intervention should be denied and that

_____

    [1] The Proposed Limited Intervenors are Sharon Taylor, James Douglas Booker, Lowry
Riley, Twilah Brown, James D. Clary, Sharon A. Clarey, Alice M. Cooks, Arlando Cooks,
Elizabeth DeWitt, Kenneth Gossip, Sr., Kenneth Gossip, [Jr.], Pamela Hensley, Robert G.
Holliness, Carolyn Latham Holub, Brandi Jewell, Tracy Karp, David Patterson, Ronnie Phillips,
James Roberts, Luz Ann Roberts, Kimberly Dawn Underwood, Marilyn Whitaker, and William
"Troy" Wilson. (D.E. No. 415 at 2).

    [2] This Court also considered an undated and apparently unsworn Affidavit of Thomas M.
Corea, with attached exhibits, which it appears was not filed on the record. The Court shall file
that document separately on the record.

Proposed Limited Intervenors may more appropriately voice their objections through the settlement approval process.

The Proposed Limited Intervenors seek intervention as a matter of right or through the permissive intervention provisions of Federal Rule of Civil Procedure 24. This Court agrees with the arguments of Plaintiffs and Defendants that the Proposed Limited Intervenors motion is based on an erroneous assumption that without being given leave to intervene, their concerns will not be heard and the "settlement will be completely insulated from appellate review." (D.E. No. 415 at 4). However, the United States Supreme Court has clearly held that "nonnamed class members . . . who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening." *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002).

Furthermore, Proposed Limited Intervenors also rely on the faulty assumption that their interests are not protected because they have purportedly brought different claims based on conduct that occurred in Texas. However, "the mere fact that a proposed intervenor would assert different claims from those asserted by the named plaintiffs does not render the [named plaintiffs] inadequate to represent the [intervenor], nor does the fact that the named plaintiffs may be subject to defenses that the proposed intervenor is not." *In re Paineweber Limited Partnership Lit.*, 174 F.R.D. 35, 38 (S.D. N.Y. 1996) (citing *In re Energy Sys. Equip. Leasing Sec. Litigation*, 642 F. Supp. 718, 749-50 (E.D.N.Y.1986) (granting class certification)). Furthermore, this Court agrees that the Proposed Limited Intervenor's suit in Texas has the same objective: to enforce the Driver Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725, which applies equally across the areas subject to the powers of Congress. As a result, a legal presumption arises that Plaintiffs in

-2-

this case adequately represent the Proposed Limited Intervenors' interests. *See United States v. City of Miami*, 278 F.3d 1174, 1178 (11th Cir. 2002)

As the current parties in the instant case emphasize, the parties have engaged in four years of intense investigations, discovery, and vigorous motion practice, as well as Herculean mediation efforts that spanned the course of nearly a year. *See generally* (Affidavit of Rodney A. Max) (D.E. No. 413-3). After carefully reviewing the arguments of the parties and the Proposed Limited Intervenors, this Court concludes that the intervention of the Proposed Limited Intervenors is not appropriate pursuant to either Federal Rule of Civil Procedure 24(a) or (b). This Court further finds that the Proposed Limited Intervenors do not require intervention to protect their interests. Rather, they can protect their interests simply by objecting to the settlement. *See Grilli v. Metropolitan Life Ins. Co., Inc.*, 78 F.3d 1533, 1538 (11th Cir. 1996).

It is hereby:

**ORDERED and ADJUDGED** that

Proposed Limited Intervenors' Motion for Limited Intervention **(D.E. No. 415)** is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, May 11, 2007.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Bandstra
All Counsel of Record

-3-