Michael L. Raiff (admitted pro hac vice)
mraiff@velaw.com
Frank C. Brame (admitted pro hac vice)
fbrame@velaw.com
Marc A. Fuller (Cal. Bar No. 225462)
mfuller@velaw.com
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas  75201
Telephone:   (214) 220-7705
Facsimile:   (214) 999-7705

Attorneys for Defendant Blockbuster Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN LANE, et al.,<br><br>  Plaintiffs,<br><br>vs.<br><br>FACEBOOK INC., et al.,<br><br>  Defendants. | CASE NO.:  5:08-cv-03845-RS<br><br>BLOCKBUSTER'S SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS SETTLEMENT<br><br>Assigned to the Hon. Richard Seeborg<br><br>Date: February 26, 2010<br>Time: 9:30 a.m.<br>Dept: 4 |

Defendant Blockbuster Inc. ("Blockbuster") hereby files its Supplemental Brief in Support of Class Settlement (the "Motion") and respectfully shows the Court as follows:

## I.     INTRODUCTION

The settlement between Plaintiffs and Facebook Inc. ("Facebook") is a fair and reasonable one and should be approved. As discussed in Facebook's Motion to Dismiss [Dkt. No. 14], the claims asserted in this case are weak and should be dismissed. As such, this settlement—which provides extensive benefits to the class—is more than fair to the class. Blockbuster respectfully submits this supplemental brief to further address two specific issues in addition to those covered by Facebook's Motion to Dismiss. First, Plaintiffs' claims against the Beacon vendors under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, are not viable. Second, even if the underlying claims had merit, Plaintiffs should not ever be able to certify a litigation class because Plaintiffs will not be able to show that a litigation class action would be superior to individual actions. In this Circuit, courts refuse to certify litigation classes seeking statutory damages in cases where, as here, there is the potential for a "horrendous, possibly annihilating" statutory damage award that would be disproportionate to the harm actually suffered. *Soualian v. Int'l Coffee and Tea LLC*, No. CV 07-502-RGK (JCx), 2007 WL 4877902, at *2 (C.D. Cal. June 11, 2007) (quoting *Kline v. Coldwell Banker & Co.*, 508 F.2d 226, 235 (9th Cir. 1974)). In light of the serious risks associated with maintaining this action and recovering on the claims asserted in this case, the proposed settlement is fair, adequate, and reasonable, and should be approved.

## II.     ARGUMENT

**A.     The Appropriate Legal Standards for Evaluating a Classwide Settlement Agreement in this Circuit.**

To determine whether the proposed settlement is fundamentally fair, adequate, and reasonable, the Court should consider the following factors:

(1)     the strength of the plaintiffs' case;

(2)     the risk, expense, complexity, and likely duration of further litigation;

(3)     the risk of maintaining class action status throughout the trial;

(4)     the amount offered in settlement;

|     |     |                                                                              |
| --- | --- | ---------------------------------------------------------------------------- |
|     | (5) | the extent of discovery completed and the stage of the proceedings;          |
|     | (6) | the experience and views of counsel;                                         |
|     | (7) | the presence of a governmental participant; and                              |
|     | (8) | the reaction of the class members to the proposed settlement.                |

*Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Blockbuster files this supplemental brief to highlight the weakness of Plaintiffs' claims and the risk of maintaining class action status throughout the trial of this matter.

**B.   The Settlement is Fair, Reasonable, and Adequate and Should be Approved, Especially in Light of the Weakness of the Claims and the Potential Difficulties in Certifying a Litigation Class.**

**1.   Plaintiffs' Video Privacy Protection Act Claims Against Beacon Vendors such as Blockbuster are Weak.**

Plaintiffs' VPPA[1] claims against Blockbuster are weak and should fail, either at summary judgment or at trial. There is, therefore, a high degree of risk and uncertainty associated with recovering on these claims.

**(a)   Blockbuster disclosed the information at issue "to the consumer" and therefore did not violate the VPPA.**

Blockbuster did not violate the VPPA because it simply disclosed the information at issue "to the consumer." The VPPA specifically provides that "[a] video tape service provider may disclose personally identifiable information concerning any consumer—(A) *to the consumer*." 18 U.S.C. § 2710(b)(2)(A) (emphasis added). The information Plaintiffs complain about was sent by Blockbuster to the consumers' personally-created Facebook accounts and, as such, was a disclosure to the consumers. Blockbuster communicates with its customers through a variety of means, including telephone, mail, and email. Sending information to customers through their Facebook accounts is no different than a "disclosure" of information to customers through another medium, such as the United States postal service (for delivery to consumers via mail) or to Yahoo or Gmail (for delivery to

---

[1] The VPPA provides, in pertinent part, that: "A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person . . . ." 18 U.S.C. § 2710(b)(1).

consumers via email), and is not covered by the VPPA. The fact that the information at issue here was sent to customers via Facebook (as opposed to email) is of no moment. Because Blockbuster sent the information at issue here to individual consumers, the alleged disclosures are not covered by the VPPA. 18 U.S.C. § 2710(b)(2)(A).

