*E-Filed 03/17/2010*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SEAN LANE, *et al.*, | No. C 08-3845 RS |
| Plaintiffs | |
| v. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER APPROVING SETTLEMENT** |
| FACEBOOK, INC., *et al.*, | |
| Defendants. | |

A hearing was held before this Court on February 26, 2010, pursuant to the Court's Preliminary Approval Order of October 23, 2009, upon a Settlement Agreement, dated as of September 17, 2009 (the "Settlement Agreement") in the above-captioned Litigation. Due notice of the hearing was given in accordance with the Preliminary Approval Order which was adequate and sufficient and in accordance with the Court's Preliminary Approval Order. The represented parties appeared by their attorneys of record, and an opportunity to be heard was given to all other persons desiring to be heard as provided in the notice. The Court has considered the terms of the proposed Settlement as set forth in the Settlement Agreement, and the submissions and arguments with respect to it. Accordingly, the Court makes following findings and orders thereon:

1      A.      This Court has jurisdiction over the subject-matter of the Litigation pursuant to
2 Title 28, United States Code, section 1332, and all acts within the Litigation, and over all the
3 parties to the Litigation, and all members of the Settlement Class.
4      B.      This Order incorporates herein and makes a part hereof the Settlement Agreement,
5 including the Exhibits thereto. Unless otherwise provided herein, the terms defined in the
6 Settlement Agreement shall have the same meanings for purposes of this Order.
7      C.      Notice to the Settlement Class and other potentially interested parties has been
8 provided in accordance with the notice requirements specified by the Court in the Preliminary
9 Approval Order.   Additionally, subsequent to preliminary approval, the parties proposed
10 amending the notice requirements to specify that Class members would be given notice by email
11 to the Class members' email addresses on file with Facebook, in lieu of an internal Facebook
12 message in the 'Updates' Section."   The Court declined to execute the parties' stipulation, instead
13 inquiring if it would be more appropriate to utilize email notice in addition to that specified in the
14 Preliminary Approval Order, rather than in lieu of it.  Although the Preliminary Approval Order
15 was never expressly amended to require it, notice was thereafter given by email in addition to the
16 other forms of notice.  Such notice fully and accurately informed the Settlement Class Members
17 of all material elements of the proposed Settlement and of their opportunity to object to, comment
18 thereon, or exclude themselves from, the Settlement.  It provided Settlement Class Members
19 adequate instructions and a variety of means to obtain additional information and represented the
20 best notice practicable under the circumstances.  The notice was valid, due, and sufficient to all
21 Settlement Class Members and complied fully with the laws of the of State of California, the
22 Federal Rules of Civil Procedure, the United Sates Constitution, due process and other applicable
23 laws. Notice was given in a timely manner pursuant to the Order of this Court on Preliminary
24 Approval and provided adequate time for Class Members to comment and object. Further, this
25 Court finds that adequate notice was provided as required under the Class Action Fairness Act.
26      D.      One individual objector submitted an objection complaining that the email notice
27 he was given was intercepted by his email program's "spam filter."  The objector asserted that this
28 occurred despite the fact that he has received other email from Facebook that was not filtered.

1   Although it is not entirely clear how or why this may have occurred, the Court is satisfied that the
2   possibility that some Class members have activated settings on their email accounts that might
3   filter the email notices does not undermine the overall adequacy of the notice given.  Indeed, even
4   the objector appears to have received actual notice via email, albeit only because he checked the
5   contents of his spam filter, which not all Class members may have done.
6          E.      A full opportunity was afforded to the Settlement Class Members to participate in,
7   comment on, opt-out and/or object to the Settlement, notice and claims procedure. A list of those
8   members of the Settlement Class who timely opted-out of the Settlement and the Settlement Class
9   and who therefore are not bound by the Settlement, the provisions of the Settlement Agreement,
10  this Order and the Judgment to be entered by Clerk of Court, hereon, has been submitted by the
11  Claims Administrator and is attached hereto as Exhibit A and incorporated by reference herein.
12  All other members of the Settlement Class (as permanently certified below) shall be subject to all
13  of the provisions of this Order.
14         F.      Federal Rule of Civil Procedure 23(a) lists four conjunctive criteria that must be
15  met to certify a class action: numerosity, commonality of issues, typicality of the representative
16  plaintiffs' claims, and adequacy of representation. A class may only be certified if the court is
17  "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."
18  *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d
19  740 (1982). Based on the record before the Court, including all submissions in support of the
20  Settlement Agreement, objections, comments and responses thereto, as well as the settlement set
21  forth in the Settlement Agreement, this Court finds that the applicable requirements of Federal
22  Rule of Civil Procedure 23 have been satisfied with respect to the Settlement Class and the
23  proposed Settlement. Specifically, this Court finds that, with regard to the proposed Settlement
24  Class, Rule 23(a) is satisfied in that:
25             1.      The Settlement Class, as defined below, is so numerous that joinder of all
26  members is impracticable. The undisputed record indicates that there are over 3.6 million
27  members of the class.
28             2.      There are questions of law and fact common to members of the Settlement

