**FOR PUBLICATION**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| SEAN LANE; MOHANNAED SHEIKHA; SEAN MARTIN; ALI SAMMOUR; MOHAMMAED ZIDAN; SARA KARROW; COLBY HENSON; DENTON HUNKER; FIRAS SHEIKHA; HASSEN SHEIKHA; LINDA STEWART; TINA TRAN; MATTHEW SMITH; ERICA PARNELL; JOHN CONWAY; PHILLIP HUERTA; ALICIA HUNKER; MEGAN LYNN HANCOCK, a minor, by and through her parent Rebecca Holey; AUSTIN MUHS; CATHERINE HARRIS; MARIO HERRERA; MARYAM HOSSEINY, individually and on behalf of themselves and all others similarly situated,<br><br>     *Plaintiffs-Appellees*,<br><br>     v.<br><br>FACEBOOK, INC., a Delaware corporation; BLOCKBUSTER, INC., a Delaware corporation; FANDANGO, INC., a Delaware corporation; HOTWIRE, INC., a Delaware corporation; STA TRAVEL, INC., a Delaware corporation; OVERSTOCK.COM, INC., a Delaware corporation; ZAPPOS.COM, INC., a | No. 10-16380<br><br>D.C. No.<br>5:08-cv-03845-RS<br>Northern District<br>of California, San<br>Jose |

Delaware corporation; GAMEFLY,
INC., a Delaware corporation,
*Defendants-Appellees,*

GINGER MCCALL, Class Member,
*Objector-Appellant.*

SEAN LANE; MOHANNAED
SHEIKHA; SEAN MARTIN,
individually, and on behalf of
themselves and all others similarly
situated; ALI SAMMOUR;
MOHAMMAED ZIDAN; SARA
KARROW; COLBY HENSON; DENTON
HUNKER; FIRAS SHEIKHA; HASSEN
SHEIKHA; LINDA STEWART; TINA
TRAN; MATTHEW SMITH; ERICA
PARNELL; JOHN CONWAY; PHILLIP
HUERTA; ALICIA HUNKER; MEGAN
LYNN HANCOCK, a minor, by and
through her parent Rebecca Holey;
AUSTIN MUHS; CATHERINE HARRIS;
MARIO HERRERA; MARYAM
HOSSEINY, individually and on
behalf of themselves and all others
similarly situated,
*Plaintiffs-Appellees,*

v.

FACEBOOK, INC., a Delaware
corporation; BLOCKBUSTER, INC., a

No. 10-16398

D.C. No.
5:08-cv-03845-RS
Northern District
of California, San
Jose

ORDER

Delaware corporation; HOTWIRE, INC., a Delaware corporation; FANDANGO, INC., a Delaware corporation; STA TRAVEL, INC., a Delaware corporation; OVERSTOCK.COM, INC., a Delaware corporation; ZAPPOS.COM, INC., a Delaware corporation; GAMEFLY, INC., a Delaware corporation,
*Defendants-Appellees*,

MEGAN MAREK; BENJAMIN TROTTER, Class Members,
*Objectors-Appellants.*

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted
October 12, 2011—San Francisco, California

Filed February 26, 2013

Before: Proctor Hug, Jr., Andrew J. Kleinfeld,
and William A. Fletcher, Circuit Judges.

Order;
Dissent to Order by Judge Milan D. Smith, Jr.

4          McCall v. Facebook, Inc.

# SUMMARY*

## Class Action / Settlement

The panel denied the petitions for rehearing and for rehearing en banc with Judge Kleinfeld voting to grant the petitions in this appeal in which the panel affirmed the district court's certification of a settlement class of certain Facebook members, and its approval of a $9.5 million settlement agreement.

Dissenting from the denial of rehearing en banc, Judge M. Smith, joined by Judges Kozinski, O'Scannlain, Bybee, Bea and Ikuta, stated that by approving a settlement that failed to be reasonably certain to benefit the class or advance the objectives of the statute relied upon in bringing suit, the majority in this case created a significant loophole in this Circuit's case law that will confuse litigants and judges, while endorsing cy pres settlements that in no way benefit class members.

## COUNSEL

Michael H. Page, Public Citizen Litigation Group, Washington, D.C.; Steven F. Helfand, Helfand Law Offices, San Francisco, California, for Objectors-Appellants.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Scott A. Kamber, Kamber Law, LLC, New York, New York, for Plaintiffs-Appellees.

Michael G. Rhodes, Cooley LLP, San Francisco, California, for Defendants-Appellees.

## ORDER

Judges Hug and W. Fletcher have voted to deny appellants' petitions for rehearing. Judge Kleinfeld has voted to grant the petitions for rehearing. Judge W. Fletcher has voted to deny the petitions for rehearing en banc and Judge Hug has so recommended. Judge Kleinfeld would grant the petitions for rehearing en banc.

The full court was advised of the petitions for rehearing en banc. A judge of the court requested a vote on en banc rehearing. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

The petitions for rehearing and the petitions for rehearing en banc are **DENIED**. Judge M. Smith's dissent from the denial of en banc rehearing is filed concurrently herewith.

M. SMITH, Circuit Judge, with whom KOZINSKI, Chief
Judge, and O'SCANNLAIN, BYBEE, BEA, and IKUTA,
Circuit Judges, join, dissenting from the denial of rehearing
en banc:

Class action litigants are increasingly likely to employ the
doctrine of cy pres to settle complex class actions.[1]   Until
recently, courts in our circuit were well-positioned to address
the issues associated with this trend because our cy pres
jurisprudence was clear.  Under a line of cases beginning with
*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d
1301 (9th Cir. 1990), we required that a cy pres award (1) be
reasonably certain to benefit the class, and (2) advance the
objectives of the statutes relied upon in bringing suit.  *See
also Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011);
*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012).  By
approving a settlement that fails both criteria, however, the
majority in this case creates a significant loophole in our case
law that will confuse litigants and judges, while endorsing cy
pres settlements that in no way benefit class members.  I
therefore respectfully dissent from our unfortunate failure to
rehear this case en banc.