### (b) Blockbuster's activities are not covered by the VPPA because Blockbuster never disclosed personally identifiable information.

As set forth above, the VPPA applies only to "video tape service provider[s] who knowingly disclose[], to any person, *personally identifiable information* concerning any consumer." 18 U.S.C. § 2710(b)(1) (emphasis added). The disclosures Blockbuster allegedly made to Plaintiffs' Facebook accounts are not proscribed by the VPPA because they do not constitute "personally identifiable information." The Act defines personally identifiable information as including "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." *Id.* § 2710(a)(3). Although there are few, if any, cases discussing this term in the context of the VPPA, cases interpreting the similarly-defined term under the Cable Communications Policy Act, 47 U.S.C. § 551 ("CCPA"), indicate that personally identifiable information includes "specific information about the subscriber, or a list of names and addresses on which the subscriber is included.'" *Scofield v. Telecable of Overland Park, Inc.*, 973 F.2d 874, 876 n.2 (10th Cir. 1992) (quoting H.R. REP. No. 934, at 4655, 4716 (1984)).

Because the CCPA's definition of "personally identifiable information" is similar to the VPPA's definition, cases interpreting this term in the context of the CCPA are instructive.[2] In *Pruitt v. Comcast Cable Holdings, LLC*, 100 Fed. App'x 713 (10th Cir. 2004), for example, the Tenth Circuit Court of Appeals held that information stored in a cable operator's converter boxes was not "personally identifiable information" because it did not include the name, address, or any other information identifying the customer and—without the information in the cable provider's billing management system that tied the information to specific consumers—was nothing more than a series

---

[2] The CCPA has been described as "analogous" to the VPPA. *Parker v. Time Warner Entm't Co., L.P.*, No. 98 CV 4265 (ERK), 1999 WL 1132463, at *9 (E.D.N.Y. Nov. 8, 1999).

of numbers. *Id*. at 716. Because it was the cable provider's billing system, not the converter boxes, that held the "key" to obtaining personally identifiable information, the court upheld the district court's grant of summary judgment on the plaintiffs' CCPA claim. *Id*. at 716-17.

The information at issue in this case is similar to the information discussed in *Pruitt*. Here, as in *Pruitt*, the information allegedly disclosed is meaningless unless and until it is linked to a specific consumer. Blockbuster never "disclosed" consumers' names, addresses, or other identifying information to anyone, but simply transmitted certain activity notifications to consumers' Facebook accounts. At that point, the information on the Facebook account may or may not have been sufficient to identify the consumer—it depends on who was using the computer, how the consumer's account was set up and what information the consumer chose to disclose on his or her page (for example, if a consumer chose a Facebook username that did not match his own name, his Facebook page may not be sufficient to identify him).[3]

In light of these interpretations and the legislative history of the VPPA, it is clear that the transmittal of video rental information that does not include the name, address, or other information identifying the consumer, as here, does not constitute a disclosure of "personally identifiable information." Because the VPPA "does not restrict the disclosure of information other than personally identifiable information," 134 CONG. REC. H10409-01 (1988), the alleged disclosure of certain actions taken on Blockbuster's website is not actionable.

### (c) Blockbuster's alleged disclosures were made in the ordinary course of business.

Blockbuster's alleged disclosures to Plaintiffs' Facebook accounts are also not actionable under the VPPA because they were made in the ordinary course of Blockbuster's business. The VPPA provides that "[a] video tape service provider may disclose personally identifiable information

---

[3] For example, one alleged class member-objector (who is not a Blockbuster Online member) appears to be complaining about the disclosure of a video rental transaction to another person's Facebook account. *See* Objections of Class Member Ginger McCall; McCall Decl., Ex. 1 (referring to a message that "gary" (rather than objector Ginger McCall) "added [a movie] to his queue" on Blockbuster.com). Because none of the objector's own personally identifiable information was disclosed and, indeed, because the objector is not even a Blockbuster Online member, such transaction cannot violate the VPPA.

concerning any consumer . . . to any person if the disclosure is incident to the ordinary course of business of the video tape service provider." 18 U.S.C. § 2710(b)(2)(E). The Act defines "ordinary course of business" as including "order fulfillment" and "request processing." *Id*. § 2710(a)(2). The legislative history further provides that section 2710(b)(2)(E) "allows disclosure to permit video tape service providers to use . . . computer services[] and similar companies for marketing to their customers." S. REP. NO. 100-599, at 14 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-12. As the Senate Report notes, "[t]his subsection takes into account that video tape service providers may use third parties in their business operations." *Id*.