Class in that all the allegations and claims in this matter arise from the operation of Facebook's Beacon program on third-party sites and its transmission of personal information to Facebook.

3. The representative Plaintiffs' claims are typical of the claims of members of the Settlement Class. Collectively, the representative Plaintiffs' claims implicate each of the defendants. More importantly, all of the named Plaintiffs' and Settlement Class Members' claims arise from the operation of the Beacon program—a common course of conduct resulting in the same or similar alleged injuries. *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2009 WL 4263524 *4 (N.D. Cal.) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Although some claims of some Settlement Class Members arise from statutes unique to the third-party Beacon Merchants with whom they interacted, the more salient characteristic of the Class is the Beacon nexus and the statutory claims, such as the Electronic Communications Privacy Act (ECPA), common to all Class Members. These reasonably coextensive claims support typicality more than any disparities in particular statutory damages militate against it. *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("[t]he amount of damages is invariably an individual question and does not defeat class action treatment"); *see also In re SRAM Antitrust Litig.*, 2009 WL 4263524 *4 (citing *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998); (*compare* Video Privacy Protection Act, Title 18, United States Code, section 2710(c)(2)(A) (liquidated damages of $2,500) *and* the ECPA Wiretap Act, Title 18, United States Code, section 2520(c)(2)(B) (statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000)).

4. Settlement Class Counsel and class representatives have fairly and adequately protected the interests of the Settlement Class. By Order dated October 23, 2009, this Court, pursuant to Federal Rule of Civil Procedure 23(g), appointed Scott A. Kamber and David A. Stampley of KamberLaw, LLC and Joseph H. Malley of the Law Office of Joseph H. Malley, P.C., as Class Counsel for the Settlement Class, providing the Settlement Class with representation by nationally recognized members of the class action bar and significant experience in consumer privacy and technology matters. Counsel's efforts on behalf of the Class to reach a settlement included protracted arms-length negotiations for over a year as well as

1 opposition to a motion to intervene. The attorneys of KamberLaw have made a showing that they
2 possess experience and expertise in the areas of consumer privacy and technology matters and
3 have professionally represented the interests of the Class in this matter.

4       G.      Because certification is for settlement purposes only and not for litigation
5 purposes, the Court need not consider whether the case, if tried, would present intractable
6 manageability problems. Nonetheless, the Court finds that on the record presented that there
7 would not be intractable manageability problems and, in fact, the class would be manageable
8 given its unitary nature and the high likelihood of success in identifying Class Members.

9       With regard to the proposed Settlement Class, Rule 23(b)(3) is satisfied in that issues of
10 law and fact common to the Class predominate over those affecting individual Class Members
11 and that a class action is the superior method to adjudicate these claims.

12       H.      The Court has held a hearing to consider the fairness, reasonableness and adequacy
13 of Settlement, has been advised of all objections to and comments regarding the Settlement, and
14 has given fair consideration to such objections and comments. The Court has reviewed the papers
15 submitted by the parties and by all persons objecting to and commenting on the Settlement and
16 has heard the arguments of those objectors to the Settlement appearing at the fairness hearing.

17       I.      The Settlement, as provided for in the Settlement Agreement is fair, reasonable,
18 adequate and proper and in the best interests of the Settlement Class. In reaching this conclusion,
19 the Court has considered the record in its entirety, all objections and comments submitted to the
20 Court, and the arguments of counsel for the parties and all other persons seeking to comment on
21 the proposed Settlement.