## I.

We require district judges to be reasonably certain that
class members will benefit before approving a cy pres
settlement.  *Six (6) Mexican Workers*, 904 F.2d at 1308.  We
have counseled that the "choice of charity and its relation to

---

[1] *See, e.g.*, Martin H. Redish et al., *Cy Pres Relief and the Pathologies
of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla.
L. Rev. 617, 620 (2010) (discussing the "dramatic turn in modern class
actions toward the use of cy pres relief").

the class members and class claims—or lack
thereof—*figure[s] heavily* in our analysis." *Dennis*, 697 F.3d
at 865 (emphasis added). Thus, we have rejected settlements
where the selected charity lacks "a substantial record of
service" in remedying the types of wrongs alleged, or where
the selected charity is not sufficiently "limited in its choice of
projects" to ensure that class members will truly be benefitted
by its works. *Id.* (quoting *Six (6) Mexican Workers*, 904 F.2d
at 1308). The majority, however, failed to apply these
safeguards.

First, the selected cy pres beneficiary, the Digital Trust
Foundation (DTF), has *no* record of service. *Lane v.
Facebook, Inc.*, 696 F.3d 811, 817 (9th Cir. 2012). The
"charity" is simply a bespoke creation of this settlement. The
majority is apparently untroubled by this. It attempts to
distinguish our case law emphasizing the importance of a
charity's record of service by noting that in those cases "there
was no way of knowing whether the organization would use
the funds to the benefit of class members," while here "the
settlement agreement and DTF's Articles of Incorporation tell
us exactly how funds will be used." *Lane*, 696 F.3d at 822.
Respectfully, they do no such thing.

The DTF has made a written commitment to "fund and
sponsor programs designed to educate users, regulators[,] and
enterprises regarding critical issues relating to protection of
identity and personal information online through user control,
and the protection of users from online threats." *Id.* However
one might describe this mission statement, "limited" is not
the word that comes to mind. *See, e.g.*, *Dennis*, 697 F.3d at
865. DTF promises to fund and sponsor "programs" that
address "critical issues" relating to Internet privacy. But
neither the "programs" nor the "issues" are defined with any

specificity, and certainly not the specificity necessary to be reasonably certain that class members will actually benefit from these activities.

Frequent NPR listeners know that the MacArthur Foundation's open-ended mission statement indicates that it is "committed to building a more just, verdant, and peaceful world." MacArthur Foundation, http://www.macfound.org/about (last visited February 18, 2013). But that is no guarantee that a donation to the MacArthur Foundation will actually result in, or advance, justice, verdancy, or peace. Rather, a potential donor must look to other factors, such as the MacArthur Foundation's past record of service or its specific list of projects, to determine whether it is reasonably certain that a donation will truly bring about the promised effects. That the DTF is committed to funding "programs" regarding "critical issues" says *absolutely nothing* about whether class members will truly benefit from this settlement; it simply promises that DTF will do some "stuff" regarding some more "critical stuff." If fashioning an open-ended, one-sentence mission statement is all it takes to earn cy pres settlement approval in our court, we have completely eviscerated the meaning of our previously controlling case law.

## II.

The majority also undercuts our precedent requiring cy pres money to be spent in a manner that advances the "objectives of the underlying statutes." *Nachshin*, 663 F.3d at 1036. But DTF's receipt of these settlement funds, even if unobjectionable in all other respects, simply does not advance the objectives of the statutes upon which plaintiffs relied in their suit.

Here, the plaintiffs brought claims under the Electronic Communications Privacy Act, 18 U.S.C. § 2510; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; the Video Privacy Protection Act, 18 U.S.C. § 2710; the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750; and the California Computer Crime Law, Cal. Penal Code § 502. With the exception of the California Consumer Legal Remedies Act, these statutes all share a common purpose—preventing the *unauthorized* access or disclosure of private information. Yet the DTF's sole stated purpose is to "educate users, regulators[,] and enterprises" on how to protect Internet privacy "through *user control*." *Lane*, 696 F.3d at 822 (emphasis added). Plaintiffs' claims, however, have nothing to do with users' lack of "education" or "control." Instead, they relate to *misconduct* by Internet companies that wrongfully exposes private information in ways that even educated users cannot anticipate, prevent, or direct.

Our precedent holds that it is not enough simply to identify any link between the class claims and a cy pres distribution, such as whether both concern food (*Dennis*) or the Internet (*Lane*). Instead, an appropriate cy pres recipient must be dedicated to protecting consumers from the precise wrongful conduct about which plaintiffs complain. *See Dennis*, 697 F.3d at 867. But an organization that focuses on protecting privacy solely through "user control" can *never* prevent unauthorized access or disclosure of private information where the alleged wrongdoer *already has unfettered access* to a user's records. The DTF can teach Facebook users how to create strong passwords, tinker with their privacy settings, and generally be more cautious online, but it can't teach users how to protect themselves from Facebook's deliberate misconduct. Unless of course the DTF

10        MCCALL V. FACEBOOK, INC.

teaches Facebook users not to use Facebook. That seems
unlikely.

I regret the muddle this case makes of our cy pres
jurisprudence, and I respectfully dissent from our failure to
rehear this case en banc.