The plain text of the VPPA, read in conjunction with its legislative history, makes clear that the disclosure of additions to queues and rental requests to a member's Facebook accounts is simply "order fulfillment" and "request processing" activity incident to Blockbuster's ordinary course of business. As the legislative history recognizes, Congress, when enacting the VPPA, took into account the reality that video tape service providers may use third-party computer services, such as Facebook, for marketing to their customers and made the decision not to restrict such activities. *Id*. Because such activities are not proscribed by the VPPA, they are not actionable here.

### (d) Blockbuster's activities are exempt from the VPPA because they were made with the consumers' consent.

As discussed above, Blockbuster was not required to obtain consumer consent because any disclosures were not subject to the VPPA. But even if consent were required, the disclosures at issue are not proscribed by the VPPA because Blockbuster and Facebook obtained Plaintiffs' consent.[4]

Customers with Facebook accounts can choose to keep their Facebook information private or can choose to disclose such information to others who are part of their Facebook networks. From the beginning of the Beacon program, Facebook set up various controls and settings so that customers could choose what information they wanted to share or not to share with others. Given the various

---

[4] The VPPA permits the disclosure of personally identifiable information if the consumer provides "informed, written consent . . . at the time the disclosure is sought." 18 U.S.C. § 2710(b)(2)(B).

procedures and controls implemented by Facebook in connection with the Beacon program, the disclosures complained of are exempt from the VPPA pursuant to 18 U.S.C. § 2710(b)(2)(B).[5]

### 2. Plaintiffs' Efforts to Certify a Litigation Class Would Fail.

Due to the weakness of Plaintiffs' claims and the length of time it will take to litigate this action, among other things, it is clear that there is a high degree of risk associated with further litigation. Furthermore, Plaintiffs would have a very difficult time pursuing this case as a litigation class, especially in light of the difficulty Plaintiffs will have in showing this Court that a class action is superior to other methods of dispute resolution.

Plaintiffs seeking certification of a litigation class must be able to show, among other things, that class resolution is "superior to all other available methods for the fair and efficient adjudication of the controversy." *Hanlon*, 150 F.3d at 1022; *see also* FED. R. CIV. P. 23(b)(3). The superiority inquiry "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case. This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023.

In statutory damage cases, California courts, including the Ninth Circuit, "have denied class certification where the defendant's liability would 'constitute horrendous, possibly annihilating punishment unrelated to any damage to the proposed class.'" *Soualian v. Int'l Coffee and Tea LLC*, No. CV 07-502-RGK (JCx), 2007 WL 4877902, at *2 (C.D. Cal. June 11, 2007) (quoting *Kline v. Coldwell Banker & Co.*, 508 F.2d 226, 235 (9th Cir. 1974)); *see also Bateman v. Am. Multi-Cinema, Inc.*, 252 F.R.D. 647, 651 (C.D. Cal. 2008) (denying motion for class certification where "the magnitude of Defendant's statutory liability [was] enormous and completely out of proportion to any harm suffered by Plaintiff or potential class members"; noting that the slight risk of harm was insufficient to justify class certification that could result in $29 million to $290 million in statutory

---

[5] In addition to the difficulties set forth above, Plaintiffs, in order to prevail on their VPPA claims, would also have to show that Blockbuster acted "knowingly." *See* 18 U.S.C. § 2710(b)(1). Blockbuster did not knowingly disclose any customer's personally identifiable information. Furthermore, Plaintiffs should also be required to prove that they suffered actual damages in order to show their entitlement to statutory damages under the VPPA. *See* 18 U.S.C. § 2710(c)(2)(A). Plaintiffs would likely not be able to show actual damages.

damages); *Vasquez-Torres v. StubHub, Inc.*, No. CV 07-1328 FMC (FFMx), 2008 U.S. Dist. LEXIS 22503 (C.D. Cal. Mar. 4, 2008) (denying certification of a 2 million member class where no actual harm was alleged, but statutory damages would be in the range of $36 million to $2 billion; the court found that class treatment was not appropriate because there was "a great potential for excessive and disproportionate damages"); *Blanco v. CEC Entm't Concepts L.P.*, No. CV 07-0559 GPS (JWJx), 2008 WL 239658, at *2 (C.D. Cal. Jan. 10, 2008) (denying motion for class certification where potential damages between $198 million and $1.98 billion "would completely swallow [the defendant's] net income last year of $68,257,000" and would be grossly disproportionate to the harm, and where there are viable alternative methods, such as individual actions); *Legge v. Nextel Commc'ns, Inc.*, No. CV 02-8676 DSF (VBKx), 2004 WL 5235587, at *17 (C.D. Cal. June 25, 2004) (noting that "the class action procedure should not be used as a mechanism to impose 'super penalties'" and holding that "allowing th[e] case to proceed as a class action has potentially ruinous results—without concomitant benefit to the class").[6] In *Alsup v. Montgomery Ward & Co.*, 57 F.R.D. 89 (N.D. Cal. 1972), this Court denied a motion for class certification, noting:

> The allowance of $100 minimum recovery, plus costs and attorneys' fees . . . was specifically designed by Congress to encourage each consumer to serve as a private attorney general in enforcing the Act. . . . Thus, since Congress has encouraged the consumer to enforce the Act through individual effort, the incentive of class action benefits is hardly necessary. Neither is the class action desirable as a deterrent to the potential offender nor as a means of denying unjust enrichment, in light of the 'horrendous, possibly annihilating punishment' which could result from a $100 minimum recovery by every member of a class composed of thousands or even millions of customers.

*Id*. at 93.[7] The decision to deny class certification in the cases cited above was not based solely on the financial impact on the defendant, but was based, in large part, on the disproportionality of the

---

[6] In addition, Judge Illston in this District has also agreed with this line of cases. *See Moon v. Fedex Kinko's Office and Print Services, Inc.*, No. 06-07657-SI (N.D.Cal. 2007)(dkt no. 125, order denying class certification).

[7] Other courts have also denied class certification due to disproportionate damages. *See, e.g.*, *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1256, 1255 n.5 (11th Cir. 2003) (holding that class treatment fails to meet the "superiority requirement" where the defendant's liability "would be enormous and completely out of proportion to any harm suffered by the plaintiff"); *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 341-47 (10th Cir. 1973) (affirming denial of class certification where class members were not harmed and (footnote continued)

damages award in relation to the harm actually suffered by the class. *Soualian*, 2007 WL 4877902 at *2 (citing *Ratner v. Chem. Bank*, 54 F.R.D. 412, 416 (S.D.N.Y. 1972)).

In this case, as in the cases cited above, a class action is not superior to other forms of dispute resolution. In fact, Plaintiffs' statutory damages claims, under the case law and in light of the absence of any actual damages, cannot be certified as a litigation class. Thus, the availability of statutory damages under the VPPA should not impact this settlement.[8] Not only are the VPPA claims meritless (as discussed above), but they also would not be certifiable as a litigation class.[9]

### III. CONCLUSION

For the reasons set forth above, Defendant Blockbuster respectfully requests that the class action settlement in this case be approved.

---

[8] where the aggregation of statutory damages under TILA would be extremely large). *See also Graczyk v. West Publ'g Corp.*, No. 09 C 4760, 2009 WL 5210846, at *6 (N.D. Ill. Dec. 23, 2009) ("[I]f defendant was found liable for obtaining plaintiffs' and class members' personal information without a permissible use, its liability under [the DPPA] would potentially be in the billions of dollars in liquidated damages. This is an absurd result not in keeping with the plain language, intent, or spirit of the DPPA.").

[8] There is nothing unique about the VPPA – statutory damages are also available under Plaintiffs' ECPA claims ($100 a day for each day of violation of $10,000, whichever is greater). Because the claims brought in this case under all three federal statutes have no merit, Plaintiffs will not be able to recover damages under any of them.

[9] One objector additionally argues that the release is overbroad because it releases Blockbuster from claims asserted in a separate lawsuit, *Harris v. Blockbuster, Inc.*, No. 3:09-cv-217, formerly pending in the Northern District of Texas and on appeal to the Fifth Circuit Court of Appeals. *See* Objections of Class Member Ginger McCall to Proposed Class Action Settlement [Doc. No. 96] at 15-16. The parties to the *Harris* lawsuit, however, have resolved that matter with an individual settlement agreement that provides remedial relief and releases Blockbuster from any claims. Accordingly, the *Harris* case has been resolved and was dismissed on February 9, 2010.

DATED: February 10, 2010  VINSON & ELKINS, L.L.P.

By: ___/s/Frank C. Brame_____
Michael L. Raiff
Frank C. Brame
Marc A. Fuller (Cal. Bar No. 225462)
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Telephone: (214) 220-7705
Facsimile: (214) 999-7705

Attorneys for Defendant Blockbuster Inc.

**CERTIFICATE OF SERVICE**

I, Frank C. Brame, hereby certify that on February 10, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document via the United States Postal Service to the non-CM/ECF participants, if any, indicated on the Manual Notice list.

I certify under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed on February 10, 2010.

                                                                    _____Frank C. Brame_____
                                                                    Frank C. Brame

US 225703v.5

-11-
BLOCKBUSTER'S SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS SETTLEMENT