22       The Court has considered a number of factors in its evaluation of the Settlement,
23 including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
24 duration of further litigation; (3) the risk of maintaining class action status throughout the trial;
25 (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the
26 proceedings; (6) the experience and views of counsel; (7) the presence of a governmental
27 participant; and (8) the reaction of the class members to the proposed settlement. *Molski v.*
28 *Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th

Cir. 1998).

1. Regarding the strength of plaintiff's case, plaintiffs' claims implicate factual issues that would likely be vigorously disputed, such as the type and sufficiency of notice Class Members received about Beacon activity during specific time periods, the nature of Class Members' agreements with Facebook and the extent to which Beacon's transfer and distribution of personal information was legally unauthorized.

In addition, Plaintiffs' claims raise novel legal theories with little in the way of prior decisions to assist in gauging the likelihood of success. For example, regarding Blockbuster's liability under the VPPA, neither the parties nor objectors have brought to the Court's attention any cases in which plaintiffs have been awarded multiple liquidated damages.  Facebook also has denied it is liable under the VPPA definition of "video tape service provider."

2. The contested facts and novelty of claims increase the likelihood of risk, expense, complexity and protracted duration of further litigation, which would be significant even without such factors.  Despite the brevity of the period of Beacon operation at issue, the parties would have had to conduct costly discovery of voluminous, not-easily-readable Internet transaction logs of highly-trafficked websites operated by numerous Defendants as well as defendant Facebook's software code for its Beacon functions,  and to engage in extensive preparations for trial. This would have required significant time and expense in reviewing discovery materials with the assistance of experts and in preparing expert witness reports and expert witnesses for deposition and trial. Further, taking into consideration the number of defendants involved, bringing this case to trial would likely have been a long and costly proposition, the outcome of which would have been uncertain. This factor supports the fairness, reasonableness and adequacy of the Settlement.

3. The risk that a class action may be decertified at any time generally weighs in favor of approving a settlement. *Rodriguez v. West Publishing Corp*., 563 F.3d 948, 966 (9th Cir. 2009).  Here, although there has been no specific showing that maintaining class action status throughout trial would be particularly difficult or problematic, the general risks and burdens on plaintiffs in doing so further support the propriety of the settlement.

4. In light of these litigation risks and in the context of settlements involving claims

1   of infringement of consumers' privacy rights, the $9.5 million offered in settlement is substantial

2   and, further, is directed toward a purpose closely related to Class Members' interests in this

3   litigation. The objectors do not suggest otherwise, except to state that the "safety" element of the

4   Privacy Foundation charter is unrelated to the Class Members' claims. However, given the nexus

5   of online privacy, safety and security, particularly as those values relate to the online threat

6   landscape and the benefit of protecting consumers' identities and personal information online

7   from those threats, the Privacy Foundation as constituted is sufficiently related to the claims

8   raised by Class Members.

9       5.    The court has also considered the extent of discovery completed and the stage of

10  the proceedings. The parties have engaged in significant investigation, informal discovery and

11  research, and have documented these efforts to the court, both at the Final Approval hearing as

12  well as in the declaration of Scott A. Kamber, Dkt. 107. These efforts supplement the substantial

13  information about Beacon that is already publicly known, including how it operates technically,

14  the nature and timing of modifications to its data collection, and how Facebook interacted with

15  the Facebook Beacon-Activated Affiliates. Such information places the Plaintiff Class in a

16  position to make an informed decision about settlement. Class Counsel established that they

17  acquired sufficient information to make an informed decision with respect to settlement, even

18  though formal discovery is not complete. *See In re Mego Financial Corp. Sec. Litig.*, 213 F.3d

19  454, 459 (9th Cir. 2000).

20      6.    The next factor the Court has considered is the experience and views of counsel.

21  The Court recognizes that the Settlement was only achieved  after intense and protracted arm's-

22  length negotiations conducted in good faith and free from collusion, through the efforts of counsel

23  with recognized experience in complex litigation involving technology and privacy issues such as

24  those presented in this case. Class Counsel demonstrated an understanding of both the strengths

25  and weaknesses of this case. See declaration of Class Counsel Scott A. Kamber, Dkt. 107. Based

26  on the facts of the case and Class Counsel's experience in these types of cases, Class Counsels'

27  reasonably concluded that the immediate benefits represented by the Settlement outweighed the

28  possibility—perhaps remote—of obtaining a better result at trial, especially given the hurdles

inherent in proving liability on behalf of the Settlement Class and the additional expense and delay inherent in any trial and likely subsequent appeals. This factor supports the fairness, reasonableness and adequacy of the Settlement.

7. Notice of the preliminary approval of this class action was provided pursuant to the Class Action Fairness Act of 2005. In addition, Class Counsel explained at the Final Approval hearing that they were contacted by, and spoke with, representatives of the attorneys general of four states and responded to their questions regarding the Settlement. No government agencies voiced objections or comments to the Court. In addition, the Settlement stands as the product of the efforts of Class Counsel, inasmuch as no attorneys general or federal regulatory personnel have announced actions regarding the Facebook Beacon issues present in this matter.

8. Only four Class members have objected to the substance of the settlement. The Court has also received and considered comments from certain privacy organizations. The objectors and commentators have criticized the fact that, under the Settlement, Class Members do not receive any direct monetary compensation. However, the only basis for compensation they have addressed at any length is that which would proceed from statutory damages awards. As discussed above, the expectation of such recovery is speculative at best, given the inherent and particular litigation risks the Class would face in proceeding to trial. If only moderate statutory damages were awarded, the effect on the fund of incurring administrative costs to distribute *de minimis* amounts per Class Member leads to the conclusion that the certainty of the Settlement, as constituted, provides more meaningful relief to the Class.

Further, the objectors have suggested that the claims in the *Harris* action were too valuable to be released through this Settlement. The *Harris* Plaintiffs, however, now join in the motion for approval, having investigated and evaluated this Settlement, and following the efforts of Class Counsel in this matter to assist the *Harris* plaintiffs in resolving their case against Blockbuster. As this Court found in denying the *Harris* Plaintiffs' motion to intervene prior to Preliminary Approval, "[H]aving pursued their own claims against Blockbuster relating to these same operative events, Proposed Intervenors are already uniquely equipped to present informed analysis as to Blockbuster's potential liability . . . ." Order Denying Motion for Leave to

Intervene, Dkt. 66.

Finally, the argument most strongly pressed by the objectors and the commentators is that the Privacy Foundation created by the Settlement is both unnecessary and unduly subject to the influence and control of Facebook. Although theoretical efficiencies might arise from giving the settlement funds to an existing organization rather than by creating a new entity, that possibility does undermine the conclusion that the Settlement is fair and adequate. As to the independence of the Privacy Foundation, the objectors' arguments appear to rest on a premise that no aspect of the organization's structure, and no future use of its funds, should in any way be potentially consistent with Facebook's own interests. Settlements in litigation very often rest on the participants' abilities to find non-zero sum game solutions. Thus, while it likely would be inappropriate to apply settlement funds in a manner that was solely or primarily for the benefit of the defendant, there is no requirement that the funds be used in a manner wholly antagonistic to the defendant's interests. In this context, the parties have demonstrated that the structure of the Privacy Foundation, and the individuals who will be involved with it, are sufficient to ensure that the settlement funds will be disbursed in a manner that furthers the interests of the Class, and the public at large, consistent with the interests pursued by plaintiffs in this litigation.

Objectors have not shown there is any substantial reason to doubt the independence of two of the three directors. The unanimity requirement for board votes is applicable only to structural changes, and not to funding decisions. While the director associated with Facebook may reasonably be expected to exercise his influence against the Foundation taking any actions that would clearly and directly harm Facebook, there has been no persuasive showing that the Foundation will be a mere publicity tool for Facebook, or in any meaningful sense under Facebook's direct control. To the extent objectors are arguing that that Foundation could be structured somewhat differently, or that it would be even better for the funds to go to some existing organization, such fine-tuning of the settlement reached by the parties is beyond the purview of the Court. "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

1       The fact that only a few Class Members object to the proposed settlement further militates in favor of approval. *In re Mego*, 213 F.3d at 459. In addition, the fact that an overwhelming majority of the class willingly approves a settlement and remains in the class also indicates fairness. *Hanlon*, 150 F.3d at 1027. Here, given only four substantive objections and slightly more than 100 opt-outs from over 3.6 million Class Members, this factor favors a finding of fairness, reasonableness and adequacy.

      J.    The Court further finds that the Class representatives are entitled to and shall receive incentive awards for their efforts on behalf of the Class in this litigation and in obtaining this Settlement. Class representative Sean Lane shall receive an award of $10,000.00 due to the significant time and effort that he devoted to seeking the recovery obtained for the class, representatives Mohannaed Sheikha and Sean Martin shall receive an award of $5000.00 each for their significant time and efforts, and the remaining named representatives shall receive $1,000.00 for their efforts and time.

      K.    The Court will issue a further order with respect to an award of attorney fees and costs.

**IT IS SO ORDERED.**

Dated: 03/17/2010

                                          RICHARD SEEBORG
                                          UNITED STATES DISTRICT JUDGE

# EXHIBIT A

# OPT-OUTS

## Sean Lane, *et al.* v. Facebook, Inc., *et al.*, No. C 08-3845 RS

| | | |
|---|---|---|
| Abel, Rebecca L | Kavanaugh, Bridget | Patterson, Rachel J |
| Amoonclark, Brady | Keller, Chad J | Pearson, Ryan S |
| Baehr, Robert J | Kennedy, Catherine | Pearson, Spencer |
| Bialas, Victoria M | Kerian, Ryan M | Pearson, Tracey |
| Brignoni, Michele | Kern, Hannah | Powers, Jeffrey |
| Buechler, James T | Kim, William | Radakovich, Jaime |
| Carlos, Marvin | Krones, Jeremy D | Ramey, Sarah K |
| Cauley, Eileen | Kubik, Kelley | Rapo, Mario |
| Chang, Jack | Laabs, Parker | Reed, Timothy |
| Clark, Colin | Lachance, Emily | Repshire, Rhonda |
| Colton, Lisa | Lachance, Joseph | Ricotta, Victoria |
| Connelly, Shawn | Lachance, Nancy | Riley, Michele |
| Connolly, Timothy M | Lee, Sharon | Ritchey, Devon J |
| Donohoe, Michael | Lefevre, Danielle M | Rodisch, Christopher |
| Dougherty, Joseph M | Lightfoot, Robert | Rose, Randy |
| Dreitner, Zachary | Luikart, Heather | Rund, Stephanie |
| Evans, Kathryne | Macchiaverna, Ciera | Sarig, Ida |
| Freeman, Krystal | Marcus, Bruce | Savage, Valerie |
| Gang, Kelcy | Markham, Dave | Schehl, Micah |
| Garcia, Mirna | Masini, Charles | Schroeder, Melissa |
| Geisthardt, Amber E | Matteson, Meghann | Sorenson, Mary |
| Giroux, Terrie | Mayer, Lindsay | Sorgen, Monique |
| Goldenberg, David | Mcgrane, Lauren | Spero, Jessica |
| Gonillo, Stacey | Meadows, Tori | Strock, Amber |
| Gottlieb, Laura Christine | Medcalf, Geoffrey Brian | Sudik, Lynn |
| Grigsby, Kevin D | Meenen, Ashli Dawn | Susen, Andrew |
| Grigsby, Kevin D | Mercer, Karah | Swafford, Nicole |
| Gurney, Peter | Mika II, David E | Tidwell, Jessica |
| Hoover, Daniel Patrick | Millspaugh, Ethan | Turbow, Benjamin |
| Huang, Jordan | Mitau, Connie | Tureau, Alexandra |
| Huangfu, Shan | Moody, Tara | Varner, Andrew |
| Jamula, Matthew | Na, Eric | Viquez, Ericka |
| Jeng, Michael Y | Naivn, Michael | Ward, Thomas |
| Johnson, Charles A | Nathan, David | Westbrook, Tessa |
| Jorgensen, Zane | Negin, Samuel B | Williams, Carla |
| Karapanagiotis, Nicole | Palon, Jeffrey | Wood, Ben |